**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| iMedia Brands, Inc., *et al.*,[1] | Case No. 23-10852 ([___]) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF LIEN
CLAIMANTS AND RELATED OBLIGATIONS, (II) AUTHORIZING
DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CERTAIN
SECTION 503(b)(9) CLAIMANTS, AND (III) GRANTING RELATED RELIEF**

iMedia Brands, Inc. and its affiliated debtors and debtors in possession (each a "Debtor" and, collectively, the "Debtors") in the above-captioned chapter 11 cases, by and through their undersigned proposed counsel, hereby submit this motion (this "Motion") for entry of interim and final orders granting the relief described below. In support hereof, the Debtors rely on the *Declaration of James Alt, Chief Transformation Officer of iMedia Brands, Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed concurrently herewith, and further represent as follows:

**JURISDICTION AND VENUE**

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642). The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them either later in the Motion or in the First Day Declaration.

*Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "Local Rules"), the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The statutory and other bases for the relief requested herein include sections 105(a), 361, 363, 506, and 553 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended (the "Bankruptcy Code"), Rules 4001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

### RELIEF REQUESTED

4. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order") (i) authorizing the Debtors to pay, in their discretion and in the ordinary course of business, certain prepetition claims of third-party servicers or carriers, including shippers, warehousemen, and other potential lienholders, who are in current possession of the Debtors' property or may have or assert a lien pursuant to applicable law as a result of services performed by Lien Claimants (defined below),[3] and related obligations with respect to customs duties and import charges, (ii) authorizing the Debtors to pay, in their discretion, certain Section 503(b)(9) Claims (defined below) held by certain Section 503(b)(9) Claimants (defined below), and (iii) granting related

---

[3] Nothing in this Motion shall be an admission as to any lien or interest, including any possessory lien.

2

relief. By this Motion, the Debtors seek authority to pay up to $1,740,000 in Lien and Import Claims (defined below), of which the Debtors request they be authorized to use up to $1,740,000 on an interim basis (with respect to both the interim and final periods, the "Lienholder Claims Cap"). Furthermore, by this Motion, the Debtors seek authority to pay up to $500,000 on account of certain Section 503(b)(9) Claims (defined below), of which the Debtors request they be authorized to use up to $500,000 on an interim basis.

5. The Debtors further respectfully request that the Court schedule a final hearing to consider approval of this Motion on a final basis within thirty (30) days following the Petition Date (defined below) or as soon thereafter as the Court's schedule permits.

## BACKGROUND

6. On June 28, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

7. The Debtors, together with their non-Debtor affiliates (the "Company"), capitalize on the convergence of entertainment, ecommerce, and advertising. The Company's global portfolio of entertainment, consumer brands and media commerce services businesses—including ShopHQ, 1-2-3.tv, Christopher & Banks, and iMedia Digital Services—cross promote and exchange data with each other to optimize the engagement experiences the Company creates for advertisers and consumers. The Company's ecommerce business extends across the United States,

while the Company's entertainment and advertising services reach customers across the United States, Canada, Germany, and Austria.

8. Additional factual background regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the First Day Declaration, filed concurrently herewith and incorporated herein by reference.

### A.    LIEN AND IMPORT CLAIMS

9. In the ordinary course of business, the Debtors necessarily depend on the uninterrupted flow of inventory and other goods through their supply chain and distribution network. The Debtors' distribution system requires the Debtors to use a network of, among others, shippers, common carriers, dedicated carriers, freight-forwarders, and parcel carriers (the "Shippers") and third-party warehousemen, storage facilities, distributors and logistics providers (the "Warehousemen" and, together with the Shippers, the "Lien Claimants") who transport, deliver or store the Debtors' retail goods, such as watches, jewelry, and clothing (collectively, the "Retail Goods").

10. Maintaining the Debtors' supply chain without disruption is critical to the Debtors' ability to generate revenue. In the ordinary course of business, the Debtors issue purchase orders to manufacturers, many of which are based overseas, for the procurement and manufacture of the Retail Goods. Through the use of third-party logistics providers and shippers, Retail Goods are shipped from the applicable manufacturer to the U.S. or other destination country. From there, Retail Goods are often stored in third-party warehouses until freight-forwarders or other carriers transport the Retail Goods to the Debtors' distribution centers. Retail Goods manufactured by overseas vendors and suppliers require substantial transport times to reach the Debtors. For

example, Retail Goods manufactured in and shipped from China typically take between three and four weeks to arrive in the United States.

11. Although the Debtors generally make timely payments to the Lien Claimants, as of the Petition Date, certain Lien Claimants will or may not have been paid for services they rendered. As a result, certain of the Lien Claimants may have claims (the "Lien Claims") for which they would be entitled to assert and perfect mechanics', warehouse, possessory, or similar statutory liens (collectively, the "Liens") or exercise rights of setoff or recoupment with respect to the Debtors' Retail Goods or other property. The Lien Claimants perform a number of services for the Debtors that are integral to the Debtors' ongoing business operations and the uninterrupted supply and distribution of Retail Goods.

12. The Debtors estimate that at any given time, a material amount of the Debtors' goods and property is in the hands of third-party Lien Claimants. Unless the Lien Claimants are paid amounts outstanding as of the Petition Date, the Debtors believe that the Lien Claimants may refuse to provide critical services and, worse, the Lien Claimants are likely to assert Liens against the Debtors' property or exercise their rights to "freeze" property in their possession while they seek to setoff or even recoup any amounts outstanding. Therefore, absent immediate payment of the Lien Claims, the Debtors face a significant immediate risk of disruption to their business operations and the possible loss of Retail Goods and revenue. Indeed, not only do the Debtors rely heavily on the Lien Claimants to currently deliver and store the Debtors' Retail Goods, but also the Debtors expect to continue to rely on many of the Lien Claimants for future deliveries and storage of their Retail Goods.

13. In addition, two of the Lien Claimants, Odyssey International Services, Inc. ("Odyssey") and FedEx Trade Network ("FedEx Trade" and, together with Odyssey, the "Customs

Brokers"), serve as licensed customs brokers for the Debtors and provide vital additional services that enable the Debtors to comply with the complex customs laws and regulations when importing Retail Goods into the United States from other countries.

14. The Customs Brokers provide services necessary for customs clearance, pay customs duties, charges, and tariffs on behalf of the Debtors, and perform other critical services necessary for the Debtors to receive goods. The Debtors pay each of the Customs Brokers for their services and reimburse the Customs Brokers for any funds that the Customs Brokers advance on behalf of the Debtors to pay customs duties, charges, and tariffs, including fees to the United States Customs Service (the "Import Charges" and, together with the Lien Claims, the "Lien and Import Claims").

15. The Debtors estimate that as of the Petition Date, approximately $3,260,000 is outstanding on account of Lien and Import Claims, all of which is expected to come due and owing within thirty (30) days after the Petition Date. To prevent immediate and irreparable harm, the Debtors seek authority, in their discretion, to pay Lien and Import Claims in an amount up to the Lienholder Claims Cap. Because the Debtors depend on the Lien Claimants for the delivery of Retail Goods, it is essential for the Debtors to incentivize the Lien Claimants to continue performing services in a timely manner.

16. The Debtors' businesses rely on vendors, suppliers, and transporters, each of which supply customers with its Retail Goods. Consequently, the Debtors believe it is within their sound business judgment and consistent with applicable law to pay Lien Claimants the Lien and Import Claims to: (a) ensure proper delivery and storage of the Debtors' Retail Goods that were ordered prepetition; (b) avoid disruptions to the Debtors' business operations, such as delays of deliveries and services and interference with the transportation of imported Retail Goods, that might result

from the Lien Claimants ceasing to do business; and (c) avoid the costs and expenses associated with litigation or negotiations regarding the Lien Claimants' rights to assert secured claims, obtain adequate protection, or pursue setoff or recoupment.

17. In return for paying the Lien and Import Claims, the Debtors also propose that they be authorized to require the Lien Claimants to provide favorable trade terms for the postpetition procurement of goods and services. Specifically, the Debtors seek authorization to condition payment of the Lien and Import Claims upon such Lien Claimant's agreement to continue or recommence supplying goods and services to the Debtors in accordance with the trade terms consistent with the parties' ordinary course of business as of the Petition Date or as otherwise agreed by the Debtors in their reasonable business judgment (the "Customary Trade Terms").

18. In addition, the Debtors request that if any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms, then: (a) any payment on account of a prepetition claim received by such party shall be deemed an improper postpetition transfer pursuant to section 549 of the Bankruptcy Code and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance and such Lien Claimant will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

**B.    SECTION 503(B)(9) CLAIMS**

19.    Certain of the Debtors' vendors hold claims against the Debtors on account of goods received by the Debtors in the ordinary course of business within the twenty (20) days immediately preceding the Petition Date (the "Section 503(b)(9) Claims").  The Debtors' relationships with these claimants (the "Section 503(b)(9) Claimants") are generally not governed by long-term executory contracts but, rather, the Debtors obtain inventory, goods, or other materials from such Section 503(b)(9) Claimants on an order-by-order basis.  As a result, a vendor may refuse to fulfill new orders without payment of its Section 503(b)(9) Claim, which would negatively affect the Debtors' businesses and ability to satisfy customer demand.

20.    The Debtors believe that, as of the Petition Date, approximately $500,000 is owed to vendors on account of goods received by the Debtors within the twenty (20) days immediately preceding the Petition Date.[4]  Accordingly, through this Motion, the Debtors request authority to, in their discretion, make payments up to $500,000 to certain Section 503(b)(9) Claimants on account of the Section 503(b)(9) Claims.

**BASIS FOR RELIEF**

**A.    THE COURT MAY AUTHORIZE THE DEBTORS TO PAY LIEN AND IMPORT CLAIMS**

    **i.    The Relief Requested Only Affects the Timing of Payments and Does Not Prejudice Any Creditors**

21.    Pursuant to section 506 Bankruptcy Code, the Lien Claimants are or may become secured creditors in these chapter 11 cases.  In fact, many, if not all, of the Lien Claimants could perfect the Liens they would otherwise have under applicable law pursuant to sections 546(b) or

---

[4] The Debtors do not concede that any claims described in this Motion are conclusively entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code, and the Debtors expressly reserve the right to contest the extent or validity of all such claims.

547(e)(2)(A) of the Bankruptcy Code, notwithstanding the existence of the automatic stay applicable in these chapter 11 cases. *See* 11 U.S.C. §§ 362(b)(3), 546, 547. To the extent a Lien Claimant holds such a secured claim, such Lien Claimant would be entitled to adequate protection and payment in full under a plan of reorganization. 11 U.S.C. §§ 361, 1129.

22. Consequently, by authorizing the Debtors to pay the Lien and Import Claims, this Court is simply affecting the timing of when the Lien Claimants receive payment. And critically, by permitting the Debtors to pay the Lien and Import Claims now, the Court is minimizing the Debtors' administrative costs and expenses by enabling the Debtors to avoid potential adequate protection or default interest payments. Thus, on this basis alone, the Debtors request this Court authorize the Debtors to pay the Lien and Import Claims.

    **ii.    The Relief Requested is Also Authorized by Sections 105 and 363 of the Bankruptcy Code**

23. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations, including payments like the ones requested by this Motion, when it is necessary to protect and preserve the estate. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts "have approved orders . . . that allow payment of essential suppliers' prepetition invoices"); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted

9

in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

24. Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also James A. Phillips, Inc.*, 29 B.R. at 393-94 (relying on section 363 of the Bankruptcy Code to allow a contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b) of the Bankruptcy Code).

25. Courts also authorize payment of prepetition claims, such as those described herein, in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when doing so is essential to the continued operation of a debtor's businesses. *Just for Feet*, 242 B.R. at 825−26. Specifically, a court may use its powers under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").

*Ionosphere Clubs*, 98 B.R. at 175-76; *In re Lehigh & New England Railway Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction[] failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are "essential to the continued operation of the business"). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

26. This flexible approach is particularly critical when, as here, payment of the amounts owing to the Lien Claimants are crucial to the Debtors' continued operations and restructuring efforts. In *In re Structurlite Plastics Corp.*, the bankruptcy court recognized that "a bankruptcy court may exercise its equity powers under 105(a) to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately.'" 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (quoting *In Re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987)). The court explained that "a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the [Bankruptcy] Code." *Id.* at 932. Allowing the Debtors to pay the Lien and Import Claims pursuant to sections 363(b) and 105(a) of the Bankruptcy Code is consistent with the "two recognized policies" of chapter 11 of the

Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors. *Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999).

27. Courts in this district have routinely granted relief similar to the relief requested herein. *See, e.g.*, *In re FB Debt Financing Guarantor, LLC,* No. 23-10025 (KBO) (Bankr. D. Del. Feb. 3, 2023) (authorizing debtors to pay prepetition lien claims in the ordinary course of business); *In re OSG Group Holdings, Inc.,* No. 22-10718 (JTD) (Bankr. D. Del. Aug. 29, 2022) (same); *In re TPC Group Inc.*, No. 22-10493 (CTG) (Bankr. D. Del. June 30, 2022) (same); *In re PWM Property Management LLC*, No. 21-11445 (MFW) (Bankr. D. Del. Dec. 1, 2021) (same); *In re Brooks Brothers Group, Inc.,* No. 20-11785 (CSS) (Bankr. D. Del. Aug. 11, 2020) (same).[5]

**B.   THE COURT MAY AUTHORIZE THE PAYMENT OF CLAIMS ENTITLED TO ADMINISTRATIVE EXPENSE PRIORITY PURSUANT TO SECTION 503(B)(9) OF THE BANKRUPTCY CODE**

28. Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). These claims must be paid in full for the Debtors to confirm a chapter 11 plan. 11 U.S.C. § 1129(a)(9)(A). Consequently, payment of the Section 503(b)(9) Claims now only provides such parties with what they would be entitled to receive under a chapter 11 plan. In other words, payment of the Section 503(b)(9) Claims merely accelerates the timing of payment and does not change the ultimate treatment of such claims under a chapter 11 plan. Moreover, all creditors will benefit from the seamless transition of the Debtors' operations into bankruptcy.

---

[5]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

12

29. The Debtors' ongoing ability to obtain goods and services is necessary to preserve the value of their estates. Absent the payment of the Section 503(b)(9) Claims at the outset of these chapter 11 cases—which may merely accelerate the timing of payment and not the ultimate treatment of such claims—the Debtors could be denied access to materials and products necessary to maintain the Debtors' operations and maximize the value of the Debtors' estates. In addition, the Bankruptcy Code does not prohibit a debtor from paying Section 503(b)(9) Claims prior to confirmation. As administrative claims incurred in the ordinary course of business, the Debtors believe they may pay such claims in accordance with their business judgment pursuant to section 363(c)(1) of the Bankruptcy Code. *See, e.g.*, *In re Dura Auto. Sys. Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2006) Hr'g Tr. 49:21-23 ("I think arguably the [D]ebtor could pay its 503(b)(9) claimants without court approval."); *see also In re Arts Dairy, LLC*, 414 B.R. 219, 221 (Bankr. N.D. Ohio 2009) ("[I]n the instance of administrative claims arising from ordinary course of business payments, such as that made for wages and trade debt, it is generally accepted that such expenses will be paid when due, and not when the debtor's plan becomes effective."). The timing of such payments also lies squarely within the Court's discretion. *See In re Garden Ridge Corp.*, 323 B.R. 136, 142 (Bankr. D. Del. 2005) ("Courts have discretion to determine when an administrative expense will be paid.").

**THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED**

30. Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one (21) days of the Petition Date requires that the Debtors demonstrate that such relief "is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the success of the chapter 11 cases depends upon the continued ability to satisfy the Lien and Import Claims and the Section 503(b)(9) Claims. Without the services of the Lien Claimants and the Section

503(b)(9) Claimants, the Debtors' estates would suffer immediate and detrimental consequences to the Debtors' businesses, which would jeopardize the Debtors' efforts to preserve and maximize the value of their estates, to the detriment and prejudice of all of the Debtors' stakeholders. As the Debtors operate in a highly competitive industry, the Debtors cannot afford any material disruptions of their business operations or present anything less than a "business as usual" appearance to the public. It is the Debtors' business judgment that continuation of their positive relationships with the Lien Claimants and Section 503(b)(9) Claimants is critical to avoid any unexpected or inopportune interruption to their operations and increases the likelihood of successfully prosecuting the chapter 11 cases. If the relief requested herein is not granted, the Debtors' failure to satisfy the Lien and Import Claims and the Section 503(b)(9) Claimts would cause the Debtors' estates immediate and irreparable harm by detracting from, and potentially derailing, the Debtors' restructuring efforts.

31. For the reasons set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

### WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

32. Additionally, with respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not satisfied, and the fourteen (14)-day stay under Bankruptcy Rule 6004(h). As set forth throughout this Motion, any delay in obtaining Retail Goods would be detrimental to the Debtors, their creditors, and their estates, as the Debtors' ability to manage and run their business operations without any unexpected or inopportune interruption requires, in part, that they continue to be able to receive and deliver necessary Retail Goods.

33. For this reason and those set forth above, the Debtors submit that ample cause exists to justify a waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Interim Order and the Final Order.

## RESERVATION OF RIGHTS

34. Nothing contained herein is intended or shall be construed as:  (a) an admission as to the amount of, basis for, priority of, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim;  (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or an admission that such contract or lease is subject to assumption or rejection; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

35. The Debtors will provide notice of this Motion to:  (a) United States Trustee for the District of Delaware, 844 N. King Street, Room 2207, Wilmington, DE 19801 (Attn: Richard L. Schepacarter, email: richard.schepacarter@usdoj.gov); (b) the United States Attorney's Office for the District of Delaware; (c) the state attorneys general for all states in which the Debtors conduct

business; (d) the Internal Revenue Service; (e) the United States Securities and Exchange Commission; (f) the holders of the fifty (50) largest unsecured claims against the Debtors on a consolidated basis; (g) counsel to the Prepetition Agent, Blank Rome LLP, 1201 North Market Street, Suite 800, Wilmington, DE 19801 (Attn: Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com); (h) counsel to Crystal Financial LLC d/b/a SLR Credit Solutions, Morgan Lewis & Bockius, LLP, One Federal Street, Boston, MA 021110 (Attn: Julia Frost-Davies, email: julia.frost-davies@morganlewis.com); (i) the indenture trustee for the Senior Unsecured Notes; (j) banks and financial institutions where the Debtors maintain accounts; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

[*Remainder of Page Intentionally Left Blank*]

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter the Interim Order and the Final Order, substantially in the form annexed hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

| | |
|---|---|
| Dated:  June 29, 2023<br>Wilmington, Delaware | **PACHULSKI STANG ZIEHL & JONES LLP** |

*/s/  Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
Email:  ljones@pszjlaw.com
            tcairns@pszjlaw.com

-and-

**ROPES & GRAY LLP**

Ryan Preston Dahl (*pro hac vice* admission pending)
Cristine Pirro Schwarzman (*pro hac vice* admission pending)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
E-mail:  ryan.dahl@ropesgray.com
             cristine.schwarzman@ropesgray.com

-and-

**ROPES & GRAY LLP**

Stephen L. Iacovo (*pro hac vice* admission pending)
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (212) 845-5500
E-mail:  stephen.iacovo@ropesgray.com

*Proposed Counsel to the Debtors and Debtors in Possession*