**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| iMedia Brands, Inc., *et al.*,[1] | Case No. 23-10852 ([___]) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION**
**FOR ENTRY OF INTERIM AND**
**FINAL ORDERS (I)(A) APPROVING THE**
**DEBTORS' PROPOSED ADEQUATE ASSURANCE**
**OF PAYMENT FOR FUTURE UTILITY SERVICES,**
**(B) APPROVING THE DEBTORS' PROPOSED PROCEDURES**
**FOR RESOLVING ADDITIONAL ASSURANCE REQUESTS, AND**
**(C) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING,**
**OR DISCONTINUING SERVICES; AND (II) GRANTING RELATED RELIEF**

iMedia Brands, Inc. and its affiliated debtors and debtors in possession (each a "Debtor"

and, collectively, the "Debtors") in the above-captioned chapter 11 cases, by and through their

undersigned proposed counsel, hereby submit this motion (this "Motion") for entry of interim and

final orders granting the relief described below.  In support hereof, the Debtors rely on the

*Declaration of James Alt, Chief Transformation Officer of iMedia Brands, Inc., in Support of the*

*Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed

concurrently herewith, and further represent as follows:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642).  The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them either later in the Motion or in the First Day Declaration.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "Local Rules"), the Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these chapter 11 cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## RELIEF REQUESTED

4.      The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"), (i)(a) approving the Debtors' proposed adequate assurance of payment for future utility services, (b) approving the Debtors' proposed procedures for resolving requests for adequate assurance, and (c) prohibiting utility providers from altering, refusing, or discontinuing services; and (ii) granting related relief.

5.      The Debtors further respectfully request that the Court schedule a final hearing to consider approval of this Motion on a final basis within thirty days following the Petition Date (as defined below), or as soon thereafter as the Court's schedule permits.

<b>BACKGROUND</b>

6.      On the date hereof (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committee of unsecured creditors has been appointed in these chapter 11 cases.

7.      The Debtors, together with their non-Debtor affiliates (the "<u>Company</u>"), capitalize on the convergence of entertainment, ecommerce, and advertising. The Company's global portfolio of entertainment, consumer brands and media commerce services businesses—including ShopHQ, 1-2-3.tv, Christopher & Banks, and iMedia Digital Services—cross promote and exchange data with each other to optimize the engagement experiences the Company creates for advertisers and consumers.  The Company's ecommerce business extends across the United States, while the Company's entertainment and advertising services reach customers across the United States, Canada, Germany, and Austria.

8.      Additional factual background regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of these

chapter 11 cases, is set forth in detail in the First Day Declaration, filed concurrently herewith and incorporated herein by reference.

## A.  THE UTILITY SERVICES AND UTILITY PROVIDERS

9.  In connection with the operation of their business and management of their properties, the Debtors obtain internet, electricity, natural gas, water, waste management, and other similar services (collectively, the "Utility Services") from a number of utility providers or brokers (collectively, the "Utility Providers").  As of the Petition Date, the Debtors had approximately 63 utility accounts.[3]  A nonexclusive list of the Utility Providers and their affiliates that provide Utility Services to the Debtors as of the Petition Date (the "Utility Providers List") is attached hereto as **Exhibit C**.[4]

10.  Uninterrupted Utility Services are essential to the Debtors' ongoing business operations and, hence, the overall success of these chapter 11 cases.  The Debtors' business operations require uninterrupted electricity, internet, heat, water, and other utility services.  Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted.  Such disruption would adversely affect customer goodwill and employee relations, which, in turn, would jeopardize the Debtors' reorganization efforts.  Accordingly, it is essential that the Utility Services continue uninterrupted during these chapter 11 cases.

---

[3]  This number includes only active accounts where one of the Debtors is a named party on the account.  This number does not include accounts related to closed retail locations which have been terminated prior to the Petition Date.

[4]  The inclusion of any entity on, or the omission of any entity from, the Utility Providers List is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect to any such determination.  Additionally, although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted one or more Utility Providers.  By this motion, the Debtors request relief applicable to all Utility Providers, regardless of whether such Utility Provider is specifically identified on **Exhibit C**.

11.    To the best of their knowledge, the Debtors are not in default or arrearages with respect to their obligations for prepetition Utility Services.  On average, the Debtors pay approximately $450,000 each month for Utility Services, calculated as a historical average payment for the last twelve months.[5]  The Debtors do not anticipate this monthly average will change materially during the initial thirty days following the commencement of these chapter 11 cases.  Accordingly, the Debtors estimate that their cost for Utility Services during the next thirty days will be approximately $450,000.

## B.    PROPOSED ADEQUATE ASSURANCE OF PAYMENT

12.    The Debtors intend to satisfy postpetition obligations owed to the Utility Providers in a timely manner.  The Debtors believe that cash held by the Debtors, cash generated in the ordinary course of business, and cash available to the Debtors under their proposed debtor in possession financing facility will provide sufficient liquidity to pay the Debtors' Utility Service obligations in accordance with their prepetition practice.

13.    The Debtors believe that the foregoing satisfies the requirements under section 366 of the Bankruptcy Code, which requires debtors to provide adequate assurance of payment for future utility services.  Nonetheless, as additional adequate assurance of payment, the Debtors propose to deposit $225,000 (the "Adequate Assurance Deposit"), into a segregated account (the "Adequate Assurance Account") for the benefit of the Utility Providers.  The Adequate Assurance Deposit represents an amount equal to approximately one-half of the Debtors' average monthly cost of Utility Services, as of the Petition Date, calculated as a historical average payment

---

[5]    This average reflects the average monthly cost over the last 12 months for the Debtors' active accounts for Utility Services.  This amount does not reflect amounts previously paid for services at retail locations closed prior to the Petition Date.

for the last twelve-months, net of any prepetition deposits, letters of credit, surety bonds or other similar forms of adequate assurance of payment already provided to the Utility Providers.

14.     The Adequate Assurance Deposit will be held in a segregated PNC Financial Services account that is maintained by iMedia Brands, Inc. for the duration of these chapter 11 cases, for the benefit of each Utility Provider, subject to the Debtors' right to terminate or discontinue the applicable Utility Services, and may be applied to any postpetition defaults in payment to the Utility Providers. The Adequate Assurance Deposit will be held by the Debtors.

15.     The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in accordance with their prepetition practices (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

## C.     THE ADEQUATE ASSURANCE PROCEDURES

16.     In light of the severe consequences to the Debtors' businesses and operations that would result from any interruption in Utility Services, but recognizing the right of the Utility Providers to evaluate the Proposed Adequate Assurance, if a Utility Provider believes additional adequate assurance is required, it may request such assurance pursuant to the following procedures (the "Adequate Assurance Procedures"):

a.     The Debtors will serve a copy of the Motion and the Interim Order granting the relief requested herein to each Utility Provider identified on **Exhibit C** within two business days after entry of the Interim Order.

b.     Subject to paragraphs (f)-(k) herein, the Debtors will deposit the Adequate Assurance Deposit, in the aggregate amount of $225,000, in the Adequate Assurance Account as soon as practicable after entry of the Interim Order.

c.     Each Utility Provider shall be entitled to the funds in the Adequate Assurance Account in the amount set forth for such Utility Provider in the column labeled "Proposed Adequate Assurance" on the Utility Providers List.

d.      If an amount relating to Utility Services provided postpetition by a Utility Provider is unpaid, remains unpaid beyond any applicable grace period, and is undisputed, such Utility Provider may request a disbursement from the Adequate Assurance Account by giving notice to: (i) the Debtors, iMedia Brands, Inc., 6740 Shady Oak Road, Eden Prairie, MN 55344-3433 (Attn: Tim Peterman); (ii) proposed co-counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Cristine Pirro Schwarzman, email: cristine.schwarzman@ropesgray.com); Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606 (Attn: Stephen L. Iacovo, email: stephen.iacovo@ropesgray.com), and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Laura Davis Jones, email: ljones@pszjlaw.com and Timothy P. Cairns, email: tcairns@pszjlaw.com); (iii) counsel to any official committee appointed in the chapter 11 cases; (iv) the United States Trustee for the District of Delaware, 844 N. King Street, Room 2207, Wilmington, DE 19801 (Attn: Richard L. Schepacarter, email: richard.schepacarter@usdoj.gov); and (v) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors shall honor such request within five business days after the date the request is received by the Debtors.  The Debtors and any such requesting Utility Provider maintain the ability to resolve any dispute regarding such request without further order of the Court.  To the extent a Utility Provider receives a disbursement from the Adequate Assurance Account, the Debtors shall replenish the Adequate Assurance Account in the amount disbursed.

e.      The portion of the Adequate Assurance Deposit attributable to each Utility Provider (including any additional amount deposited upon request of any applicable Utility Provider), or any portion thereof, shall revert to the Debtors less any amounts owed on account of unpaid, postpetition Utility Services, by no later than five business days following the earlier of the date upon which (i) the Debtors reconcile and pay the Utility Provider's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Provider or (ii) the effective date of any chapter 11 plan confirmed in these chapter 11 cases.

f.      Any Utility Provider desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the Notice Parties.

g.      Any Additional Assurance Request must: (i) be in writing; (ii) identify the location for which the Utility Services are provided; (iii) summarize the Debtors' payment history relevant to the affected account(s); (iv) certify the amount that is equal to one-half the monthly cost of the Utility Services the Utility Provider supplies to the Debtors, calculated as a historical average over the last twelve-months; (v) provide evidence that the Debtors have a

direct obligation to the Utility Provider; and (vi) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.  Any Additional Assurance Request that does not fully comply with the foregoing requirements shall be deemed invalid.

h.      If a Utility Provider fails to file and serve an Additional Assurance Request the Utility Provider shall be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from altering, refusing, or discontinuing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges.

i.      Without further order of the Court, the Debtors may resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and the Debtors may, in connection with any such agreement, provide a Utility Provider with additional adequate assurance of payment, including, but not limited to, cash deposits, prepayments, or other forms of security if the Debtors believe that such adequate assurance is reasonable.

j.      If the Debtors determine in their business judgment that the Additional Assurance Request is not reasonable and the Debtors are unable to reach an alternative resolution with the Utility Provider within twenty days of receipt of the Additional Assurance Request, the Debtors may request a hearing (the "<u>Determination Hearing</u>") before the Court to determine the adequacy of assurance of payment with respect to that Utility Provider pursuant to section 366(c)(3) of the Bankruptcy Code.

k.      Pending resolution of such dispute at a Determination Hearing, the relevant Utility Provider shall be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of:  (i) unpaid charges for prepetition services; (ii) a pending Additional Assurance Request; or (iii) any objections filed in response to the Proposed Adequate Assurance.

## D.      MODIFICATIONS TO THE UTILITY PROVIDERS LIST.

17.      The Debtors have made an extensive and good-faith effort to identify all Utility Providers and include them on the Utility Providers List.  Nonetheless, to the extent the Debtors identify new or additional Utility Providers or discontinue services from existing Utility Providers, the Debtors request the authority to add or remove such parties from the Utility Providers List; *provided*, *however*, that the Debtors shall provide notice of any such addition or removal to the Notice Parties.

18.     For any Utility Provider that is subsequently added to the Utility Providers List, the Debtors will serve such Utility Provider with a copy of the Interim Order or Final Order, as applicable, including the Adequate Assurance Procedures, and provide such Utility Provider fourteen days' notice to object to the inclusion of such Utility Provider on the Utility Providers List.  The Debtors request the authority to increase the Adequate Assurance Deposit by an amount equal to approximately one-half of the Debtors' monthly average cost of services from the subsequently added Utility Provider, net of any prepetition deposits, letters of credit, or surety bonds already provided to the Utility Provider in the ordinary course of business.  The Debtors request that the terms of the Court's order and the Adequate Assurance Procedures apply to any subsequently identified Utility Provider to the same extent as if the Utility Provider was listed on the original Utility Providers List attached hereto.

19.     Upon the discontinuance of any Utility Service, the Debtors seek authority to, in their discretion and without further order of the Court, reduce the Adequate Assurance Deposit by an amount not exceeding, for each of the Utility Services being discontinued, the lesser of (a) one-half of the average monthly cost of such Utility Services, calculated based on the aforementioned historical average, to align with the go-forward average monthly cost of Utility Services and (b) the amount of the Adequate Assurance Deposit then attributable to the applicable Utility Provider; *provided* that for any Utility Provider for which the Adequate Assurance Deposit is reduced, the Debtors shall have (i) provided such Utility Provider with fourteen days' notice of such reduction and (ii) paid such Utility Provider in full and for any outstanding postpetition Utility Services.  To the extent that there is any dispute as to the postpetition amounts owed to a Utility Provider proposed to be removed from the Utilities Providers List, such Utility Provider

shall not be removed from the Utility Providers List, and no funds shall be removed from the Adequate Assurance Deposit, until such dispute has been resolved.

**BASIS FOR RELIEF**

### A.    SUFFICIENT CAUSE EXISTS TO APPROVE THE ADEQUATE ASSURANCE PROCEDURES

20.    The Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366 thereof. Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Proposed Adequate Assurance and the Adequate Assurance Procedures.

21.    Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the petition date. *See* 11 U.S.C. § 366. Section 366(c)(2) requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility provider within thirty days of the Petition Date, or the utility provider may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). Section 366(c)(1) of the Bankruptcy Code enumerates what constitutes "assurance of payment." 11 U.S.C. § 366(c)(1). Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of a debtors' ability to pay. *See, e.g., In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, 2011 WL 5546954, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . adequate assurance of

payment. The statute does not require an absolute guarantee of payment." (internal quotation and citation omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997) ("Section 366(b) requires . . . 'adequate assurance' of payment. The statute does not require an absolute guarantee of payment.") (citation omitted).

22.     When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment. *See Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha,* 1 B.R. 330 (Bankr. E.D. Va. 1979)) (stating that the meaning of "adequate assurance of payment . . . depends upon the facts and circumstances of each case, keeping in mind the intent of Congress to protect the utility company while preventing discrimination against the debtor"); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82-83 (Bankr. S.D.N.Y. 2002) (finding that "the heart of the inquiry . . . is the examination of the totality of the circumstances to make an informed judgment as to whether or not the utilities would be subject to an unreasonable risk of payment").

23.     Courts have recognized that, in determining the requisite level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming the bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected"). Accordingly, demands by a Utility Provider for

11

a guarantee of payment should be refused when the Debtors' specific circumstances already afford adequate assurance of payment.

24.    Further, courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code.  *See, e.g., In re Circuit City Stores, Inc.*, No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "[t]he plain language of § 366 of the Bankruptcy Code allows the Court to adopt the Procedures set forth in the Utility Order"). Such procedures are important because, without them, debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize."  *Id.*

25.    Here, the Debtors respectfully submit that the Utility Providers are adequately assured against any risk of nonpayment for future services, especially in light of the Debtors' prepetition history of paying Utility Service obligations on time and in the ordinary course.  The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance of the Debtors' payment of their future obligations.  Moreover, any rights the Utility Providers have under sections 366(b) and (c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. Specifically, the Utility Providers may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance and be heard on such request, albeit in an organized and value-maximizing manner.

26.    The Adequate Assurance Procedures avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services.

*See In re Circuit City*, 2009 WL 484553, at *5 (noting that "[t]he orderly process contemplated by [the Debtors'] Procedures is necessary for the Debtors' smooth transition into chapter 11, and it will ensure that all parties act in good faith by establishing a fair process that has been reviewed by the Court"). Moreover, termination of Utility Services could result in the Debtors' inability to operate their business to the detriment of all stakeholders. *Cf. In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

27. The importance of adequate assurance procedures to a debtor's reorganization efforts has been repeatedly recognized by courts in this district, and such courts have granted relief similar to the relief requested herein. *See, e.g., In re FB Debt Financing Guarantor, LLC*, No. 23-10025 (KBO) (Bankr. D. Del. Jan. 13, 2023) (approving adequate assurance deposit equal to one-half of debtor's monthly utility expenses); *In re OSG Group Holdings, Inc.*, No. 22-10718 (JTD) (Bankr. D. Del. Aug. 29, 2022) (same); *In re Enjoy Technology, Inc.*, No. 22-10580 (JKS) (Bankr. D. Del. July 20, 2022) (same); *In re PWM Property Management LLC*, No. 21-11445 (MFW) (Bankr. D. Del. Dec. 1, 2021) (same); *In re Nine Point Energy Holdings, Inc.*, No. 21-10570 (MFW) (Bankr. D. Del. Apr. 7, 2021) (same).[6]

## B.     IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

28. The Court may grant the relief requested in this Motion immediately if the "relief is necessary to avoid immediate and irreparable harm." Bankruptcy Rule 6003; *In re First NLC Fin. Servs.*, LLC, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008). The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that

---

[6]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

context, the Third Circuit has instructed that irreparable harm is that which "cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). The Debtors submit that, for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

29. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

30. Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the discretion of the Debtors. Any payment made pursuant to an order of the Court granting the relief requested herein

is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**NOTICE**

31.     The Debtors will provide notice of this Motion to:  (a) United States Trustee for the District of Delaware, 844 N. King Street, Room 2207, Wilmington, Delaware 19801 (Attn: Richard L. Schepacarter, email: richard.schepacarter@usdoj.gov); (b) the United States Attorney's Office for the District of Delaware; (c) the state attorneys general for all states in which the Debtors conduct business; (d) the Internal Revenue Service; (e) the United States Securities and Exchange Commission; (f) the holders of the fifty (50) largest unsecured claims against the Debtors on a consolidated basis; (g) counsel to the Prepetition Agent, Blank Rome LLP, 1201 North Market Street, Suite 800, Wilmington, Delaware 19801 (Attn: Regina Stango Kelbon, Esq., email: regina.kelbon@blankrome.com); (h) counsel to Crystal Financial LLC d/b/a SLR Credit Solutions, Morgan Lewis & Bockius, LLP, One Federal Street, Boston, Massachusetts 021110 (Attn: Julia Frost-Davies, email: julia.frost-davies@morganlewis.com); (i) the indenture trustee for the Senior Unsecured Notes; (j) banks and financial institutions where the Debtors maintain accounts; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  June 29, 2023
       Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
Email:  ljones@pszjlaw.com
       tcairns@pszjlaw.com

-and-

**ROPES & GRAY LLP**
Ryan Preston Dahl (*pro hac vice* admission pending)
Cristine Pirro Schwarzman (*pro hac vice* admission pending)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
E-mail:  ryan.dahl@ropesgray.com
       cristine.schwarzman@ropesgray.com

-and-

**ROPES & GRAY LLP**
Stephen L. Iacovo (*pro hac vice* admission pending)
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (212) 845-5500
E-mail:  stephen.iacovo@ropesgray.com

*Proposed Counsel to the Debtors and Debtors in Possession*