## EXHIBIT B

**ABL Funding Agreement**

SIENA LENDING GROUP LLC
9 W Broad Street, 6th Floor
Stamford, Connecticut 06902

June 20, 2023

VIA ELECTRONIC MAIL

iMedia Brands, Inc.
6740 Shady Oak Road
Eden Prairie, Minnesota 55344
Attention: General Counsel
Telephone: 952-943-6517
Email: lenderlegalnotices@imediabrands.com

Re:    Funding Agreement

Ladies and Gentlemen:

Reference is made to that certain Loan and Security Agreement, dated as of July 30, 2021 (as may be amended, restated, supplemented or modified from time to time, the "*Loan Agreement*"), among iMediaBrands, Inc., a Minnesota corporation ("*iMedia*"), ValueVision Interactive, Inc., a Minnesota corporation ("*Value Interactive*"), ValueVision Retail, Inc., a Delaware corporation ("*Value Retail*"), PW Acquisition Company, LLC, a Minnesota limited liability company ("*PW Acquisition*"), FL Acquisition Company, a Minnesota corporation ("*FL Acquisition*"), ValueVision Media Acquisitions, Inc., a Delaware corporation ("*Value Media*"), JWH Acquisition Company, a Minnesota corporation ("*JWH Acquisition*"), Norwell Television, LLC, a Delaware limited liability company ("*Norwell*"), 867 Grand Avenue LLC, a Minnesota limited liability company ("*867 Grand Avenue*"), Portal Acquisition Company, a Minnesota corporation ("*Portal*" and together with iMedia, Value Interactive, Value Retail, PW Acquisition, FL Acquisition, Value Media, JWH Acquisition, Norwell, 867 Grand Avenue and any other Person who from time to time becomes a Borrower under the Loan Agreement, collectively, the "*Borrowers*"), VVI Fulfillment Center, Inc., a Minnesota corporation ("*VVI Fulfillment*"), EP Properties, LLC, a Minnesota limited liability company ("*EP Properties*"), IMedia&123TV Holding GmbH ("*iMedia&123tv Holding*" and together with VVI Fulfillment, and EP Properties, collectively, the "*Guarantors*"), Siena Lending Group LLC, as a lender ("*Siena*" and together with any other financial institutions who become part to the Loan Agreement referred to below from time to time, each a "*Lender*" and collectively, the "*Lenders*") and Siena Lending Group LLC, as administrative and collateral agent for the Lenders (in such capacity, the "*Agent*"). Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

As the Loan Parties have acknowledged in the Forbearance Agreement, Tenth Amendment to Loan and Security Agreement and Amendment to Fee Letter dated April 10, 2023 (the "*Forbearance Agreement*"), the Existing Defaults identified and defined in the Forbearance Agreement have

occurred and are continuing. The Lenders have not waived any of such Existing Defaults, and the Forbearance Period established pursuant to the Forbearance Agreement has terminated.

As a result of the Existing Defaults, Agent and Lenders may, but are not obligated to, in their sole discretion, continue to make loans, advances and extensions of credit, including but not limited to Revolving Loans, as provided for in the Loan Agreement, to Borrowers from time to time, on and after the date hereof. Furthermore, all Revolving Loans advanced by Lenders on and after the date on which the Forbearance Period terminated have been made by Lenders in their sole and absolute discretion and do not constitute a course of dealing with respect to the making of any additional Revolving Loans.

Notwithstanding the foregoing, Borrowers have requested that Agent and Lenders, and Agent and Lenders hereby agree that they shall, fund Revolving Loans in an aggregate amount of up to $5,400,000 during the week ending June 23, 2023 (the "**Funding Period**"); ***provided***, that:

(i) after giving effect to each such Revolving Loan, (A) the outstanding balance of all Revolving Loans will not exceed the lesser of (x) the Maximum Revolving Facility Amount, and (y) the Borrowing Base, and (B) none of the other Loan Limits for Revolving Loans will be exceeded, and

(ii) Lenders hereby agree that, solely during the Funding Period, the Availability Block shall be reduced by an amount equal to the lesser of (A) $4,000,000 and (B) the difference of (x) the outstanding balance of all Revolving Loans *minus* (y) the Borrowing Base (calculated prior to giving effect to any reduction to the Availability Block pursuant to this clause (ii)).

In addition, Borrowers have requested that Agent and Lenders, and the Agent and Lenders hereby agree to, make funds available to Borrowers in an amount equal to $3,160,314 to be used solely for the purpose of paying certain sales taxes set forth on Exhibit A hereto pursuant to (x) a Bankruptcy court approved debtor-in-possession financing order pursuant to Section 364(c) and (d) of the Bankruptcy Code consented to by the Agent and Lenders, or (y) a Bankruptcy court approved cash collateral order pursuant to Section 363 of the Bankruptcy Code consented to by the Agent and Lenders (any such order per (x) or (y) a "Financing Order"), in either case, pursuant to one or more Bankruptcy court orders that authorizes the payment of such taxes (a "Sales Tax Payment Authorization Order") that includes customary protections for the Debtors, the Agents, and the Lenders upon making payment to any taxing authority.

The making of any loan, advance or Revolving Loans, or the extension of any other credit by Agent or any Lender to Borrowers (including without limitation, the advances described in the two immediately preceding paragraphs) shall not in any case (a) obligate Agent or any Lender to make any additional loan, advance, Revolving Loan or other extension of credit to any Loan Party, or (b) constitute (i) a waiver by Agent or any Lender of the Existing Defaults or any other Default or Event of Default (whether or not Agent or any Lender has knowledge thereof), or (ii) a waiver by Agent or any Lender of any of its rights, whether under the Loan Agreement, any of the other Loan Documents, applicable law or otherwise, and all of such rights, and all other rights, powers and remedies are hereby expressly reserved. Any such loan, advance or Revolving Loan, or the extension of any other credit by Agent or any Lender to Borrowers shall be included in the Obligations.

Agent and each Lender hereby specifically reserve all of the rights and remedies available to Agent and Lenders under the Loan Agreement, any of the other Loan Documents, applicable law or otherwise, as a result of the Existing Defaults, including, without limitation, the right to charge interest at the Default Rate retroactive to the first date on which any outstanding Event of Default occurred. Neither Agent nor the Lenders waive the Existing Defaults or any other Event of Default that may have occurred prior to the date of this letter, that may exist on the date of this letter, or that may hereafter

occur. An Event of Default may only be waived pursuant to an agreement in writing executed by the Agent and Lenders. Any delay or failure by Agent or any Lender in pursuing any rights or remedies as a result of any Event of Default or otherwise shall not be deemed a waiver of such Event of Default or any such rights or remedies.

This letter agreement is without prejudice to, and Agent and each Lender hereby specifically reserves, all of its rights and remedies.

Each Loan Party, on behalf of itself and on behalf of its officers, directors, employees and consultants, hereby absolutely and unconditionally releases and forever discharges Agent and each Lender, and any and all of their respective participants, parent corporations, subsidiary corporations, affiliated corporations, insurers, indemnitors, successors and assigns thereof, together with all of the present and former directors, officers, agents, consultants and employees of any of the foregoing (each a "Released Party"), from any and all claims, demands or causes of action of any kind, nature or description, whether arising in law or equity or upon contract or tort or under any state or federal law or otherwise, which any Loan Party has had, now has or has made claim to have against any such person for or by reason of any act, omission, matter, cause or thing whatsoever arising from the beginning of time to and including the date of this Amendment, whether such claims, demands and causes of action are matured or unmatured or known or unknown (collectively, the "**Released Claims**"); *provided* that the Released Claims shall not include any rights by any Loan Party to enforce this Funding Agreement. It is the intention of each Loan Party in providing this release that the same shall be effective as a bar to each and every Released Claim.

Each Loan Party acknowledges that it may hereafter discover facts different from or in addition to those now known or believed to be true with respect to such claims, demands, or causes of action and agree that this instrument shall be and remain effective in all respects notwithstanding any such differences or additional facts. Each Loan Party understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

Each Loan Party, on behalf of itself and its successors, assigns, and other legal representatives, hereby absolutely, unconditionally and irrevocably, covenants and agrees with and in favor of each Released Party above that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Released Party on the basis of any Released Claim. If any Loan Party or any of its successors, assigns or other legal representatives violates the foregoing covenant, such Loan Party, for itself and its successors, assigns and legal representatives, agrees to pay, in addition to such other damages as any Released Party may sustain as a result of such violation, all attorneys' fees and costs incurred by such Released Party as a result of such violation.

Except as specifically stated herein, the Loan Agreement and each of the other Loan Documents, is and shall continue to be in full force and effect and is hereby in all respects ratified and confirmed and shall constitute the legal, valid, binding and enforceable obligations of the Loan Parties.

The terms and provisions of each of Section 10.2 (Severability), Section 10.13 (Counterparts), Section 10.14 of the Loan Agreement (Governing Law), and Section 10.15 (Waivers and Jurisdiction) of the Loan Agreement are hereby incorporated herein by reference and shall apply to this letter agreement mutatis mutandis as if fully set forth herein.

Very truly yours,

**SIENA LENDING GROUP LLC**, as Agent and a Lender

By: _____[signature]_____
Name: Steven Sanicola
Title: Authorized Signatory

**CRYSTAL FINANCIAL SPV LLC**,
as a Lender

By:_____
Name:
Title:

**CRYSTAL FINANCIAL LLC D/B/A SLR CREDIT SOLUTIONS**,
as a Lender

By: _____
Name:
Title:

**NORTH MILL CAPITAL LLC D/B/A SLR BUSINESS CREDIT**,
as a Lender

By:_____
Name:
Title:

Very truly yours,

**SIENA LENDING GROUP LLC**, as Agent and a Lender

By: _____
Name:
Title: Authorized Signatory



**CRYSTAL FINANCIAL SPV LLC,**
as a Lender

By: _____
Name:
Title: Mirko Andric
       Senior Managing Director

**CRYSTAL FINANCIAL LLC D/B/A SLR CREDIT SOLUTIONS,**
as a Lender

By: _____
Name:
Title: Mirko Andric
       Senior Managing Director

**NORTH MILL CAPITAL LLC D/B/A SLR BUSINESS CREDIT,**
as a Lender

By: _____
Name:
Title:

Very truly yours,

**SIENA LENDING GROUP LLC**, as Agent and a Lender

By: _____
Name:
Title: Authorized Signatory


**CRYSTAL FINANCIAL SPV LLC,**
as a Lender

By: _____
Name:
Title:


**CRYSTAL FINANCIAL LLC D/B/A SLR CREDIT SOLUTIONS,**
as a Lender

By: _____
Name:
Title:


**NORTH MILL CAPITAL LLC D/B/A SLR BUSINESS CREDIT,**
as a Lender

By: *Beatriz Hernández*
Name: Beatriz Hernández
Title: EVP

**ACKNOWLEDGED AND AGREED:**

**IMEDIA BRANDS, INC.**

By:_____
Name: Timothy Peterman
Its: CEO


**VALUEVISION RETAIL, INC.**

By:_____
Name: Timothy Peterman
Its: CEO


**FL ACQUISITION COMPANY**

By:_____
Name: Timothy Peterman
Its: CEO


**PW ACQUISITION COMPANY, LLC**

By:_____
Name: Timothy Peterman
Its: CEO


**VALUEVISION MEDIA ACQUISITIONS, INC.**

By:_____
Name: Timothy Peterman
Its: CEO


**JWH ACQUISITION COMPANY**

By:_____
Name: Timothy Peterman
Its: CEO

**NORWELL TELEVISION, LLC**

By: _____
Name: Timothy Peterman
Its: CEO

**867 GRAND AVENUE LLC**

By: _____
Name: Timothy Peterman
Its: CEO

**VALUEVISION INTERACTIVE, INC.**

By: _____
Name: Timothy Peterman
Its: CEO

**PORTAL ACQUISITION COMPANY**

By: _____
Name: Timothy Peterman
Its: CEO

**VVI FULFILLMENT CENTER, INC.**

By: _____
Name: Timothy Peterman
Its: CEO

**EP PROPERTIES, LLC**

By: _____
Name: Timothy Peterman
Its: CEO

**IMEDIA&123TV HOLDING GMBH**

By: _____
Name: Timothy Peterman
Its: Managing Director