**EXHIBIT A**

**Proposed Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| iMedia Brands, Inc., *et al.*,[1] | Case No. 23-10852 (KBO) |
| Debtors. | (Jointly Administered) |

**ORDER (I) AUTHORIZING THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES
OTHER THAN ASSUMED LIABILITIES; (II) APPROVING
THE DEBTORS' ENTRY INTO THE ASSET PURCHASE AGREEMENT;
(III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**

Upon the Motion[2] of the above-captioned debtors and debtors in possession (collectively,

the "Debtors") for entry of an order (this "Order"): (i) authorizing the sale of substantially all of

the Debtors' assets free and clear of all Encumbrances other than Assumed Liabilities (as defined

herein), (ii) approving the Debtors' entry into the APA (each as defined herein), (iii) authorizing

assumption and assignment of certain executory contracts and unexpired leases, and (iv) granting

related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from

the United States District Court for the District of Delaware, dated February 29, 2012; and this

Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642).  The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Asset and Equity Purchase Agreement, as applicable.

having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

**I.  FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**NOW, THEREFORE, THIS COURT HEREBY FINDS AND CONCLUDES THAT**:[3]

A.  The legal and factual bases set forth in the Motion and the Hearing establish just and sufficient cause to grant the relief set forth herein.

B.  On July 3, 2023, the Debtors and RNN-TV Licensing Co., LLC (the "Buyer") entered into that certain Asset and Equity Purchase Agreement (such agreement, together with all schedules and exhibits attached thereto, the "APA" attached as Exhibit B to the Sale Motion and the transactions contemplated therein, collectively, the "Sale Transaction").

C.  On [●], 2023, the Debtors filed the *Debtors' Motion Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code for Entry of an Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities; (II) Approving the Debtors' Entry into the Asset Purchase Agreement; (III) Authorizing*

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

*Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Docket No. [●]] (the "Motion").

D.      At the Closing of the Sale Transaction, the Cash Balance (as defined in the APA) will be paid directly to Siena Lending Group LLC in its capacity as the pre-petition and DIP agent (the "Agent") for the benefit of the Prepetition ABL Secured Parties and the DIP Lenders and applied in accordance with the DIP Credit Agreement and the DIP Order.

E.      At the Hearing held on [●], 2023, the Debtors sought approval from this Court of the Sale Transaction.

F.      As demonstrated by the testimony proffered and the evidence adduced at the Hearing and the representations of counsel made on the record at the Hearing, the Debtors adequately marketed the Debtors' assets prior to the commencement of and during these Chapter 11 Cases based on the facts and circumstances, and the sale process was conducted in a non-collusive, fair, and good-faith manner.  The Sale Transaction must be approved and consummated promptly in order to preserve the viability of the Debtors' business as a going concern and to maximize the value of the Debtors' estates.  Time is of the essence to implement the APA and to consummate the Sale Transaction contemplated thereby without any interruption.

G.      The Buyer acted in good faith and conducted itself in a non-collusive and fair manner.  The Buyer is a "good-faith purchaser" within the meaning of sections 363(m) and 364(e) of the Bankruptcy Code, and, as such, is entitled to all the protections afforded thereby in the event that this Order is modified, amended, vacated, or reversed by a subsequent order of this Court or any other court on appeal.  No such appeal, modification, amendment, or vacatur shall affect the validity and enforcement of the Sale Transaction.  Neither the Debtors, the Prepetition ABL Secured Parties, the DIP Lenders, nor the Buyer have engaged in any conduct that would

cause or permit the APA to be avoided and/or costs and damages to be imposed under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) and 364(e) of the Bankruptcy Code. The Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction. The Buyer's payment of amounts owing under the APA is in good faith and for valid business purposes and uses. The Buyer is not an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between the Buyer and the Debtors.

H. Subject to the entry of this Order, each Debtor has: (i) full requisite corporate or other organizational power and authority to execute, deliver, and perform its obligations under the APA and all other documents contemplated thereby, and (ii) taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the execution, delivery, and performance of its obligations under the APA and to consummate the Sale Transaction, and upon execution thereof, the APA and the related documents are duly and validly executed and delivered by such Debtor and enforceable against such Debtor in accordance with its terms and, assuming due authorization, execution, and delivery thereof by the other parties thereto, constituted or will constitute a valid and binding obligation of such Debtor. Except with respect to the Purchased Entities, no government or regulatory approval, other than such approvals, the failure of which to obtain would not, individually or in the aggregate, reasonably be expected to be material to the Purchased Assets, are required for the execution, delivery, and performance by the Debtors of the APA or the consummation of the Sale Transaction contemplated thereby.

I. The total consideration provided by the Buyer for the Purchased Assets as reflected in the APA is the highest and otherwise best offer received by, and available to, the Debtors for

4

the Purchased Assets.  The Debtors' determination that the APA is the highest and otherwise best offer constitutes a valid and sound exercise of the Debtors' business judgment, and the Debtors' decision to enter into the APA and the Sale Transaction constitutes a proper exercise of the fiduciary duties of the Debtors and their officers, directors, and managers.  The offer of the Buyer, upon the terms and conditions set forth in the APA, including the total consideration to be realized by the Debtors thereunder, (i) is the highest and otherwise best offer received by the Debtors after an extensive and thorough marketing process, and (ii) is in the best interests of the Debtors, their creditors, their estates and other parties in interest.  Taking into consideration all relevant factors and circumstances, no other entity has submitted a higher or otherwise better offer to purchase the Purchased Assets from the Debtors, and the Sale Transaction is the best alternative for the Debtors.

J.      The Debtors have articulated good and sufficient business reasons for this Court to authorize (i) the Debtors' entry into the APA and consummation of the Sale Transaction, including the sale of the Purchased Assets to the Buyer, pursuant to the terms of the APA, (ii) the assumption of the Assumed Liabilities as set forth herein and in the APA, (iii) the Buyer's designation rights as set forth in the APA, including with respect to the Designated Contracts, and (iv) the assumption and assignment to Buyer of Purchased Contracts and Designated Contracts in accordance with the procedures set forth herein and in the APA.  Entry into the APA and consummation of the Sale Transaction are sound exercises of the Debtors' business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest.

K.      Sound business justifications also exists for the funding of the Excluded Cash. The Excluded Cash will avoid a freefall shutdown of the Debtors' remaining estates and will be

5

used for the purpose of providing funding of those professional fees and other expenses that are necessary to implement an orderly and responsible wind-down of the Debtors' estates. The Excluded Cash is reasonable under the facts and circumstances of these Chapter 11 Cases.

L.      The Debtors may sell the Purchased Assets free and clear of all claims, liens, interests, and encumbrances (other than Permitted Encumbrances and Assumed Liabilities expressly assumed under, or expressly permitted by, the APA) because, with respect to each creditor asserting a claim, lien, interest or encumbrance, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied, subject to Paragraph 15 of this Order. Those holders of claims, liens, interests, or encumbrances that did not object to or that withdrew their objections to the sale of the Purchased Assets or the Motion are deemed to have consented to the Motion and the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code, *provided*, however, that the Prepetition ABL Secured Parties only consent to the Sale Transaction upon the Cash Balance being paid directly to the Agent. Those holders of claims, liens, interests, or encumbrances that did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, therefore, are adequately protected. In addition, the DIP Agent (as defined in the *[Final DIP Order]* [Docket No. [●]] (the "DIP Order")), which holds a security interest in the Purchased Assets, has consented to the Sale Transaction on the terms set forth herein (including but not limited to the Cash Balance being paid directly to the Agent).

M.      The protections afforded to the Buyer under the Bankruptcy Code and this Order, including the sale of the Purchased Assets free and clear of all Encumbrances (other than the Permitted Encumbrances and Assumed Liabilities expressly assumed under, or permitted by, the APA), are critical to the Buyer. Absent such protections, the Buyer would not have entered into

the APA.  Further, absent such protections, the Buyer will not consummate the Sale Transaction contemplated thereby, thus materially and adversely affecting the Debtors, their estates, and their creditors.

N.    The total consideration to be provided under the APA reflects the Buyer's reliance on this Order to provide, pursuant to section 363(f) of the Bankruptcy Code, that, upon the Closing, the Buyer will have title to and possession of the Purchased Assets free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities expressly assumed under, or permitted by, the APA), subject to Paragraph 15 of this Order.

O.    The assumption and assignment of the Purchased Contracts pursuant to the terms of this Order is integral to the APA and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, is integral to the Sale Transaction and the transactions contemplated pursuant to the APA, and represents a reasonable exercise of sound and prudent business judgment by the Debtors. Payment of the Cure Costs, including amounts agreed by a contract counterparty in full settlement and satisfaction of any Cure Costs, by the Buyer shall (i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Purchased Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.  The Buyer's financial wherewithal to consummate the Sale Transaction contemplated by the APA and the evidence presented prior to or at the Hearing demonstrating the Buyer's ability to perform the obligations under the Purchased Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

P.       The Debtors have filed and served a notice of potential Purchased Contracts upon each non-Debtor counterparty to a Contract (the "Cure Notice"), identifying the amount, based on the Debtors' books and records, required to cure any and all defaults and actual pecuniary losses to the non-Debtor counterparties to all Contracts that could be Purchased Contracts or Designated Contracts resulting from such defaults, including, but not limited to, all claims, demands, charges, rights to refunds, and monetary and non-monetary obligations that the non-Debtor counterparties can assert under such Contracts, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to, the Contracts (the foregoing amounts as stated in the Cure Notice collectively referred to as the "Cure Costs") and a proposed settlement amount, which is the amount proposed by the Buyer to the Contract counterparty to pay such counterparty in full settlement and satisfaction of any Cure Costs (the "Cure Payment") .  The service and provision of the Cure Notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of the assumption and assignment of the Purchased Contracts or for establishing the Cure Cost for any respective Purchased Contract, including any Designated Contract.  Non-Debtor counterparties to the Purchased Contracts, including any Designated Contract, have had or will have, as applicable, an adequate opportunity to object to the assumption and assignment of the applicable Purchased Contract and the Cure Cost and Cure Payment as set forth in the Cure Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Buyer for purposes of section 365(c)(1) of the Bankruptcy Code).  The deadline for a non-Debtor counterparty to file an objection to the stated Cure Costs in the Cure Notice, as applicable, has expired and, to the extent any such party timely filed an objection, all such objections have been resolved,

withdrawn, overruled, or continued to a later hearing or other disposition by agreement of the parties or as otherwise provided in this Order.

Q.      The Buyer's designation rights with respect to Designated Contracts are integral to the APA, and as a result are in the best interests of the Debtors and their estates, and represent the reasonable exercise of the Debtor's business judgment. Specifically, the Buyer's designation rights (i) are necessary to sell the Purchased Assets to the Buyer, (ii) limit the losses suffered by counterparties to the Purchased Contracts, and (iii) maximize the recoveries to creditors of the Debtors by potentially limiting the number and amount of claims against the Debtors' estates arising out of the rejection of Contracts.

R.      The sale, conveyance, assignment, and transfer of any personally identifiable information pursuant to the terms of the APA and this Order complies with the terms of the Debtors' policy regarding the transfer of such personally identifiable information as of the Petition Date and, as a result, the consummation of the Sale Transaction is permitted pursuant to section 363(b)(1)(A) of the Bankruptcy Code. Accordingly, appointment of a consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

S.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the APA and this Order, including, without limitation, the Sale Transaction and the assumption and assignment of the Purchased Contracts prior to, and outside of, a chapter 11 plan because, among other things, the Debtors' estates will suffer irreparable harm if the relief requested in the Motion is not granted on an expedited basis. This Court expressly finds that there is no just reason for delay in the implementation of this Order.

T.      Pursuant to the terms of the APA and the DIP Order, the DIP Lenders are secured creditors of the Debtors, holding allowed claims in the amount of the DIP Obligations, which are secured by valid, binding, perfected, and enforceable first-priority security interests in and liens against each of the Debtors, their estates, and the property of their estates.  The Agent may credit bid solely in accordance with the DIP Credit Agreement and the DIP Order.  The Buyer is entitled to use its portion of the DIP Term Loan as a credit toward the Purchase Price, as set forth more fully in the DIP Credit Agreement, the DIP Order, and the APA.

U.      The APA was negotiated in good faith and at arm's-length.  The Buyer participated in good faith in these Chapter 11 Cases.  The consideration to be paid by the Buyer under the APA was negotiated at arm's-length and constitutes (i) fair, adequate, and reasonable consideration for the Purchased Assets and (ii) reasonably equivalent value for the Purchased Assets.  The terms and conditions set forth in the APA are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtors or their creditors under any applicable laws.

V.      The Buyer is not, and shall not be deemed to be, a mere continuation, alter ego, or successor in interest, and there is no continuity between the Buyer and the Debtors based upon the Sale Transaction, the APA, or this Order.  The Sale Transaction does not amount to a consolidation, merger, or de facto merger of the Buyer and the Debtors.

W.      The Sale Transaction does not constitute a sub rosa chapter 11 plan.  The Sale Transaction neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a chapter 11 plan of reorganization for any of the Debtors.

X.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Court expressly finds that there is

no just reason for delay in the implementation of this Order, and, sufficient cause exists for the waiver of any such stay. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction, as contemplated by the APA. The Buyer, being a good-faith purchaser under section 363(m) of the Bankruptcy Code, may close the Sale Transaction contemplated by the APA at any time after entry of this Order.

Y. As evidenced by the certificate of service filed with this Court at Docket No. [●]: (i) proper, timely, adequate, and sufficient notice of the Motion, the Hearing, the Sale Transaction, and this Order (the "Sale Notice") was provided by the Debtors on [●], 2023 via [first class mail]; (ii) the Sale Notice was good, sufficient, and appropriate under the particular circumstances; and (iii) no other or further notice of the Motion, the Hearing, the Sale Transaction, or this Order is required.

Z. Parties in interest were afforded a full opportunity to participate in the Hearing.

AA. The relief granted herein is in the best interests of the Debtors, their estates and creditors, and other parties in interest.

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is granted to the extent set forth herein.

2. All objections to the Motion or any other relief granted in this Order, to the extent not resolved, adjourned for hearing on a later date, waived, or withdrawn or previously overruled, and all reservations of rights included in any objection, are hereby overruled and denied on the merits, except as otherwise provided on the record at the Hearing.

3.     The APA and the Sale Transaction are hereby approved, and the Debtors are authorized to enter into and perform under the APA and other related agreements pursuant to sections 105, 363, 364, and 554 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, 6006, and 9014, each as applicable.  Each of the Debtors and the Buyer are hereby authorized and directed to take any and all actions necessary or appropriate to consummate the transactions contemplated therein.

4.     Notwithstanding anything to the contrary herein or in the APA, all amounts the Buyer is responsible for paying pursuant to the APA to the extent payable to a counterparty to a Purchased Contract or a Designated Contract shall be paid by the Buyer directly to such counterparty.

5.     During the Designation Rights Period, the Buyer may (i) assume and assign Designated Contracts pursuant to the APA with the consent of the counterparties to a Designated Contract or (ii) direct the Debtors to file a notice with this Court to assume and assign Designated Contracts to the Buyer upon payment of the resolved Cure Costs or Cure Payments, as applicable, in each case pursuant to section 365 of the Bankruptcy Code (a "Designation Notice").]

6.     At any time that is at least ten (10) days prior to the end of the Designation Rights Period, by written notice to the Debtors, Buyer may (i) send a Designation Notice or (ii) designate any Designated Contract to be an Excluded Contract (an "Excluded Contract Notice").

7.     Two (2) Business Days after delivery of an Excluded Contract Notice to the Debtors, any Designated Contract listed in such Excluded Contract Notice shall be deemed to be an Excluded Contract.

8.     For any Designated Contract that the Buyer directs the Debtors to assume and assign to the Buyer pursuant to paragraph 5(i) of this Order and that is subject to a written

12

agreement (each, an "Assumption Agreement") executed by and between the Buyer and a counterparty to a Designated Contract, such Designated Contract shall be deemed assumed by the Debtors and assigned to the Buyer pursuant to section 365 of the Bankruptcy Code in accordance with and effective as provided in the Assumption Agreement between the Buyer and the counterparty to a Designated Contract without further order of this Court. For the avoidance of doubt, the Buyer is authorized to enter into Assumption Agreements with counterparties to a Designated Contract. To the extent liabilities related to the Cure Costs are assigned to the Buyer pursuant to the APA, the Debtors shall not be liable for any Cure Costs related to Designated Contracts.

9.      Within two (2) business days of the expiration of the Designation Rights Period, the Debtors shall file a notice with this Court with an exhibit listing the Designated Contracts that were deemed Excluded Contracts during the Designation Rights Period.

10.     The Debtors are hereby authorized in accordance with section 365 of the Bankruptcy Code and the procedures set forth in this Order and in the APA to assume and assign the Purchased Contracts to the Buyer free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities expressly assumed under, or permitted by, the APA), subject to Paragraph 15 of this Order, and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Purchased Contracts to the Buyer as provided in the APA; *provided*, that Designated Contracts shall only be transferred free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities expressly assumed under, or permitted by, the APA) upon assumption or assumption and assignment of such Designated Contracts. The Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Purchased Contracts assumed and assigned in accordance with

13

the procedures set forth in the APA and this Order, notwithstanding any requirement for approval or consent by any person, except as set forth in paragraph 8 herein, and, to the extent permitted under section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from further liability with respect to the Purchased Contracts.

11.     To the extent that any counterparty to a Purchased Contract, including a Designated Contract, failed or fails to timely object to the proposed Cure Costs, such counterparty is deemed to have consented to such Cure Costs and the assumption and assignment of its respective Purchased Contract to the Buyer in accordance with the APA.

12.     Upon the Debtors' assignment of the Purchased Contracts to the Buyer in accordance with section 365 of the Bankruptcy Code, no default shall exist under any Purchased Contracts unless otherwise stipulated in the applicable Assumption and Assignment Agreement or in any order assuming or assuming and assigning a Purchased Contract, and no counterparty to any Purchased Contracts shall be permitted to declare a default by any Debtor or the Buyer, or otherwise take any action against the Buyer, as a result of any of the Debtors' financial condition, bankruptcy, or the Debtors' failure to perform any of its obligations under the relevant Purchased Contracts.  Any provision in a Purchased Contract that prohibits or conditions the assignment or sublease of such Purchased Contract or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision under section 365 of the Bankruptcy Code that is void and of no force and effect, but only in connection with any assumption and assignment authorized by this Order.  The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Purchased Contract shall not constitute

14

a waiver of such terms or conditions or of the Debtors' or the Buyer's rights to enforce every term and condition of the Purchased Contracts in accordance therewith.

13.     At the Closing, all of the Debtors' right, title, and interest in and to, and the possession of, the Purchased Assets shall be immediately vested in the Buyer pursuant to sections 363(b), 363(f), and 365 of the Bankruptcy Code; *provided*, that right, title, and interest in and to Designated Contracts shall be vested in the Buyer only upon assumption, or assumption and assignment, of such Designated Contract to the Buyer.  The transfer to the Buyer of the Debtors' rights, title, and interest in the Purchased Assets pursuant to the APA shall be, and hereby is deemed to be, a legal, valid, and effective transfer of the Debtors' rights, title, and interest in the Purchased Assets, and vests with or will vest in the Buyer all rights, title, and interest of the Debtors in the Purchased Assets, free and clear of all claims, liens, interests, and encumbrances of any kind or nature whatsoever (other than the Permitted Encumbrances and Assumed Liabilities expressly assumed under, or permitted by, the APA), with any such claims, liens, interests, and encumbrances attaching to the proceeds of the Sale Transaction to the extent any proceeds remain after the Cash Balance is paid directly to the Agent, with the same validity, extent, and priority as immediately prior to the sale of the Purchased Assets, subject to any rights, claims, and defenses of the Debtors and other parties in interest.

14.     This Order (a) shall be effective as a determination that upon the Closing that (i) no claims or causes of action arising from any period prior to the Closing other than the Assumed Liabilities can be asserted against the Buyer or any of its assets, (ii) the Purchased Assets shall have been transferred to the Buyer free and clear of all liens, claims, interests, and encumbrances, other than the Permitted Encumbrances, subject to Paragraph 15 of this Order, and (iii) the conveyances described herein have been effected; (b) is and shall be binding upon and govern the

acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the APA.

15.     Notwithstanding anything to the contrary contained in this Order, upon the Closing of the Sale Transaction, t, the Cash Balance shall be paid directly to Agent and applied in accordance with the DIP Credit Agreement and the DIP Order.  Any and all amounts paid to professionals for the DIP Agent and the RNN Lender at Closing are hereby approved in full and shall not be subject to avoidance, disgorgement, or any similar form of recovery by the Debtors or any other person, except in accordance with the DIP Order.

16.     The APA has been entered into, and the Sale Transaction contemplated under the APA is undertaken, by the Buyer in good faith, and the Buyer is a good-faith purchaser of the Purchased Assets as that term is used in section 363(m) of the Bankruptcy Code.  The Buyer is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.  Neither the Debtors nor the Buyer have engaged in any action or inaction that would cause or permit the Sale Transaction to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

17. The Buyer is entitled to use its portion of the DIP Term Loan as a credit toward the Purchase Price, as set forth more fully in the DIP Credit Agreement, the DIP Order and the APA.

18. The consideration provided by the Buyer for the Purchased Assets under the APA shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the sale of the Purchased Assets may not be avoided, or costs or damages imposed or awarded under section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or any other similar federal or state laws.

19. The APA and any related agreements, documents, or other instruments may be modified, amended, supplemented, or restated by the parties thereto in a writing signed by such parties, and in accordance with the terms thereof, without further order of this Court; *provided*, that any such modification, amendment, supplement, or restatement shall not cause a material adverse effect on the Debtors' estates, the Prepetition ABL Secured Parties, or the DIP Lenders, (ii) or a reduction in the Cash Balance.

20. The terms and provisions of the APA and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors (whether known or unknown), the Buyer, and each of their respective affiliates, successors, and assigns, and any affected third parties, including, without limitation, all Persons asserting Encumbrances (collectively, the "Bound Parties"), notwithstanding any subsequent appointment of any trustee, examiner, or receiver under the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other

17

fiduciary under the Bankruptcy Code or any other law with respect to any of the Bound Parties and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, receiver, party, entity, or other fiduciary.  The provisions of this Order and the terms and provisions of the APA shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors or converting these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.  The rights and interests granted pursuant to this Order and the APA shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns including, without limitation, any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to perform under the APA and this Order without the need for further order of this Court.

21.    Following the Closing of the Sale Transaction, no holder of any Encumbrance (other than Permitted Encumbrances and Assumed Liabilities expressly assumed under, or expressly permitted by, the APA) shall interfere with the Buyer's title to, or use and enjoyment of, the Purchased Assets based on or related to any such Encumbrance or based on any actions or inactions the Debtors may take in these Chapter 11 Cases.

22.    None of the Buyer or its affiliates, successors, assigns, equity holders, officers, directors, employees, or professionals shall have or incur any liability to, or be subject to, any action by any of the Debtors or any of their estates, predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the APA and the entry

18

into and consummation of the sale of the Purchased Assets, except as expressly provided in the APA or this Order.

23.    Neither the Buyer nor any of its respective affiliates, members, successors, assigns, equity holders, officers, directors, employees or professionals (each such entity and person individually and taken together, the "Buyer Group") shall be deemed, as a result of any action taken in connection with the APA, the consummation of the Sale Transaction contemplated by the APA, or the transfer, operation, or use of the Purchased Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtors, including a "successor employer" for the purposes of the Internal Revenue Code of 1986, the Employee Retirement Income Security Act of 1974, or other applicable laws (other than as expressly provided in the APA), (b) have any responsibility or liability for any obligations of the Debtors or any affiliate of the Debtors based on any theory of successor or similar theories of liability, (c) have, de facto or otherwise, merged with or into the Debtors, (d) be an alter ego or a mere continuation or substantial continuation of the Debtors (and there is no continuity of enterprise between the Buyer and the Debtors) including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, ERISA, tax law, labor law, products liability law, employment law, environmental law, or other law, rule, or regulation (including, without limitation, any filing requirement under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation, or (e) be holding itself out to the public as a continuation of any of the Debtors or their respective estates.

24.    The Buyer shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the Purchased Assets other than as expressly set forth in the APA or (b) any claims against the Debtors or any of their predecessors or affiliates.  Except as expressly

provided in the APA with respect to the Buyer, the Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Assets prior to the Closing.  Except to the extent expressly included in the Assumed Liabilities with respect to the Buyer, the Buyer shall have no liability or obligation under (a) the WARN Act (29 U.S.C. §§ 2101 et seq.), (b) the Comprehensive Environmental Response Compensation and Liability Act, (c) the Age Discrimination and Employment Act of 1967 (as amended), (d) the Federal Rehabilitation Act of 1973 (as amended), (e) the National Labor Relations Act, 29 U.S.C. § 151 et seq., or (f) any foreign, federal, state, or local labor, employment (including any rights under any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability) or environmental law, by virtue of the Buyer's acquisition of the Purchased Assets or the consummation of the Sale Transaction.  Without limiting the foregoing, the Buyer Group shall have no liability or obligation with respect to any (and there is no continuity of enterprise

20

between the Buyer and the Debtors) liabilities of the Debtors or any environmental or other liabilities associated with the Purchased Assets, except to the extent they are expressly identified as Assumed Liabilities set forth in the APA.  Other than as expressly set forth in the APA, the Buyer shall have no liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Assets prior to the Closing.

25.     The Buyer is a party in interest in these Chapter 11 Cases and shall have the ability to appear and be heard before this Court on all issues related to or otherwise connected to this Order, the Sale Transaction, and any issues related to or otherwise connected to the Sale Transaction and the APA.

26.     The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any related agreements in accordance with the terms and conditions thereof.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Order.

27.     Subject to and upon the Closing, the Debtors hereby waive any and all actions related to, and hereby release the Buyer and any of its agents and designees and their respective property from, any and all claims and causes of action relating to the Sale Transaction and the APA, whether known or unknown, now existing or hereafter arising, asserted or unasserted, mature or inchoate, contingent or non-contingent, liquidated or unliquidated, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, except to the extent specifically assumed or established under this Order.

28.     Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in

connection with or necessary to consummate the Sale Transaction contemplated by the APA. Nothing in this Order or the APA releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to any governmental unit that any entity would be subject to as the owner or operator of property after the Closing Date.  Without limiting the provisions of the foregoing sentence, but subject to section 525(a) of the Bankruptcy Code, no governmental unit may revoke or suspend any right, license, trademark, or other permission relating to the use of the Purchased Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale Transaction for the Purchased Assets.  Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

29.     Subject to the restrictions set forth in this Order, the Debtors and the Buyer are hereby authorized to take any and all actions as may be necessary or desirable to implement the Sale Transaction and to effectuate the relief granted in this Order, and any actions taken by the Debtors or the Buyer necessary or desirable to implement the Sale Transaction prior to the date of this Order are hereby approved and ratified.

30.     To the extent this Order is inconsistent with any prior order or pleading filed in these Chapter 11 Cases (other than the DIP Order), the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the APA, the terms of this Order shall govern.

31.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the APA, and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

32.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h) and 6006(d), the terms and conditions of this Order are immediately effective and enforceable upon its entry, and sufficient cause having been shown, this Court hereby waives any stay pursuant to Bankruptcy Rule 6004(h) and 6006(d) and expressly directs entry of judgment.

33.    The provisions of this Order are non-severable and mutually dependent.

34.    The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provisions, with it being the intent of this Court that the APA be authorized and approved in its entirety.

35.    Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Cases or any order confirming any such plan or in any other order in these Chapter 11 Cases (including any order entered after any conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Order shall alter, conflict with, or derogate from, the provisions of the APA or this Order.

36.    From time to time, as and when requested by any party and to the extent contemplated by the APA, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale Transaction contemplated by the APA, including such actions as may be necessary to

23

vest, perfect, or confirm, of record or otherwise, in the Buyer its right, title, and interest in and to the Purchased Assets.

37.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order and the APA.