**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| iMedia Brands, Inc., *et al.*,[1] | Case No. 23-10852 (KBO) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF
EUGENE LEE IN SUPPORT OF THE DEBTORS'
MOTION PURSUANT TO SECTIONS 105, 363, AND
365 OF THE BANKRUPTCY CODE FOR ENTRY OF AN
ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL
ENCUMBRANCES OTHER THAN ASSUMED LIABILITIES;
(II) APPROVING THE DEBTORS' ENTRY INTO THE ASSET
PURCHASE AGREEMENT; (III) AUTHORIZING ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**

I, Eugene Lee, hereby declare under penalty of perjury to the best of my knowledge, information, and belief:[2]

1. Except as otherwise indicated herein, all facts set forth in this declaration (this "Declaration") are based on my direct personal knowledge or views, my opinion based upon experience, or on information that I have obtained from the members of the Debtors' management,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642). The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' Motion Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code for Entry of an Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities; (II) Approving the Debtors' Entry Into the Asset Purchase Agreement; (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* (the "Sale Motion"), filed concurrently herewith.

the Debtors' other advisors, my review of relevant documents and/or employees of Lincoln Partners Advisors LLC ("Lincoln") working directly with me and under my supervision, direction, or control.  I am not being specifically compensated for this testimony other than through payments that Lincoln receives in its capacity as the Debtors' investment banker.   I am over the age of 18 years and am authorized to submit this Declaration on behalf of the Debtors.  If called upon to testify, I could and would competently testify to the facts set forth herein.

### I.     PROFESSIONAL BACKGROUND AND QUALIFICATIONS

2. I am a Managing Director at Lincoln, a multinational investment banking firm with approximately 900 professionals in more than 21 offices around the world.  In 2022 alone, Lincoln closed over 360 transactions and completed over 15,000 company valuations.  Lincoln and its senior professionals have extensive experience in providing investment banking services to various parties in complex situations, including both-in-and-out-of-court.

3. Lincoln has extensive experience representing debtors in a wide variety of bankruptcy cases, including Fast Radius Inc, IEK Auto Parts Holding, LLC (dba Auto Plus), Valeritas Holdings, Inc, Benevis Corp, Hobbico, Inc., Katy Industries, Bobs' Stores/Eastern Mountain Sports, Hancock Fabrics, Inc, Constar International, Northern Beef Packers, Summit Business Media, and CP Industries, among others.

4. I am a seasoned corporate restructuring professional with over 30 years of experience in high-profile buyside and advisory roles.  My background includes large and complex financial restructurings, mergers and acquisitions, distressed and regular way financings, and event-driven investments, including: Choice One Communications, Evercom Systems, Geneva Steel, High Voltage Engineering, IWO Holdings, Orbital Sciences, Source Media, US Unwired, The Williams Companies, DBSD/ICO Global, American Media, Reader's Digest, The Sports Authority, PG&E, Nextel Partners, Centennial Communications, BellSouth, Aladdin Gaming,

Global Crossing, Motient Corp. and Williams Communications Group, among others.

5. Over the course of my 30-year career, I have served both as a financial advisor to debtors and creditors in out-of-court and chapter 11 restructurings as well as an investor and member of ad-hoc committees on the creditor side. Immediately prior to joining Lincoln, I executed investments in distressed debt and event-driven investments at a number of hedge funds, most recently at Taal Capital and Fort Warren Capital, each funds that I founded, and prior to these funds at Regiment Capital and GSO Capital, where I led investments in the media, telecom, and retail sectors. Prior to that I was a Managing Director in the Restructuring Group at Evercore Partners, where I led many of their restructuring engagements.

## II. THE DEBTORS' PREPETITION MARKETING PROCESS

6. The Debtors engaged Lincoln on April 18, 2023 to serve as their investment banker, initially to assist in identifying new lenders to refinance the Prepetition ABL Facility. In consultation with the Debtors, and with approval from the Special Committee, Lincoln began exploring strategic alternatives, including sales of the Debtors or various assets and business units of the Debtors, to generate additional liquidity for the business. The business units initially considered included the 1-2-3.tv business of the Debtors' non-Debtor subsidiaries in Germany and iMDS, as the 1-2-3.tv and iMDS business units essentially operated as stand-alone units without much shared services. However, given the recent decline in performance at both the 1-2-3.tv and iMDS business units, as well as the urgent need to raise liquidity, and with approval of the Special Committee, Lincoln expanded the marketing process to solicit indications of interest for the entirety of the Company. To that end, Lincoln reached out to a targeted list of potential strategic buyers, some of whom the Company had previously been in discussions with regarding a sale or partnership, to solicit

interest in acquiring some or all of the Company's assets.

7. Between May 2023 and the Petition Date, Lincoln ran a marketing and sale process, which included an outreach to 285 potential buyers, including buyers for 1-2-3.tv, iMDS, and/or the consolidated operation. Overall, Lincoln contacted 159 potential buyers for iMDS, 79 potential buyers for 123tv, and 103 buyers for the Company as a whole.[3] Of the parties contacted by Lincoln, over 70 executed non-disclosure agreements and had preliminary conversations with the Debtors and their advisors regarding purchasing the Debtors' assets. Lincoln has continued to run the marketing and sale process postpetition.

8. As a result of the marketing process, the Debtors received two non-binding bids to acquire certain assets of the Company. These offers are preliminary and require a substantial amount of due diligence from the potential buyers before reaching binding offers. The Debtors have continued to engage with both potential purchasers to provide diligence in connection with these proposals.

9. The only binding offer that the Debtors received came from RNN-TV Licensing Co. LLC (the "Buyer"), who offered to purchase substantially all of the Debtors' assets. Lincoln and the Debtors had initial discussions with the Buyer about their interest in the Debtors in mid-May, and the Debtors subsequently engaged in good faith, arms'-length negotiations with the Buyer regarding the sale of the Company over the next several weeks. The Debtors received an indication of interest on June 15, 2023 from the Buyer, which included a willingness to provide junior DIP financing to help the Company's liquidity position through the Sale period.

### III. NEED FOR A TIMELY SALE PROCESS

10. The Debtors and their professionals have worked diligently to negotiate with the

---

[3] Of the 103 potential buyers contacted to purchase the Company as a whole, 56 were also contacted as potential buyers for either the iMDS or 1-2-3.tv businesses.

Buyer on the terms of the APA that would provide the best outcome for the Debtors' estates. The Buyer has agreed to a Purchase Price of $27,447,305.40 plus interest and fees (other than the ETF (as defined in the DIP Credit Agreement) owed under the DIP Credit Agreement (other than to the Buyer or its affiliates) and the Pre-Petition Credit Agreement (as defined in the DIP Credit Agreement), and expenses for professional fees of the DIP Lenders (other than the Buyer or its affiliates) and the Pre-Petition Lenders (as defined in the DIP Credit Agreement) (the "Cash Balance"), plus a credit of $7,500,000 plus interest, fees and expenses owed to the Buyer of its loans under the DIP Facility (the "Credit"), with the Credit allocated to payment of any such obligations under the DIP Credit Agreement, plus additional cash to provide minimum cash of $2,241,563 to the Debtors to facilitate a wind down of their estates, and the assumption of the Assumed Liabilities, including the payment of the Cure Costs for the Purchased Contracts. The Purchase Price, in my opinion, is fair and reasonable under the circumstances. Given the value ultimately provided by the APA, I believe a sound business reason exists for the approval of the APA.

11. The APA also includes an expense reimbursement for expenses incurred by the Buyer in connection with negotiating and documenting the APA. I believe that the expense reimbursement is also reasonable and appropriate given that the Buyer has committed substantial time and resources in connection with the APA, which has provided substantial value to the estates.

12. The APA was negotiated in good faith and at arm's length by the Debtors and the Buyer. Following weeks of negotiation, the Board determined that entering into the APA with the Buyers provided the best opportunity to maximize value for the Debtors' estates and all parties in interest.

13. I also believe that the proposed timeline for the Sale is reasonable. The Debtors

began marketing the assets of the Company in May 2023 and have continued marketing the Company postpetition. Lincoln has reached out to the interested buyers contacted prepetition, soliciting indications of interest by July 14, 2023, with final bids and executed documents due no later than 2 days prior to the hearing to approve the Sale. It is my view that the combination of the prepetition and postpetition marketing processes will ensure the highest and otherwise best value is received for the Debtors' assets. While the Company has continued its marketing efforts postpetition in earnest, I believe that the Sale to the Buyer as contemplated by the APA reflects the best and highest offer that the Debtors have received.

14. In addition, the Debtors' liquidity position does not support a process longer than the 5 weeks set forth in the Sale Motion. The Debtors have negotiated the consensual use of the DIP Facility on a limited budget, and the Debtors' ability to use cash collateral is conditioned upon strict sale milestones, including the requirement that the Debtors close on the Sale within 33 days from the filing of the Sale Motion. This shortened timeline reduces the risk of losing employees who are crucial to preserving the value of the Debtors' assets, further justifying a sale on the timeline proposed by the Debtors in the Sale Motion. In short, the Debtors must consummate a sale as soon as possible in order to avoid any further deterioration in their assets.

15. Accordingly, I believe pursuing the Sale in the manner set forth in the Sale Motion will maximize the value of the Debtors' estates and is in the best interest of the Debtors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: July 3, 2023

/s/ *Eugene Lee*
Eugene Lee
Managing Director
Lincoln Partners Advisors, LLC