**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| iMedia Brands, Inc., *et al.*,[1] | Case No. 23-10852 (KBO) |
| | (Joint Administration Requested) |
| Debtor. | **Re: Docket No. 88** |

**LIMITED OBJECTION OF SYNACOR, INC. TO THE DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POST-PETITION FINANCING, (B) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS TO POST-PETITION LENDERS AND (C) UTILIZE CASH COLLATERAL, (II) PROVIDING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) GRANTING RELATED RELIEF, PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363, 364, 503, 506, 507 AND 552, AND (V) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AND LOCAL RULE 4001-2**

Synacor, Inc. ("**Synacor**"), by and through its undersigned counsel, hereby files this limited objection ("**Objection**") to the Debtors' motion to authorize debtor in possession financing [Docket No. 88] (the "**DIP Financing Motion**")and entry of an order approving the debtor in possession financing on a final basis ("**Final DIP Order**"). In support of this Objection, Synacor respectfully states as follows:

**I.    PRELIMINARY STATEMENT**

1.      Two of the Debtors, Portal Acquisition Company ("**PAC**") and its parent, iMedia Brands, Inc. ("**iMedia**"), are indebted to Synacor in the amount of approximately $4 million pursuant to that certain Secured Promissory Note, dated July 30, 2021 (as amended, restated,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642) (collectively, the "Debtors").  The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

modified, supplemented, or extended from time to time, the "**Synacor Promissory Note**"), by and

between Debtors PAC, as borrower, and iMedia Brands Inc., as parent and unsecured guarantor.

PAC's obligations to Synacor are secured by liens on all of PAC's assets. The debt arose as part

of PAC's purchase of assets from Synacor, with a secured promissory note executed to evidence

seller financing.  *See* First-Day Declaration; *Interim Order (I) Authorizing the Debtors to (A)*

*Obtain Post-Petition Financing, (B) Grant Liens and Superpriority Administrative Expense*

*Claims to Post-Petition Lenders and (C) Utilize Cash Collateral, (II) Providing Adequate*

*Protection to Pre-Petition Secured Parties, (III) Modifying the Automatic Stay, (IV) Granting*

*Related Relief, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364, 503, 506, 507 and 552,*

*and (V) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2*

[Docket No. 116] (the "**Interim DIP Order**")[2].

2.      The Interim DIP Order and, upon information and belief, the Final DIP Order,

unjustifiably strips the limited protections to Synacor and other creditors by waiving, among other

things, the equitable doctrine of "marshaling" and any similar equitable doctrine with respect to

any of the Pre-Petition Revolving Collateral or DIP Collateral. *See* Interim DIP Order ¶9.

3.      Accordingly, Synacor hereby objects to the entry of a Final DIP Order on the basis

that PAC's creditors are unfairly forced to bear the burden of the DIP Loans primarily for the

benefit of iMedia's other businesses. The structure of the Debtors' post-petition financing should

not be permitted to unjustly erode the value of assets that would otherwise benefit PAC's other

pre-petition creditors without the protections afforded under the Bankruptcy Code and in equity.

---

[2] Capitalized terms used but not defined herein have the meanings given in the Interim DIP Order.

## II.   BACKGROUND

4.      On July 3, 2023, the Debtors filed the *Debtors' Motion Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code for Entry of an Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities; (II) Approving the Debtors' Entry Into the Asset Purchase Agreement; (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Docket No. 93] (the "**Sale Motion**").

5.      Also on July 3, 2023, the Debtors and RNN-TV Licensing Co., LLC (the "**Buyer**") entered into that certain Asset and Equity Purchase Agreement (such agreement, together with all schedules and exhibits attached thereto, the "**APA**" attached as Exhibit B to the Sale Motion and the transactions contemplated therein, collectively, the "**Sale**").

6.      The APA does not contemplate the sale of PAC's assets to the Buyer as part of the Sale and does not allocate any proceeds for the benefit of PAC's estate.

7.      On July 6, 2023, the Court entered the Interim DIP Order authorizing on an interim basis, *inter alia*, the Debtors to obtain post-petition financing from the pre-petition secured lender, Siena Lending Group, LLC ("**Siena**"), as DIP Agent and DIP Lender, other financial institutions from time to time party to the DIP Credit Agreement including, with respect to $7.5 million of the $15 million in post-petition loans consisting of new loans to the Debtors, the Buyer. The DIP financing is for the primary purpose of facilitating Sale to the Buyer and ensure a generous recovery for Siena and the other DIP Lenders, with no regard for the sale of PAC's assets.

8.      Despite that PAC's estate will not share in the benefit of the Sale, its assets are supporting the Sale by being pledged to secure the DIP Loans. *See* Interim DIP Order at II(a)(1).[3]

---

[3] In connection with Interim Cash Collateral Order and Interim Order, Synacor confirmed with the Debtors that the cash generated from the operation of PAC's business would not be transferred to the other Debtors or use to fund

This creates a situation where PAC's assets are essentially funding the DIP Loans and the Sale without any benefit in return, despite the Debtors' estates have not been substantively consolidated.

9.      Yet, according to the First Day Declaration, the media commerce segment of the Debtors' businesses, primarily comprised of PAC's business, is appreciably profitable. *See* First Day Declaration ¶19 ("The Company reported operating income of $4.9 million for this segment in fiscal 2022. Conversely, the Company reported operating income of $2.6 million for this segment in fiscal 2021."). As such, the post-petition financing is not necessary for PAC's continuation as a going and is not in the best interests its bankruptcy estate.

10.      Further the Debtors seek entry of a Final DIP Order that unfairly and inequitably strips the limited protections to creditors of PAC and the other Debtors by, among other things, waiving the equitable doctrine of "marshaling" and any similar equitable doctrine with respect to any of the Pre-Petition Revolving Collateral or DIP Collateral. *See* Interim DIP Order ¶9.

11.      Accordingly, Synacor respectfully requests that the Court deny the approval of the Final DIP Order to the extent it provides waiver of the equitable doctrine of marshalling or modify such Final DIP Order to exclude this waiver.

## III.    LIMITED OBJECTION

12.       In determining whether to approve post-petition financing, courts consider, among other things, whether the financing "is in the best interests of the estate and its creditors" and whether "the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender." *See, e.g.*, *In re LA Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del. 2011) (citing *Norris Square Civic Ass'n v. St. Mary Hosp.* (*In re St. Mary*

---

any of the other Debtors' expenses. To the extent the Debtors seek to use funds generated from the operation of PAC's business for any purpose other than to fund PAC's ordinary course expenses for operations, Synacor objects on the basis that its interests in such Cash Collateral are not adequately protected and its has not consented to such use.

*Hosp.*), 86 B.R. 393, 401 (Bankr. E.D. Pa. 1988)); *In re Anpath Gp., Inc.*, No. 10-11652 (KJC), 2010 Bankr. LEXIS 5860 (Bankr. D. Del. May 25, 2010); *In re Mid-State Raceway, Inc.*, 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005) (citing *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003)); *see* also 15 Collier on Bankruptcy § 18.52 (16th 2023). Courts look with suspicion on financings that "would tilt the conduct of the bankruptcy case" or "prejudice, at an early stage, the powers and rights that the Bankruptcy Code confers for the benefit of all creditors." *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990).

13.     Here, the DIP Loans are exclusively designed to benefit the Buyer and other DIP Lenders by funding the other Debtors until the Sale is approved and consummated. As previously noted, PAC is not part of the Sale and, as such, PAC's estate and creditors are set to obtain, at maximum, marginal benefits from the DIP Loans. Yet, the PAC estate is forced to bear the burdens that accompany the DIP Loans to the detriment of its other creditors. While Synacor does not oppose the Sale in principle,[4] Synacor believes the DIP Loans, under the terms proposed through the Final DIP Order, are not in the best interests of the estate of PAC and should not be approved. As a court of equity, this Court should not allow the Buyer and other DIP Lenders to deny PAC's creditors the equitable protections they would otherwise be afforded, especially marshalling.

14.     The Debtors propose to waive the equitable doctrine of "marshalling." *See* Interim DIP Order ¶9, X(I). This is an improper and impermissible maneuver of the Buyer and other DIP Lenders to ensure they receive repayment in full at the expense of PAC's other creditors, including Synacor. The equitable doctrine of marshalling requires a secured creditor to exhaust collateral unencumbered by junior liens before it may satisfy its debt with collateral that also secures a junior creditor. *Meyer v. United States*, 375 U.S. 233, 236 (1963) ("a creditor having two funds to satisfy

---

[4] Synacor's objections to certain terms requested by the Debtors in connection with the Sale are expressly reserved and nothing herein shall constitute or be deemed to constitute a waiver of Synacor's rights with respect to the Sale.

his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds.").

15.     The waiver of the marshalling doctrine only benefits the Buyer and other DIP Lenders, is completely unnecessary, and is detrimental to the interests of other creditors. Despite the Buyer's and other DIP Lenders' general first-priority lien position on substantially all of the Debtors' assets, the Buyer and other DIP Lenders compete with Synacor with regard to the assets of PAC's estate. Waiver of the marshalling doctrine inequitably grants the DIP Lenders the discretion to squeeze Synacor out by placing Synacor in an under-secured and possibly unsecured position with no recovery at all on Synacor's secured claim while the DIP Lenders enjoy an increasingly advantageous position with security on substantially all, if not all, of each Debtor's estate's respective property.

16.     Especially in light of the fact that PAC's estate receives no benefit from the Sale, it would be highly prejudicial to Synacor to allow the DIP Lenders to deplete assets available for distribution to PAC's creditors when the DIP Lenders have unfettered access to the larger pool of assets of the other Debtors and the purpose of the DIP Loans is to facilitate the Sale, allow the Buyer to receive the other Debtors' assets, and maximize the recovery of the DIP Lenders.

17.     The Debtors promise adequate protection in the form of replacement liens, administrative expense claims, and adequate protection payments limited to the PAC estate. *See* Interim DIP Order at Section IV(B). Synacor believes this adequate protection to be titular and wholly insufficient if PAC's remaining assets may be used to repay the DIP Lenders for DIP Loans made to facilitate a Sale through which Synacor will not receive any proceeds.

18.     As such, approval of the DIP Loan on a final basis with the waiver of the equitable doctrine of marshalling would be unjust and prejudicial. Accordingly, the Final DIP Order should

6

be denied to the extent it provides an advanced waiver of marshalling or modified to exclude such waiver.

## IV.     RESERVATION OF RIGHTS

3.      Synacor hereby expressly reserves all rights, remedies, and objections including without limitation, those pursuant to and under the Bankruptcy Code, other applicable Law, and the Interim DIP Order, including but not limited to Section VIII of the Interim DIP Order. Synacor specifically reserves all rights to file a Challenge in accordance with its rights under the Interim DIP Order. Synacor further specifically reserves all rights to file an objection to the Sale.

## IV.     CONCLUSION

Based upon the foregoing, Synacor respectfully requests this Court, deny the entry of the Final DIP Order, of if the Court enters the Final DIP Order, that the relief in the Final DIP Order exclude the waiver of the equitable remedy of marshalling, and grant such other and further relief as the court deems just and proper.

Dated:  July 17, 2023
Wilmington, Delaware                    */s/ Chantelle D. McClamb*
                                        Chantelle D. McClamb (No. 5978)
                                        **GIBBONS P.C.**
                                        300 Delaware Avenue, Suite 1015
                                        Wilmington, Delaware 19801-1671
                                        Tel: (302) 518-6300
                                        Fax: (302) 397-2011
                                        Email: cmcclamb@gibbonslaw.com

                                        and

                                        Curtis L. Tuggle, Esq. (admission *pro hac vice* pending)
                                        **THOMPSON HINE LLP**
                                        3900 Key Center
                                        127 Public Square
                                        Cleveland, Ohio 44144
                                        Telephone: (216) 566-5904
                                        Email: curtis.tuggle@thompsonhine.com

and

Jonathan Hawkins, Esq. (admission *pro hac vice* pending)
**THOMPSON HINE LLP**
10050 Innovation Drive, #400
Miamisburg, Ohio 45342
Telephone: (937) 443-6860
Email:jonathan.hawkins@thompsonhine.com

*Counsel for Synacor, Inc.*