IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>iMedia Brands, Inc., *et al.*,[1]<br><br>　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 23-10852 (KBO)<br><br>(Jointly Administered)<br><br>Related to Docket No. 132 |

**OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO THE NOTICE TO
CONTRACT PARTIES TO POTENTIALLY ASSUMED
EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of iMedia Brands, Inc. and its debtor affiliates (collectively, the "Debtors") hereby objects (the "Objection") to the *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* (the "Assumption Notice")[2] and, in support, respectfully states as follows:

**BACKGROUND**

1.　The Debtors commenced these cases to pursue a fast-track sale of their assets. To that end, on July 3, 2023, the Debtors filed a motion (the "Sale Motion")[3] seeking authorization to sell substantially all their assets and to assume and assign certain executory contracts and unexpired leases as part of the sale. In connection with the Sale Motion, the Debtors filed the

---

[1]　The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642). The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

[2]　Docket No. 132.

[3]　Docket No. 93.

Assumption Notice, notifying contract counterparties of the potential assumption and assignment of their contracts (the "Purchased Contracts").

2.  The Sale Motion states that the Assumption Notice will provide (a) the "proposed amounts required to cure all monetary defaults under a Purchased Contract to the extent required by section 365 of the Bankruptcy Code in connection with the assumption and assignment of such Purchased Contract" (the "Cure Costs") and (b) the "settlement amount that the [to-be-determined buyer] proposes to pay in satisfaction of such Cure Costs" (the "Proposed Cure Payments").  The Assumption Notice identifies nearly 200 agreements as being subject to potential assignment.  By the Debtors' own calculations, the great majority of those agreements require payment of Cure Costs as a condition to such assignment.  In some instances, the necessary Cure Costs are well over a million dollars.  Even so, the Assumption Notice inexplicably lists the Proposed Cure Payments as being $0 *for every single Purchased Contract*.

## OBJECTION

3.  To assign a contract or lease, a debtor must first "assume[] such contract or lease in accordance with the provisions of [section 365]."  11 U.S.C. § 365(f)(2)(A).  One requirement for assumption is that the debtor cure outstanding defaults.  *See id.* at § 365(b)(1)(A).

4.  "Cure is a critical component of assumption."  *In re Thane Int'l, Inc.*, 586 B.R. 540, 549 (Bankr. D. Del. 2018).  The cure requirement of section 365(b) is unconditional and does not require counterparties to request a cure.  To the contrary, debtors have a statutory duty to cure outstanding defaults.  *Adventure Res. Inc. v. Holland*, 137 F.3d 786, 798 (4th Cir. 1998) (describing the "statutory duty to cure any existing default"); *In re Off. Prod. of Am., Inc.*, 140 B.R. 407, 410 (Bankr. W.D. Tex. 1992) (debtors have an "affirmative duty" to "cur[e] any outstanding defaults").

5. Despite conceding that the vast majority of the Purchased Contracts have defaults that must be cured, the Debtors propose giving every single counterparty $0 unless they object. This approach was plainly devised to create an additional hoop for counterparties to jump through before receiving payment of Cure Costs (to which counterparties are statutorily entitled). The obvious hope is that some counterparties will not object, effectively allowing the Debtors to sidestep the Bankruptcy Code's express requirements. For many Purchased Contracts, the Cure Costs are minimal (a few thousand dollars), making it cost prohibitive for counterparties to retain counsel and file an objection. The Debtors, who must recognize this fact, presumably selected this procedure to ensure that those counterparties will have no real choice but to forfeit their cure payment.

6. The Debtors' chosen procedure is as wasteful as it is unfair. Normally, debtors offer a good-faith proposal regarding the required cure payment, and counterparties need only object if they disagree. Here, every single counterparty needs to file an objection to receive any cure payment whatsoever. There is no legitimate reason for requiring dozens and dozens of parties to file objections when the Debtors openly acknowledge the appropriate Cure Costs that must be paid.

7. In short, the Debtors should not be permitted to skirt their statutory duty to pay Cure Costs by imposing an unjustifiable duty on contract counterparties to demand such payment.

## RESERVATION OF RIGHTS

8. The Committee intends to file a more fulsome objection to the Debtors' Sale Motion by the applicable objection deadline (as such deadline has been extended for the Committee), but is filing this Objection to the Debtors' Assumption Notice now to help alleviate

3

the confusion regarding the proposed assumption procedures being experienced by contract counterparties. The Committee reserves the right to object to all aspects of the relief sought in the Sale Motion by the applicable objection deadline.

## CONCLUSION

WHEREFORE, for the reasons above, the Committee requests that the Court deny approval the Debtors' proposed contract assumption procedures until they are revised to comply with applicable law.

| | |
|---|---|
| Dated: July 20, 2023<br>Wilmington, Delaware | **MCDERMOTT WILL & EMERY LLP**<br><br>*/s/ David R. Hurst*<br>David R. Hurst (I.D. No. 3743)<br>The Nemours Building<br>1007 North Orange Street, 10th Floor<br>Wilmington, DE 19801<br>Telephone:   (302) 485-3900<br>Facsimile:    (302) 351-8711<br>E-Mail:         dhurst@mwe.com<br><br>*- and -*<br><br>Darren Azman (admitted *pro hac vice*)<br>Kristin Going (admitted *pro hac vice*)<br>Stacy A. Lutkus (admitted *pro hac vice*)<br>Lucas B. Barrett<br>One Vanderbilt Avenue<br>New York, NY 10017<br>Telephone:   (212) 547-5400<br>Facsimile:    (212) 547-5444<br>E-mail:         dazman@mwe.com<br>                     kgoing@mwe.com<br>                     salutkus@mwe.com<br>                     lbarrett@mwe.com<br><br>*Proposed Counsel to the Official Committee of Unsecured Creditors* |