## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| iMedia Brands, Inc., *et al.*,[1] | Case No. 23-10852 (KBO) |
|  | (Jointly Administered) |
| Debtors. | **Ref. Docket Nos. 93, 215** |

### REPLY OF SIENA LENDING GROUP, LLC IN RESPONSE TO
### LIMITED OBJECTION BY C&B NEWCO, LLC TO SALE MOTION

Siena Lending Group, LLC ("**Siena**"), in its capacity as (i) agent for itself and the other

Pre-Petition Revolving Lenders[2] and (ii) agent for itself and the other DIP ABL Lenders under the

DIP Credit Agreement replies as follows to the limited objection [Docket No. 215] (the "**Hilco**

**Objection**") filed by C&B Newco, LLC ("**Hilco**") to the *Debtors' Motion Pursuant to Sections*

*105, 363, and 365 of the Bankruptcy Code for Entry of An Order (I) authorizing the Sale of*

*Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed*

*Liabilities; (II) Approving the Debtors' Entry Into the Asset Purchase Agreement; (III) Authorizing*

*Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV)*

*Granting Related Relief* [Docket No. 93] (the "**Sale Motion**").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642).  The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed such terms in the *Interim Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Liens and Superpriority Administrative Expense Claims to Post-Petition Lenders and (C) Utilize Cash Collateral, (II) Providing Adequate Protection to Pre-Petition Secured Parties, (III) Modifying  the Automatic Stay, (IV) Granting Related Relief, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364, 503, 506, 507 and 552, and (V) Scheduling A Final Hearing Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2* [Docket No. 116] (the "**Interim DIP Order**").

## PRELIMINARY STATEMENT

1.     The Hilco Objection fails for two reasons.  First, Hilco lacks standing to object to the Sale Motion because such motion does not seek to sell any of Hilco's consigned goods.  Indeed, the APA attached to the Sale Motion is clear the "Consigned Inventory" subject to Hilco's security interests constitutes "Excluded Assets."  Accordingly, Hilco has no interest in the Purchased Assets (as defined in the APA) or the sale proceeds and thus lacks standing to challenge the sale.

2.     Second, although captioned as a "sale objection", the Hilco Objection is anything but that – it spends no time on actual sale issues but instead focuses solely on attacking the priority of Siena's security interest in Hilco's consigned merchandise.  A sale objection is an improper context for a competing secured creditor to bring a prepetition lien priority dispute.  Such a dispute must be commenced through an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(2). As Hilco has not done so, its objection should be overruled.

3.     Even worse, the Hilco Objection is misleading as to Hilco's sale/consignment-back transaction with the Debtors and makes specious allegations that are contradicted directly by the terms of the underlying contract and correspondence attached to this Reply.  When entering into its sale/consignment-back transaction with Debtors in late 2022, Hilco knew that upon selling the previously consigned goods to Debtors, Siena would hold a senior security interest in those goods by virtue of its prior perfected security interest.  Furthermore, a large portion of the goods purchased by Hilco were not even part of the original consignment arrangement and were therefore subject to Siena's prior perfected security interest when Hilco purchased them from iMedia.  As a result, Hilco as consignor could not be senior to Siena unless Siena consented in writing, so Hilco initially sought Siena's consent.   When Siena did not provide consent, Hilco voluntarily chose to close the sale/consignment-back transaction with the Debtors anyway, obtaining a secured position

132308186

in the consigned goods that is junior in all respects to Siena's blanket security interest.  Hilco did

so at its own peril, but now seeks to manufacture a dispute for negotiating leverage.  However,

these machinations are contradicted by not only the Master Agreement between Hilco and the

Debtors but also Hilco's counsel's own emails with Siena that acknowledge no consent had been

provided.

4.    In a nutshell, Siena's position is easy to understand from the perspective of secured

financing transactions under the Uniform Commercial Code[3]:

- In March 2021, Hilco began consigning goods to iMedia pursuant to an original consignment agreement.

- In July 2021, Siena provided financing to the Debtors on a secured basis with a first priority security interest in substantially all assets of the Debtors.

- In November 2022, based on an alleged need for payment reconciliation and additional liquidity, among other things, iMedia, Hilco and a Hilco affiliate structured a sale/consignment-back transaction to be effected through a Master Agreement and an amended and restated Hilco consignment agreement.

- The first step of the sale/consignment-back transaction – the sale by Hilco to iMedia of all remaining goods under the original consignment agreement - extinguished Hilco's security interest in those previously consigned goods.  The second step consisted of Hilco's purchase from iMedia of goods that were subject to Siena's prior perfected security interest.

- Because Siena's pre-existing secured financing documents prohibited the non-ordinary course of business sale of inventory that Hilco proposed in connection with the sale/consignment-back transaction, Hilco would be junior to Siena's prior perfected security interest unless Hilco obtained Siena's written consent.  Indeed, the sale/consignment-back transaction documents specifically required Siena's consent as a condition precedent.

- Notwithstanding the need for Siena's consent, Hilco – to its detriment – closed and consummated the sale/consignment-back transactions without Siena's consent.

---

[3] By setting out the factual background for completeness, Siena does not consent to Hilco's attempt to avoid the requirements of Fed. Bankr. R. 7001(2).  To the extent Hilco seeks to assert a challenge to Siena's lien priority, it must comply with the appropriate procedural requirements by commencing an adversary proceeding.

132308186

- Because Hilco failed to obtain Siena's consent, all of the goods acquired by iMedia from Hilco constituted "collateral" under the Siena financing documents subject to Siena's senior security interest permitting Siena to apply such proceeds to the ABL indebtedness.

- In December 2022, the Debtors acknowledged their failure to obtain the requisite Siena consent for the non-ordinary course sale of inventory to Hilco.

## <u>RELEVANT BACKGROUND</u>

**A.     Chapter 11 Cases**

5.      On June 28, 2023, iMedia Brands, Inc. ("**iMedia**") and certain affiliated debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6.      On July 3, 2023, the Debtors filed the Sale Motion, which attaches the APA (as defined therein) as <u>Exhibit B</u> thereto.

7.      Section 2.03(t) of the APA makes clear that "[n]otwithstanding any provision in this Agreement to the contrary, Sellers shall not be deemed to sell, transfer, assign, convey or deliver, and Sellers will retain all right, title and interest to, in and under…Consigned Inventory unless an election is made by Buyer pursuant to Section 7.15."[4] APA § 2.03(t).

8.      On July 6, 2023, this Court entered the Interim DIP Order.

---

[4]    Under the APA, "Consigned Inventory" means those goods consigned by Hilco to iMedia pursuant to (i) that certain Consignment Agreement, dated as of March 1, 2021, between Hilco and iMedia and (ii) that certain Amended and Restated Consignment Agreement effective as of November 23, 2022, between Hilco and iMedia.

Section 7.15 of the APA provides that "[a]t any time prior to 11:59 p.m. New York Time on the date that is three (3) Business Days prior to the Sale Hearing, Buyer may, in its sole discretion and by written notice to the Company, elect to include the Consigned Inventory as a Purchased Asset, without an attendant increase in the Purchase Price; provided, however, that Buyer may only make such election if Buyer has entered into an agreement with [Hilco] regarding the Consigned Inventory that does not require any Seller to make any additional payment to [Hilco] on account of the Consigned Inventory prior to or at the Closing. For the avoidance of doubt, if Buyer does not enter into such agreement in connection with the requirements of the foregoing sentence or provides the Company with prior written notice of its intention not to enter into such agreement, the Consigned Inventory shall automatically, without any further action of any Parties hereto, be deemed to be an 'Excluded Asset.'"

132308186

**B.**     **Hilco Consignment Agreements and the Siena Credit Agreement**

*(1)     Original Hilco Consignment Agreement*

9.      Hilco asserts that on March 1, 2021, iMedia and Hilco entered into that certain *Consignment Agreement* (the "**Original Hilco Consignment Agreement**") attached as Exhibit 1 to the Hilco Objection.

10.     Hilco further asserts that on March 3, 2021, it "filed a financing statement with the Office of the Secretary of State of Minnesota" [Hilco Objection, ¶ 2] and attaches a financing statement (the "**Original Hilco UCC-1**") as Exhibit 2 to the Hilco Objection.

*(2)     Siena Pre-Petition ABL Financing*

11.     On July 30, 2021, Siena entered into that certain *Loan and Security Agreement* (as amended, restated, amended and restated, modified, supplemented, or extended from time to time, the "**Siena Credit Agreement**") by and among iMedia and certain affiliated borrowers from time to time party thereto (the "**Pre-Petition ABL Borrowers**"), affiliated guarantors from time to time party thereto, and the financial institutions party thereto from time to time (the "**Pre-Petition ABL Lenders**"), as admitted, stipulated, acknowledged, and agreed by the Debtors. *See generally* Interim DIP Order, including Paragraph H therein.

12.     Pursuant to the Siena Credit Agreement, Siena and the Pre-Petition ABL Lenders made loans and advances, and provided other financial accommodations, to the Pre-Petition ABL Borrowers. *Id.*  Further, pursuant to the Siena Credit Agreement and all security agreements, pledge agreements, notes, mortgages, guarantees, control agreements, collateral access agreements, and related agreements and documents, including without limitation the financing statement attached hereto as **Exhibit A** (the "**Siena's UCC-1**"), Siena at all relevant times had valid, binding, perfected, enforceable, and non-avoidable first priority security interests in and

liens upon, for the benefit of Siena and the Pre-Petition ABL Lenders, the "Collateral" (as defined in the Siena Credit Agreement).  *Id.*

13.     Section 5.25(d) of the Siena Credit Agreement includes a negative covenant prohibiting the Pre-Petition ABL Borrowers and their subsidiaries from selling, transferring, returning, or disposing of, among other things, Inventory (as defined therein) outside the ordinary course of business, without Siena's written consent:

> **5.25    Negative Covenants.**  No Loan Party shall, and no Loan Party shall permit any of its Subsidiaries to, without Agent's prior written consent:
>
> > (d)      sell, transfer, return, or dispose of any Collateral or other assets, other than:
> >
> > > (i)      the sale by Loan Parties of Inventory in the ordinary course of its business,

*See* Siena Credit Agreement, § 5.25(d).[5]

14.     Section 7.1(c) of the Siena Credit Agreement makes it an "Event of Default" thereunder if any of the Pre-Petition ABL Borrowers default "in due observance or performance" of, among other things, negative covenants under Section 5.25 thereof:

> **7.      EVENTS OF DEFAULT AND REMEDIES.**
>
> > **7.1    Events of Default.**  The occurrence of any of the following events shall constitute an *"Event of Default"*:
> >
> > > (c)      (1)    if any Loan Party defaults in the due observance or performance of any covenant, condition or agreement contained in Section 3.2, 4.1, 4.6, 4.7, 4.8, 5.2, 5.3, 5.13, 5.14, 5.15, 5.17, 5.24, 5.25, 5.26, 5.28 or 5.29 of this Agreement; or

*See* Siena Credit Agreement, § 7.1(c).

---

[5]      Siena will produce a copy of the Siena Credit Agreement to any objecting party upon request.

132308186

(3)    *Master Agreement*

15.    On November 23, 2022, Hilco, its affiliate, C&B IPCO, LLC (the "**Licensor**"), and iMedia consummated that certain *Master Agreement* dated November 23, 2022 (the "**Master Agreement**").  *See* Hilco Objection, ¶ 10.  Hilco acknowledges the existence of the Master Agreement in the Hilco Objection.[6]  *See* Hilco Objection, ¶ 6.

16.    The Master Agreement effected a three-step transaction (collectively, the "**sale/consignment-back transaction**"):

- First Transaction:  Pursuant to Section 2 of the Master Agreement, in connection with certain reconciliations, the parties agreed that (a) a net amount was owed to the Licensor and (b) Hilco "shall be deemed to have sold, transferred, conveyed, and assigned any Consigned Goods [as defined in the Original Hilco Consignment Agreement] remaining unsold as of the Effective Date to iMedia, with such sale to be ***free and clear of all liens, claims and encumbrances of whatever kind or nature***." Master Agreement, § 2 (***emphasis added***).

- Second Transaction: Pursuant to Section 3 of the Master Agreement, Hilco agreed to purchase from iMedia and iMedia agreed to sell to Hilco all of the iMedia Goods identified in Exhibit A to the Master Agreement (collectively, the "**iMedia Goods**") and vested Hilco with all right, title, and interest of iMedia in the iMedia Goods.[7]  *See* Master Agreement, § 3.  The proceeds from the sale of the iMedia Goods to Hilco were paid directly to iMedia and not to Siena.

- Third Transaction: Pursuant to Section 4, and subject to the satisfaction of the conditions precedent in Section 5, iMedia and Hilco agreed they would enter into and deliver the Hilco A&R Consignment Agreement (as defined below), which consigned the iMedia Goods back to iMedia.  *See* Master Agreement, § 4.

17.    The parties to the Master Agreement acknowledged the existence of the Siena Credit Agreement in the recitals thereto.  *Id.*

---

[6]    The Hilco Objection omits the Master Agreement, so Siena attaches a copy hereto as **Exhibit B.**

[7]    Pursuant to UCC § 9-315(a)(1), a security interest "continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof ***unless the secured party authorized the disposition free of the security interest.***"  UCC § 9-315(a)(1)(***emphasis added***).

132308186

18.     Section 5(d) of the Master Agreement established, as a condition precedent to the parties' obligations (subject to waiver or satisfaction), the "[e]xecution of a consent and acknowledgement agreement by [Siena], in form and substance reasonably acceptable to [Hilco], with respect to the priority and treatment of [Hilco's] interests in and to the Consigned Goods (as defined in the [Hilco] A&R Consignment Agreement) and proceeds and products thereof." Master Agreement, § 5(d).

            *(4)     Hilco A&R Consignment Agreement*

19.     Hilco admits that it and iMedia amended and restated the Original Hilco Consignment Agreement [Hilco Objection, ¶ 10] effective as of November 23, 2022 (the "**Hilco A&R Consignment Agreement**") in the form attached as <u>Exhibit 3</u> to the Hilco Objection.

20.     The Hilco A&R Consignment Agreement defines "Consigned Goods" as including the iMedia Goods that were sold by iMedia to Hilco pursuant to the Master Agreement, together with "such other and additional goods as may be determined from time to time by mutual agreement." A&R Consignment Agreement, § 2.

21.     Section 16(d) of the Hilco A&R Consignment Agreement established, as a condition precedent to the parties' obligations (subject to waiver or satisfaction), the "[e]xecution of a consent and acknowledgement agreement by [Siena], in form and substance reasonably acceptable to [Hilco], with respect to the priority and treatment of [Hilco's] interests in and to the Consigned Goods (as defined in the [Hilco] A&R Consignment Agreement) and proceeds and products thereof." Hilco A&R Consignment Agreement, § 16(d).

22.     Hilco asserts that on November 28, 2022, it "filed an amended financing statement with the Office of the Secretary of State of Minnesota" [Hilco Objection, ¶ 12] and attaches a purportedly amended financing statement (the "**Second Hilco UCC-1**") as <u>Exhibit 4</u> to the Hilco Objection.

132308186

23.     Hilco admits that on or about November 29, 2022, ***days after its admitted consummation of the Master Agreement and effectiveness of the Hilco A&R Consignment Agreement*** [Hilco Objection, ¶ 10], it finally "provided [Siena] with formal written notice of [Hilco's] ownership and security interest with respect to the Consigned Goods, including the iMedia Goods" (the "**Post-Consummation Notice**").  Hilco Objection, ¶ 13.

> *(5)     Forbearance Agreement and Eighth Amendment*
> *to Siena Credit Agreement*

24.     Unbeknown to Siena, Hilco closed on the sale/consignment-back transactions without Siena's consent.

25.     Hilco alleges "on or about November 24, 2022, [Siena's] counsel informed the Plaintiffs *[sic]*, through their counsel, of [Siena's] consent to the transactions contemplated by the Master Agreement." Hilco Objection, ¶ 14.  This is not true, as evidenced by two emails between counsel thereafter on November 26, 2022 and November 28, 2022, respectively, attached hereto as **Exhibits C and D**.

26.     In the November 26, 2022 email, Siena's counsel stated, in response to Hilco's counsel's request for a "status/timing of a consent letter," that Siena's counsel was "still waiting for docs from iMedia."  November 26 Email at Exhibit C.

27.     In the November 28 email, in response to Hilco's counsel's query regarding whether there has been any progress on a consent letter, Siena's counsel responds: "Nope. still waiting for the transaction docs."  November 28 Email at Exhibit E.  There were no further communications regarding Hilco's requests for Siena's consent to the proposed transactions. Nevertheless, notwithstanding the lack of a consent from Siena, Hilco closed the transactions contemplated by the Master Agreement and the Hilco A&R Consignment Agreement though by doing so its claimed interests were legally unprotected, to Hilco's detriment.

28.     On December 20, 2022, the parties to the Siena Credit Agreement entered into that certain *Forbearance Agreement and Eighth Amendment to Loan and Security Agreement* (attached hereto as **Exhibit E**, the "**Forbearance Agreement**") which addressed, among other things, a specified "Event of Default" under Section 7.1(c)(1) of the Siena Credit Agreement "as a result of [the Pre-Petition ABL Borrowers'] disposition of Collateral pursuant to the [] Master Agreement (as defined herein) in violation of Section 5.25(d)" of the Siena Credit Agreement.  Forbearance Agreement, Recitals Paragraph B(4).  The Pre-Petition ABL Borrowers acknowledge such an "Event of Default" pursuant to Paragraph 1 of the Forbearance Agreement.  *See* Forbearance Agreement, ¶ 1.

(6)     <u>Letters Between Siena and Hilco Further Confirm No Consent From Siena</u>

29.     On March 31, 2023, Hilco sent the letter attached to the Hilco Objection as <u>Exhibit 6</u> to Siena alleging the occurrence and continuation of various defaults under the Hilco A&R Consignment Agreement.  However, Hilco omits Siena's response sent on April 5, 2023, a copy of which is attached hereto as **Exhibit F**.  In the April 5 letter, Siena, among other things, explained that, as a result of Hilco's failure to obtain Siena's consent to the Master Agreement, all of the goods purchased by Hilco from iMedia thereunder and consigned to iMedia under the Hilco A&R Consignment Agreement are subject to Siena's prior perfected security interest.  Further, Siena stated to Hilco that the Pre-Petition ABL Borrowers' default under the Siena Credit Agreement gave Siena the right to take possession of those goods (and other collateral) and apply all such assets to the repayment of indebtedness owing to Siena and the Pre-Petition ABL Lenders.

## <u>REPLY</u>

### A.    Hilco Lacks Standing to Object to the Sale Motion Because Consigned Goods, if Any, Are Excluded Assets Under the APA.

30.     As set forth above, Section 2.03(t) of the APA defines "Excluded Assets" to mean all goods consigned by Hilco to iMedia under both the Original Hilco Consignment Agreement and the Hilco A&R Consignment Agreement.  Moreover, any "Buyer" under the terms of the APA can only make the election to purchase "Consigned Inventory," under Section 7.15 of the APA, if Hilco *agrees* the Debtors do not have to pay additional payments to Hilco prior to or at closing. Accordingly, inasmuch as Hilco does not (and cannot) have any liens and/or security interests in the Purchased Assets (as defined in the APA) or their proceeds, Hilco lacks standing to object to the sale.  *See generally Dick's Clothing and Sporting Goods v. Phar-Mor, Inc.*, 212 B.R. 283, 288-289 (N.D. Ohio 1997) (describing consensus view that it is well established in the law that a plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties, and that a plaintiff may only seek relief for an injury that is within the scope of the provision the plaintiff seeks to enforce).[8]

### B.    Hilco's Objection Is An Improper Attempt to Litigate A Lien Priority Dispute Outside of An Adversary Proceeding.

31.     The Hilco Objection is not concerned with the sale to the Buyer.  Instead, it takes aim exclusively at Siena by attacking the extent and priority of Siena's security interests in relation to Hilco's competing security interests.  Such a dispute may only be brought as an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(2), which states "a proceeding to determine the

---

[8]    The APA permits Hilco and RNN to negotiate their own side deal for the sale of the consigned goods to RNN.  To the extent such a side deal is reached, then Hilco equally lacks standing because it has consented to the sale of the consigned goods.

132308186

validity, priority, or extent of a lien or other interest in property, but not a proceeding under Rule 3012 or Rule 4003(d)" requires an adversary proceeding.  Fed. R. Bankr. P. 7001(2).

32.    The arguments made in the Hilco Objection are directly undermined by Hilco's counsel's own emails to Siena's counsel.  Accordingly, it is no wonder that Hilco has not filed an adversary proceeding -- given the utter lack of merit to its frivolous claims.

>    (1)    *Siena's Valid and Perfected Security Interests Attached to the Consigned Goods Sold Free and Clear to iMedia In Connection with the <u>First Transaction Under the Master Agreement</u>*

33.    Once the Master Agreement was consummated, iMedia's purchase from Hilco of the remaining consigned goods under the Original Hilco Consignment Agreement, free and clear of Hilco's liens and encumbrances, rendered the previously consigned goods "Collateral" under the Siena Credit Agreement.  As a result, those goods immediately became subject to Siena's valid and perfected, first priority security interest in substantially all assets of Debtors.  Such priority could not be defeated by Hilco absent a written consent agreement, which Hilco never obtained from Siena.

>    (2)    *Siena's Valid and Perfected Liens Continued on the iMedia Goods in <u>Connection with the Subsequent Transaction Under the Master Agreement</u>*

34.    The Siena Credit Agreement makes clear by negative covenant in Section 5.25(d) that disposition of "Inventory" outside of the ordinary course of business is prohibited without Siena's written consent.  Accordingly, taken together with Uniform Commercial Code section 9-315(a)(1), written authorization by Siena was required for disposition of the Inventory free of Siena's security interest.  Hilco's failure to obtain such written authorization resulted in the continuation of Siena's security interests in the iMedia Goods.  Hilco's failure to obtain written authorization from Siena to release or subordinate its senior security interest in those goods, and Hilco's decision to close the transaction without such written consent, rendered Hilco's security

interest subordinate to Siena's security interest.  Hilco knew full well of the risk because the Master

Agreement (*see* Section 5(d)) and the Hilco A&R Consignment Agreement (*see* Section 16(d))

both required the consent of Siena, subject to Hilco's waiver of such condition precedent or

satisfaction thereof.  Hilco's conscious waiver of such condition precedent is fatal to its attempt to

come ahead of Siena and shows the frivolous nature of its argument.

35.     Moreover, the November 26 and November 28 emails between counsel underscore

the ***opposite*** of what Hilco's counsel has represented to this Court (i.e, Hilco's counsel was still

seeking the consent of Siena's counsel after the November 23rd consummation of the Master

Agreement). The Hilco Objection makes the outlandish allegation that Hilco received consent on

November 24 (after consummation) yet omits evidence of any such written consent – because no

such evidence exists.  *See* Hilco Objection at ¶ 14.  The Objection is thus incomplete and

misleading.

36.     Because Siena's consent to the Second Transaction was never given, Siena's valid

and perfected, first priority lien in its "Collateral" continued in the goods sold by iMedia to Hilco

by operation of UCC section 9-315(a)(1), which states a security interest "continues in collateral

notwithstanding sale, lease, license, exchange, or other disposition thereof ***unless the secured***

***party authorized the disposition free of the security interest.***"  UCC § 9-315(a)(1)(***emphasis***

***added***).

37.     For the same reasons, Siena's senior security interest in the iMedia Goods after

consummation of the Second Transaction was not affected by the Third Transaction: i.e., the

"consignment back" of goods in connection with the amendment and restatement of the Original

Consignment Agreement.  Stated differently, the consignment back could not, in and of itself,

create a senior security interest in favor of Hilco because the goods remained subject to Siena's

prior perfected senior security interest therein.  Rather, Hilco could only be senior to Siena upon receipt of written consent to transfer those goods free of Siena's security interest, per UCC § 9-315(a)(1), which Siena never provided.[9] Thus the iMedia Goods (and proceeds therefrom) that Hilco has consigned to iMedia under the Hilco A&R Consignment Agreement remained subject to Siena's first priority, continuing security interest.

> ### (3)    Under the Siena Credit Agreement, Upon Default, Siena Is Permitted to Apply Collateral, Including Proceeds, for Repayment of Indebtedness

38.    The Forbearance Agreement evidences the Debtors' agreement to and acknowledgment of the "Event of Default" triggered by the sale of the iMedia Goods to Hilco.  As a result of such an Event of Default under the Siena Credit Agreement, Siena's remedies include those provided under Section 7 of the Siena Credit Agreement, including without limitation, the ability to "take control of any Collateral and any cash and non-cash Proceeds of any Collateral" under Section 7.3(b)(iii) thereof.  *See* Siena Credit Agreement, § 7.3(b)(iii).

39.    Siena did not "wrongfully" sweep and apply proceeds from the iMedia Goods in partial reduction of the Debtors' indebtedness under the Siena Credit Agreement because such remedy and the application of proceeds were expressly authorized by these provisions in the Siena Credit Agreement.  *See* Siena Credit Agreement, §§ 4.2 ("Application of Payments"), 7.3(b)(iii).

## Conclusion

40.    For the foregoing reasons, not only does the Hilco Objection lack merit, but it is actually misleading as to the underlying transactions and Hilco's conscious disregard for the steps required by the transactional documents and UCC Article 9 to obtain a senior security interest.

---

[9]    Similarly, Hilco did not comply with the perfection requirements of UCC Section 9-324 because it neither provided the requisite written notice to Siena prior to delivery of the consigned goods nor had perfected its security interest in those goods upon delivery (*i.e,*, Debtors already had possession of the goods prior to Hilco filing its Second UCC-1 and prior to Hilco delivering notice to Siena of its consignment interest in those goods).

Moreover, Hilco's arguments have no bearing on the Debtors' proposed sale, which does not include the sale of any of Hilco's consigned goods.  As a result, the Court should overrule the Hilco Objection with prejudice, so that Hilco is prohibited from raising such frivolous arguments elsewhere in Debtors' chapter 11 cases.


Dated: July 25, 2023
       Wilmington, Delaware

**BLANK ROME LLP**

*/s/ Regina Stango Kelbon*
Regina Stango Kelbon (DE No. 5444)
Stanley B. Tarr (DE No. 5535)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:    (302) 425-6400
Facsimile:    (302) 425-6464
E-mail:    Regina.Kelbon@BlankRome.com
        Stanley.Tarr@BlankRome.com

John E. Lucian
One Logan Square
130 North 18th Street
Philadelphia, Pennsylvania 19103-6998
Telephone:    (215) 569-5500
Facsimile:    (215) 569-5555
E-mail:    John.Lucian@BlankRome.com

*Counsel to Siena Lending Group, LLC*

132308186