# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>iMedia Brands, Inc., *et al.*,[1]<br><br>　　　　　　　Debtors. | Chapter 11<br><br>Case No. 23-10852 (KBO)<br><br>(Jointly Administered)<br><br>**Re: D.I. 311** |

### LIMITED OBJECTION OF KINBOW, INC. TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES, THE FORM AND MANNER OF NOTICE THEREOF AND (II) GRANTING RELATED RELIEF

Kinbow, Inc. ("Kinbow"), by and through its undersigned counsel, respectfully submits this limited objection to the Bidding Procedures Motion[2] filed by the above-captioned debtors (the "Debtors") and in support thereof states as follows:

### PRELIMINARY STATEMENT

1. The sale timeline proposed in the Bidding Procedures Motion will continue to provide an unfair advantage to *de facto* stalking horse bidder and insider RNN-TV Licensing Co. LLC ("RNN"), by failing to provide sufficient time for third-party bidders like Kinbow to complete due diligence and submit competing bids. The Court should instead approve *reasonable* bidding procedures, with deadlines that foster competitive bidding and guidelines that ensure an open and fair process.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642). The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

[2] *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures, the Form and Manner of Notice Thereof and (II) Granting Related Relief* [D.I. 311] (the "Bidding Procedures Motion").

2. Shortly after commencing these chapter 11 cases, the Debtors filed the Sale Motion[3] through which they sought to sell substantially all of their assets to RNN via an expedited private sale. When other bidders, including Kinbow, sought to participate in the sale process, the Debtors provided limited diligence material, and, only at the urging of the Official Committee of Unsecured Creditors (the "Committee"), agreed to schedule an auction for the morning of July 28, 2023, the same day scheduled for the sale hearing.

3. On July 27, 2023, at a hearing on the Committee's Emergency Motion[4] to continue the sale hearing, Kinbow and others expressed their concerns with the process and asked the Court to direct the Debtors to commence a more reasonable process, including one that provided sufficient time for competing bidders to complete due diligence. The Court cancelled the auction and directed the Debtors to file a motion with proposed bidding procedures.

4. The Debtors then filed the Bidding Procedures Motion. Despite the views clearly expressed by the Court just a day before, the Debtors asked the Court to schedule a hearing on the Bidding Procedures Motion for Monday, July 31, 2023, the next business day. And in the Bidding Procedures Motion itself, the Debtors ask for a hyper-accelerated sale timeline, including a bid deadline of August 3, 2023 (3 business days), with an auction on August 4, 2023 (4 business days).

5. The Debtors' stated explanation for this timeline is a lack of liquidity – a problem of their own and RNN's making. The Debtors chose to commence these chapter 11 cases without post-petition financing, and then agreed to inadequate financing, partially funded by RNN. That

---

[3] *Debtors' Motion Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code for Entry of an Order (1) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities; (II) Approving the Debtors' Entry into the Asset Purchase Agreement; (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (iv) Granting Related Relief* [D.I. 93] (the "Sale Motion").

[4] *Emergency Motion of the Official Committee of Unsecured Creditors for Entry of Order Adjourning July 28, 2023 Hearing* [DI. 277] (the "Emergency Motion")

2

financing provided so little runway that RNN's asset purchase agreement necessarily includes the assumption of postpetition payables that will not be covered by the DIP.

6. The Debtors chose to spend the month of July in pursuit of a proposed private sale without Court-approved bidding procedures and funded by inadequate post-petition financing. The Debtors and RNN should not be rewarded for that choice with an accelerated sale process that continues to favor RNN. Kinbow respectfully requests that bidding procedures be approved that provide significantly more time for third-party bidders to complete diligence and submit their bids.

## BACKGROUND

### A. The Sale Motion and the DIP Motion

7. On July 3, 2023, the Debtors and certain affiliated non-debtors, as Sellers (collectively, the "Sellers"), and RNN entered into an Asset Purchase and Equity Purchase Agreement (the "APA") pursuant to which, and subject to Court approval, the Sellers agreed to convey substantially all of their assets to RNN. On the same date, the Debtors filed the Sale Motion and the DIP Motion.[5]

8. On July 8, 2023, this Court entered the Interim DIP Order[6], approving, *inter alia*, debtor-in-possession financing from a combination of the Debtors' prepetition secured lenders and RNN (the "DIP Loan") on an interim basis.

---

[5] *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Liens and Superpriority Administrative Expense Claims to Post-Petition Lenders and (C) Utilize Cash Collateral, (II) Providing Adequate Protection to Pre-Petition Secured Parties, (III) Modifying the Automatic Stay, (IV) Granting Relief, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364, 503, 506, 507 and 552, and (V) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2* [D.I. 88] (the "DIP Motion").

[6] *Interim Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Liens and Superpriority Administrative Expense Claims to Post-Petition Lenders And (C) Utilize Cash Collateral, (II) Providing Adequate Protection to Pre-Petition Secured Parties, (III) Modifying The Automatic Stay, (IV) Granting Related Relief, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, 507 and 552, and (V) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2* [D.I. 116] (the "Interim DIP Order")

9. As described in the DIP Motion, the Debtors' prepetition secured lenders assert an early termination fee in the amount of approximately $1.6 million. *See* DIP Motion, Exhibit 1; Interim DIP Order, ¶H(1)(a). Under paragraph M of the Interim DIP Order, however, such early termination fee will be waived upon a closing of the RNN APA. Interim DIP Order, ¶M. Kinbow understands that the lenders have not agreed to a similar waiver with respect to other bidders.

10. The Debtors allege in the Sale Motion that the "added liquidity provided by the Buyer will give the Debtors enough time to complete the Sale, maximize the value of their assets (which is the best interests of the Debtors, their estates and all parties in interest) and will preserve 580 jobs". *See*, ¶ 13 of Sale Motion.

### B. The Auction and the Committee's Emergency Motion

11. On July 24, 2023, the Debtors filed the *Notice of Auction for All or Substantially All Debtors' Assets in Furtherance of Sale Motion* [D.I. 244] (the "Auction Notice"), purportedly scheduling an auction to commence on July 28, 2023, beginning at 9:00 a.m. (ET). The sale hearing was scheduled to start at 1:00 p.m. (ET) on the same day.

12. On July 26, 2023, the Committee filed the Emergency Motion. Kinbow filed a joinder to the Emergency Motion on July 27, 2023 [D.I. 294].

13. On July 27, 2023, the Court held a status conference with respect to the Emergency Motion. At the conclusion of that hearing, the Court canceled the auction and the sale hearing, directed the Debtors to file a motion for approval of bidding procedures, and scheduled a further status conference for July 31, 2023.

### C. The Bidding Procedures Motion

14. The Debtors filed the Bidding Procedures Motion on July 28, 2023. The Debtors contemporaneously filed the *Debtors' Motion to Shorten Notice and Schedule Expedited Hearing*

4

*on Bidding Procedures Motion* [D.I. 312] (the "Motion to Shorten"). In the Motion to Shorten, the Debtors asked the Court to schedule a hearing with respect to the Bidding Procedures Motion to commence on July 31, 2023, at 1:00 p.m. (ET).

15.     At the status conference on July 31, 2023, the Court heard the positions of multiple parties in interest with respect to the Motion to Shorten, including the Kinbow, other proposed bidders,[7] the Committee, the Debtors and United States Trustee. At the conclusion of the hearing, the Court scheduled a hearing on the Bidding Procedures Motion for August 2, 2023.

16.     Through the Bidding Procedures Motion, the Debtors ask the Court to approve the following dates and deadlines with respect to the sale process:

*Debtors' Proposed Sale Timeline:*

| Event | Proposed Date/Deadline |
|---|---|
| Bid Deadline | August 3, 2023, at 9:00 a.m. (ET) |
| Auction | August 4, 2023 |
| Sale Objection Deadline | At or prior to Sale Hearing |
| Sale Hearing | August 8, 2023 |
| Adequate Assurance Objection Deadline | Not later than 5 business days after service of notice of winning bidder |

17.     Kinbow requests that the Court approve a more reasonable process, as follows:

*Kinbow's Proposed Sale Timeline:*

| Event | Proposed Date/Deadline |
|---|---|
| Bid Deadline | September 15, 2023 |
| Auction | September 18, 2023 |
| Sale Objection Deadline | September 21, 2023 |
| Adequate Assurance Objection Deadline | September 21, 2023 |
| Sale Hearing | September 26, 2023 |

---

[7]     One of the other bidders who objected to the proposed timeline is Apparel Solutions, Inc. ("API"). API is an affiliate of Kinbow, which Kinbow and API acknowledged to the Debtors in early July. API sought to bid on different assets than Kinbow and has been represented by separate counsel with respect to the bankruptcy proceedings.

18. The Bidding Procedures Motion appears to be silent with respect to the early termination fee asserted by the Debtors' pre-petition secured lender, suggesting that such fee may still be waived only in connection with a sale to RNN as provided in the Interim DIP Order.

**D. Kinbow's Due Diligence**

19. On July 7, 2023, Kinbow, through counsel, communicated to Lincoln Kinbow's interest in acquiring the Sellers' assets. An initial call with representatives of Kinbow and Lincoln occurred on Sunday, July 9, 2023, during which Kinbow obtained an overview of the sale process, the necessity of execution of a non-disclosure agreement, and the procedure for accessing documents relevant to a potential purchase of the Sellers' assets.

20. On July 14, 2023, at Lincoln's direction, Kinbow transmitted to Lincoln a "Letter of Interest," pursuant to which Kinbow expressed a desire to purchase the Debtors' assets at a price in excess of the purchase price under the Sellers' proposed sale to RNN.

21. Kinbow is associated with a Special Purpose Acquisition Company which has ample funds available to purchase the assets, in cash, at the price proposed in its Letter of Interest. In response to concerns raised by the Debtors and Lincoln with respect to the time that may be required to close on a transaction funded by the Special Purpose Acquisition Company, Kinbow is procuring more traditional financing to fund its acquisition of the Debtors' assets.

22. In connection with its efforts to satisfy the Debtors' timing concerns, Kinbow has requested that the Debtors and Lincoln provide additional diligence material, including financial statements and analyses of the Debtors' inventory and accounts receivable, which was not included in Lincoln's data room and which Kinbow's proposed lenders have required as a condition of extending acquisition financing.

23.     Kinbow and Lincoln have engaged in multiple communications, which remain ongoing. In connection therewith, Lincoln has provided Kinbow with various financial documents required in connection with Kinbow's due diligence for a potential sale. Kinbow disputes Eugene Lee's assertion, in his declaration filed on July 31, 2023, that Kinbow only reviewed a subset of the documents in the data room prior to the week of July 25, 2023. Instead, Kinbow has promptly downloaded the entire contents of the data room as documents were uploaded so that it could review documents offline, rather than accessing them directly through the data room.

24.     While Lincoln has been cooperative in providing documents, many key documents were only just provided between July 25, 2023, and July 28, 2023, when the Debtors uploaded approximately 130 new documents to the data room. These documents include inventory and accounts receivable information that Kinbow had requested. Though progress has been made, the Debtors still have not provided other documents that Kinbow has requested, including reports of the Debtors' post-petition receipts and expenditures.

25.     In addition, the Debtors' data room continues to lack financial documents that bidders would expect to review, including: (i) audited 2022 financial statements; (ii) year-to-date financial statements through June 30, 2023 (limited data for certain divisions only have been provided); (iii) current inventory reports (the latest report was effective as of April 1, 2023); (iv) recent borrowing base certificates; and (v) recent weekly or monthly performance reports. Updated information on the Debtors' inventory and performance during the chapter 11 cases is critical, especially given the lack of funding provided through the DIP loan, as the Debtors may be rapidly depleting inventory without restocking.

26. While Kinbow appreciates the additional documents that were recently provided, Kinbow needs additional time to review the documents provided and ascertain any additional documents which may be required prior to finalizing a transaction.

27. In contrast, the Debtors disclosed that they began negotiating with RNN in mid-May 2023, resulting in a definitive asset purchase agreement in early July. While the Debtors described these as arms' length, good-faith negotiations, they have not disclosed the level of insider/management involvement, warranting additional scrutiny given RNN's insider status.

28. Kinbow seeks access the same level of information and the same amount of time that was afforded to RNN to ensure an open and fair process.

## ARGUMENT

29. Bidding procedures are intended to promote what courts have deemed to be the paramount goal of any proposed sale of a debtor's property: maximizing the value of sale proceeds received by the estate. *See Burtch v. Ganz (In re Mushroom Co.)*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that debtor "had a fiduciary duty to protect and maximize the estate's assets"); *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003) (debtor has "fiduciary duty to maximize the value of the bankruptcy estate").

30. Courts uniformly recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing the value of a debtor's estate. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 537 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide a benefit to a debtor's estate); *In re Fin'l News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1992) ("[C]ourt-imposed rules for the disposition of assets . . . [should] provide

an adequate basis for comparison of offers, and [should] provide for fair and efficient resolution of bankrupt estates.")

### A. The Timeline Should be Significantly Expanded

31. The bidding procedures proposed here, and specifically the proposed sale timeline, are not designed to maximize value to the Debtors' estates, do not provide an adequate basis for comparison of offers, and do not provide for a fair and efficient resolution of the Debtors' estates.

32. The Debtors ask the Court to approve a process under which bidders must complete diligence and submit non-contingent, fully financed bids to acquire the Debtors' assets by August 3, 2023 – just two days after the hearing on the Bidding Procedures Motion and less than a week after the Bidding Procedures Motion was filed. Such a short period of time is unreasonable.

33. Third-party bidders such as Kinbow have not been afforded sufficient time to complete their due diligence. Notably, while having access to Lincoln's data room since July 9, 2023, Kinbow has repeatedly requested key financial documents, including financial statements, inventory valuations and information regarding the Debtors' accounts receivable. To the extent these documents were provided, many were only provided last week – between July 25, 2023 and July 28, 2023. 108 new documents were added to the data room on Friday, July 28, 2023, and another 24 new documents were added today, August 1, 2023.

34. Moreover, as set forth in the Declaration of Amit Agarwal submitted with Kinbow's joinder to the Committee's Emergency Motion, at least one other potentially interested bidder requested but was not given access to the data room, despite signing an NDA and despite following up with the Debtors and Lincoln. Perhaps this is an isolated incident – but if not, it casts serious doubt on the Debtors' argument that they have adequately tested the market so as to warrant such an abbreviated sale process.

35. Kinbow requests that the Court permit additional time to provide it, along with other potential bidders, an appropriate time to submit higher bids for the Debtors' assets.

36. Providing a lengthier sale process is consistent with the Debtors' fiduciary obligation to maximize the value of estate assets. *In re Reliant Energy Channelview, LP*, 594 F. 3rd 200 (3d Cir. 2010). Allowing additional time for other parties to come forward to present bids for the Debtors' assets can only serve to facilitate the realization of the highest value for their assets.

**B. RNN's Role in the Sale Process Warrants Additional Scrutiny**

37. As outlined in Kinbow's joinder to the Committee's Emergency Motion, Kinbow believes that additional investigation is warranted into the previously undisclosed relationships between the Debtors and RNN, including the fact that Mr. French, RNN's president and CEO, was a member of the Debtors' board of directors in late 2022, presumably until the Debtors began exploring restructuring options.

38. At the scheduling conference on July 31, 2023, RNN's counsel objected to Kinbow's characterization of these relationships as undisclosed. And while such information was publicly available through the Debtors' historical SEC filings, Kinbow has found no evidence of such disclosure in the pleadings filed in these bankruptcy cases, including the Sale Motion, the DIP Motion or any declaration filed in support thereof.

39. Separate from disclosure, Kinbow believes that the sale process, both before and after the filing of the Bidding Procedures Motion, provides RNN with an unfair advantage. While it is not unusual for a stalking horse bidder to provide debtor-in-possession financing to fund a chapter 11 case, which financing will then be credit bid in partial or complete satisfaction of the proposed purchase price, RNN's advantage goes beyond its $7.5 million credit bid.

40. First, it is now clear that the $15 million of new post-petition financing provided by RNN and the existing lenders was insufficient to fund these cases, even with respect to the originally proposed private sale contemplated by the Sale Motion. This is reflected in RNN's asset purchase agreement, which included a purchase price that was based in part on the assumption of more than $6 million of post-petition administrative expense claims that were not funded by the DIP loan. RNN and the prepetition lenders anticipated that these payables would not be sufficiently covered by the proposed financing, but instead of right-sizing the loan, they proceeded with an under-funded DIP, the only result being a further liquidity stranglehold that limited the Debtors' ability to pivot to a more traditional and robust sale process.

41. Second, as outline above, Kinbow has been requesting key diligence information for weeks, much of which was only just provided last week and which continues to be uploaded to the data room. RNN, on the other hand, presumably had all of the Debtors' financial records for months, either in connection with its prepetition bid or through Mr. French's access as a former director of the Debtors. This advantage is more pronounced given the expedited timeframe in which the Debtors seek to require the submission of third-party bids.

42. Finally, it appears from the Interim DIP Order that the pre-petition secured lenders are only waiving their asserted early termination fee in connection with an RNN bid. There is no assurance of similar treatment for third-party bidders. This creates an uneven playing field and creates a sizeable bid protection for RNN that was not approved by the Court in connection with bidding procedures or the sale process. All bidders should be afforded similar treatment, or, alternatively, the value of the lenders' waiver of the alleged early termination fee should not be considered when comparing the value of competing bids.

## **CONCLUSION**

43.     Kinbow understands that there is an economic cost to operating in chapter 11, the Debtors' stated reason for the proposed expedited sale process.  But cost and liquidity concerns are insufficient by themselves to justify a timeline that fails to ensure an open and fair process, and the procedures proposed by the Debtors here fail to promote a process designed to maximize value.

44.     Kinbow merely asks for a level playing field.  It seeks the same access to financial documents and the same amount of time that RNN was given to conduct its diligence.

**WHEREFORE**, Kinbow requests that any bidding procedures provide for a substantially longer period for third-party bidders to submit bids to participate in an auction, and for such other and further relief as the Court deems warranted.

Dated: August 1, 2023
Wilmington, Delaware

**DLA PIPER LLP (US)**

By: */s/ Aaron S. Applebaum*
R. Craig Martin, Esq. (DE #5032)
Aaron S. Applebaum, Esq. (DE #5587)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801-1147
Telephone:    (302) 468-5700
Facsimile:    (302) 394-2341
Email:    craig.martin@us.dlapiper.com
    aaron.applebaum@us.dlapiper.com

-and-

**NORRIS, McLAUGHLIN, P.A.**
Bruce J. Wisotsky, Esq.
Mariya Gonor, Esq.
400 Crossing Boulevard, 8th Floor
Bridgewater, NJ 08807
Telephone:    (908) 722-0700
Email:    bjwisotsky@norris-law.com
    mgonor@norris-law.com

*Attorneys for Kinbow, Inc.*