# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>iMedia Brands, Inc., *et al.*,[1]<br><br>                                        Debtors. | Chapter 11<br><br>Case No. 23-10852 (KBO)<br><br>(Jointly Administered) |

## GLOBAL NOTES AND STATEMENTS
## OF LIMITATIONS, METHODOLOGY, AND
## DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF
## ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642).  The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

## I.    Notes Applicable to all Schedules and Statements

**Note 1:  Reporting Date**.  The reported asset and liability values in Schedules A and B, reflect the Debtors' asset values as of June 28, 2023 (the "Reporting Date" or "Petition Date").  The liability information contained in Schedules D and E/F parts 1 and 2 are reported as of the Reporting Date.

**Note 2:  Currency**.  Unless otherwise indicated, all amounts are reflected in U.S. dollars.  To the extent any amounts had to be converted to U.S. dollars, the conversion rate used was as of the Petition Date.

**Note 3:  Signatory**.  James Alt and Amber Eader, as applicable, have signed the Schedules and Statements.  Mr. Alt serves as Chief Transformation Officer of Debtor iMedia Brands, Inc. and Mrs. Eader serves as Vice President, Corporate Controller of Debtor iMedia Brands, Inc. and its subsidiaries and they are authorized signatories for the Debtors in these chapter 11 cases.  In reviewing and signing the Schedules and Statements, Mr. Alt and Mrs. Eader have necessarily relied upon the efforts, statements, advice, and representations of personnel of the Debtors and their legal and financial advisors.  Mr. Alt and Mrs. Eader have not personally verified and could not personally verify the accuracy of each such statement and representation, but believe them to be true, correct and accurate as of the date they signed the Schedules and Statements.

**Note 4:  Basis of Presentation**.  The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled to the financial statements of each Debtor.  The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.  The Schedules and Statements reflect the Debtors' reasonable efforts to report the assets and liabilities of each Debtor on an unconsolidated basis.  These Schedules and Statements were not filed with the United States Securities and Exchange Commission (the "SEC") or any state authority, and neither the SEC nor any state authority has passed upon the accuracy, adequacy, or merits of the Schedules and Statements.

**Note 5:  Net Book Value**.  In certain instances, current market valuations for individual items of property and other assets are neither maintained by nor readily available to the Debtors.  Accordingly, unless otherwise indicated, the Schedules and Statements reflect net book values as of the Reporting Date.

**Note 6:  Estimates and Assumptions**.  The preparation of the Schedules and Statements required the Debtors to make reasonable estimates and assumptions, on the date of the Schedules and Statements, with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities, and the reported amounts of revenues and expenses during the applicable reporting periods.  Actual results could differ from such estimates.

**Note 7:  Setoffs**.  The Debtors routinely incur setoffs and net payments in the ordinary course of business.  Such setoffs and nettings may occur due to a variety of transactions or disputes including, but not limited to, intercompany transactions, counterparty settlements, pricing discrepancies, credits, rebates, returns, refunds, and negotiations or disputes between the Debtors and their customers, payment processors, or suppliers.  These normal, ordinary course setoffs and

nettings are common to the industry. Due to the voluminous nature of setoffs and nettings, it would be unduly burdensome and costly for the Debtors to list each such transaction. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for and, as such, are or may be excluded from the Schedules and Statements. In addition, some amounts listed in the Schedules and Statements may have been affected by setoffs or nettings by third parties of which the Debtors are not yet aware or of which the Debtors have approved to effectuate in the claims process of their chapter 11 cases. The Debtors reserve all rights to challenge any setoff or recoupment rights that may be asserted.

**Note 8: Totals**. All totals that are included in the Schedules and Statements represent totals of all known amounts. To the extent there are unknown or undetermined amounts, the actual total may be different from the listed total.

**Note 9: Reservation of Rights**. In preparing the Schedules and Statements, the Debtors relied on unaudited financial data derived from their books and records that was available at the time their preparation. Although the Debtors have made every reasonable effort to ensure the accuracy and completeness of the Schedules and Statements, inadvertent errors or omissions might exist and subsequent information or discovery might result in material changes or modification to the Schedules and Statements or may require the Debtors to file amended Schedules and Statements. **The Debtors reserve all of their rights under Bankruptcy Rule 1009 to amend or modify any of the Schedules and Statements, including with respect to the treatment, characterization, classification, amount, omission, or inclusion of any claims, assets, liabilities, or executory contracts, and to the extent necessary to advance positions in the chapter 11 cases that might conflict with the Schedules and Statements.**

**Note 10: Confidentiality.** To protect the privacy of certain individual parties, including, among others, the Debtors' employees, customers, creditors and interest holders who are individuals, and in accordance with *Final Order (I) Authorizing Debtors to File a Consolidated (A) Creditor Matrix and (B) Top 50 Creditors List, (II) Authorizing Redaction of Certain Personal Identification Information, (III) Modifying the Requirement to File a List of Equity Security Holders of iMedia Brands, Inc. and Modifying Notice Thereto, and (IV) Granting Related Relief* [Docket No. 286], mailing addresses of such individuals were excluded from the Schedules and Statements. The Debtors have used this approach to, as noted, protect the privacy of an individual, for the protection of sensitive commercial information, or because of a confidentiality agreement. The alterations are limited to only what is necessary to protect the Debtors or the third party.

## II.    Notes to Schedules of Assets and Liabilities

1. *Schedule A/B – Assets*. The Debtors have potentially excluded the following categories of assets from the Schedules and Statements: certain deferred accounts or reserves recorded only for purposes of complying with the requirements of GAAP; deferred tax assets; certain intangibles; certain right of use assets, deferred revenue accounts; or goodwill. Other immaterial assets may also have been excluded.

   *Schedule A/B, Parts 1 and 2 – Cash and Cash Equivalents; Deposits and Prepayments*. Details with respect to the Debtors' cash management system and bank accounts are

provided in the Cash Management Motion. Cash on hand includes reported amounts held at individual store locations.

Additionally, the Court, pursuant to the *Final Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (B) Approving the Debtors' Proposed Procedures for Resolving Additional Assurance Requests, and (C) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Services; and (II) Granting Related Relief* [Docket No. 289], has authorized the Debtors to provide adequate assurance of payment for future utility services.  Such deposits are not listed on Schedule A/B, Part 2, which has been prepared as of June 28, 2023.

**Schedule A/B, Part 3 – Accounts Receivable**.  The receivables listed in the Schedules include receivables from the Debtors' customers and are calculated net of any amounts that, as of the Reporting Date, may be owed to such customers in the form of offsets or other price adjustments pursuant to the Debtors' customer program policies and day-to-day practices.  Negative balances represent credits to customers that have not yet been booked against receivables. The accounts receivable balances in this section exclude intercompany related receivables. Intercompany related receivables are instead shown in the response to Part 11, Question 77.

**Schedule A/B, Part 4 – Investments; Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses, including any Interest in an LLC, Partnership, or Joint Venture**.  Ownership interests in subsidiaries, partnerships, and joint ventures have been listed in Schedule A/B, Part 4, as undetermined amounts on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value.

**Schedule A/B, Part 5 – Inventory, excluding agricultural assets.** Amounts represent inventory on hand and inventory in transit as of the Reporting Date. Amounts presented as inventory receipts within twenty days of the Petition Date have not been reduced to reflect inventory received under cash in advance payment or payments made postpetition under certain First Day Orders (as defined below). The amounts listed in Part 5 should not be interpreted as an estimate of claims pursuant to Bankruptcy Code section 503(b)(9)**.**

**Schedule A/B, Part 7 – Office Furniture, Fixtures, and Equipment; and Collectibles**. Dollar amounts are presented net of accumulated depreciation and other adjustments. Unless otherwise indicated, owned property and equipment are listed at net book value. The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors. Any such leases are listed in the Schedules and Statements. Nothing in the Schedules and Statements is, or should be construed as, an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect thereto.

**Schedule A/B, Part 9 – Real Property**.  Unless otherwise indicated, real property and leasehold improvements are listed at net book value.

***Schedule A/B, Part 10 – Intangibles and Intellectual Property Rights***.  Exclusion of certain intellectual property should not be construed as an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Conversely, inclusion of certain intellectual property rights should not be construed as an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another.  Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights. The Debtors' intangibles and intellectual property interests are listed at net book value as reflected in the Debtors' books and records as of the Petition Date, or reflected as undetermined, unless otherwise noted.  Trademarks and domains are listed as having an undetermined value.

***Schedule A/B, Part 11 – All Other Assets***.  Dollar amounts are presented net of impairments and other adjustments.  The value of all assets listed on Schedule A/B are calculated as of the Reporting Date.  Additionally, the Debtors may receive refunds for sales and use tax at various times throughout their fiscal year.  As of the Petition Date, however, certain of these amounts are unknown to the Debtors and, accordingly, may not be listed on Schedule A/B.  Operating and capital leases are not included on Schedule A/B.

To the extent the Debtors were unable to attribute an asset to a specific Debtor, the asset has been listed on Schedule A/B, of iMedia Brands, Inc.

***Other Contingent and Unliquidated Claims or Causes of Action of Every Nature, including Counterclaims of the Debtors and Rights to Setoff Claims***.  In the ordinary course of their businesses, the Debtors may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, credits, rebates, or refunds with their customers and suppliers or potential warranty claims against their suppliers.  Additionally, certain of the Debtors may be party to pending litigation in which such Debtor has asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as a defendant.  Despite exercising their reasonable efforts to identify all such assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules.

***Interests in Insurance Policies or Annuities***.  A list of the Debtors' insurance policies and related information is available in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Existing Insurance Policies and Pay All Insurance Obligations Arising Thereunder, and (B) Renew, Supplement, Modify, or Purchase Insurance Coverage, (II) Authorizing Continuation of Insurance Premium Financing Agreement (III) Authorizing Continuation and Renewal of Surety Bond Program, and (IV) Granting Related Relief* [Docket No. 10].  The Debtors believe that there is little or no cash value to the vast majority of such insurance policies.  Such policies have all been included on Schedule A/B, Part 11, with values listed as "undetermined" for each of the Debtors.  The Debtors' interest in these types of policies is limited to the amount

of the premiums that the Debtors have prepaid, if any, as of the Petition Date.  To the extent the Debtors have made a determination of the amount of prepaid insurance premiums or prefunded claim tails as of the Reporting Date, such amounts are only listed on Schedule A/B, Part 2, Question 8, as prepayments.  All policies are expected to remain active until their stated expiration.

*Intercompany Claims*.  Certain receivables and payables among the Debtors are reported on Schedule A/B and Schedule E/F, respectively.  The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission of the characterization of such balances as debt, equity, or otherwise.  The Debtors continue to review intercompany receivables and payables and, for the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables, including with respect to the characterization of intercompany claims, loans, and notes.

*Other Receivables*. Trade payables with vendors where the Debtor is in a net creditor position are listed as a receivable to the Debtor and not as a negative claim amount on Schedule EF.

2.     *Schedule D – Creditors Who Have Claims Secured by Property*.

Except as otherwise agreed pursuant to a stipulation or order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of any Debtor.  Moreover, although the Debtors have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim, subject to the Debtors' rights, stipulations or releases pursuant to any applicable court order.  By listing an "amount of claim" in Schedule D, the Debtors are not admitting or waiving any rights to assert that all or any portion of such claim is wholly unsecured.  Further, the listing of a claim as secured is not an admission as to the validity of any lien.  The Debtors made reasonable, good-faith efforts to include all liens on Schedule D, but may have inadvertently omitted an existing lien because of, among other things, the possibility that a lien may have been imposed after the Uniform Commercial Code searches were performed or a vendor may not have filed the requisite perfection documentation. Finally, although there are multiple parties that may hold a portion of the debt included in the Debtors' prepetition funded debt facilities, only administrative agents have been listed for purposes of Schedule D.

The descriptions provided in Schedule D are intended only to be a summary.  In certain instances, a Debtor may be a co-obligor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities. Nothing in Schedule D and/or the Notes shall be deemed a modification or interpretation of the terms of such agreements.

Detailed descriptions of the Debtors' prepetition debt structure and descriptions of collateral relating to the debt contained on Schedule D are contained in the *Declaration of James Alt, Chief Transformation Officer of iMedia Brands, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 17] (the "First Day Declaration"). Furthermore, in addition to the First Day Declaration, reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral, security interests, and the nature, extent, and priority of any liens.

The Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights.

Except as specifically stated, real property lessors, utility companies and other parties that may hold security deposits have not been listed on Schedule D. The Debtors reserve all of their rights, claims and causes of action with respect to claims associated with any contracts and agreements listed on Schedule D or Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document or instrument (including any intercompany agreement) related to a creditor's claim. Nothing herein shall be construed as an admission by the Debtors of the legal rights of the claimant or a waiver of the Debtors' right to recharacterize or reclassify such claim or contract.

3. ***Schedule E/F – Creditors Who Have Unsecured Claims***. The Debtors allocated liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements. Some of the scheduled liabilities are unknown, contingent and/or unliquidated at this time. In such cases, the amounts are listed as "Unknown" or "Undetermined." Accordingly, the Schedules and the Statements may not equal the aggregate value of the Debtors' total liabilities as noted on any previously issued financial statements.

***Credits and Adjustments***. The claims of creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits or other adjustments due from such creditors to the Debtors.

***Paid Claims***. The Debtors have authority to pay certain outstanding prepetition liabilities pursuant to bankruptcy court orders (collectively, the "First Day Orders"). As such, certain liabilities listed in these Schedules and Statements may have been subsequently reduced or satisfied pursuant to the First Day Orders notwithstanding the fact that the Debtors have listed claims and payables as of the Petition Date in these Schedules and Statements.

***Excluded Liabilities***. The Debtors have potentially excluded the following categories of liabilities from the Schedules and Statements: certain deferred charges or reserves recorded only for purposes of complying with the requirements of GAAP; deferred tax liabilities; certain accrued liabilities including salaries and employee benefits. Other immaterial liabilities may also have been excluded.

*Creditors with Priority Unsecured Claims*.  The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority treatment under section 507 of the Bankruptcy Code.

Pursuant to the *Final Order (I) Authorizing Debtors to Pay Certain Prepetition Taxes and Fees and (II) Granting Related Relief* [Docket No. 283], the Debtors have been granted the authority to pay, in their discretion, certain tax liabilities that accrued prepetition.  Claims owing to various taxing authorities to which the Debtors potentially may be liable, and which the Debtors have received notice of liability from such taxing authorities, are reported on Part 1.  Certain of such claims, however, may be subject to ongoing audits and/or the claims will be satisfied in the ordinary course during these chapter 11 cases pursuant to authority granted to the Debtors in the relevant First Day Orders.  Therefore, the Debtors have listed all such claims as "contingent" and "unliquidated," pending final resolution of ongoing audits or other outstanding issues.

Furthermore, pursuant to the *Final Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Employee Benefits Obligations and Other Compensation (B) Continue Employee Benefits Programs and Pay Related Administrative Obligations and (II) Granting Related Relief* [Docket No. 290] (the "Employee Wage Order"), the Debtors received authority to pay certain prepetition obligations, including certain employee wages and other employee benefits in the ordinary course of business.  The Debtors believe that (but cannot guarantee that) such claims will be satisfied in the ordinary course during the chapter 11 cases pursuant to the authority granted in the Employee Wage Order or other order that may be entered by the Bankruptcy Court.  Additionally, claims against the Debtors on account of wage or wage-related obligations may maintain priority under section 507 of the Bankruptcy Code, but are subject to the priority cap imposed under subsections (a)(4) and (a)(5) of section 507 of the Bankruptcy Code.

*Part 1 – Creditors with Nonpriority Unsecured Claims*.  The liabilities identified in Schedule E/F, Part 2, are derived from the Debtors' books and records.  The Debtors made reasonable attempts to set forth their unsecured obligations, although the actual amount of claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2.  The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.  The amounts listed on schedule E/F may not reflect any right of setoff or recoupment, and the Debtors reserve any such setoff or recoupment rights.  Additionally, certain creditors may assert mechanics', materialman's, or other similar liens against the Debtors for amounts listed in Schedule E/F.

Schedule E/F, Part 2, contains information regarding certain compensation-related claims.  In scheduling such claims, the Debtors make no representation or assertion as to the validity of such claims, and the Debtors reserve all rights, claims, and defenses in connection therewith.  It is also possible certain compensation-related claims may have been omitted, and the Debtors reserve their rights, but undertake no obligations, to amend Schedules E/F.

Schedule E/F, Part 2, contains information regarding threatened or pending litigation involving the Debtors.  The amounts for these potential claims are listed as "unknown" or

"undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the First Day Orders or the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts and unexpired leases, if any, that may be or have been rejected.

In many cases, the claims listed on Schedule E/F, Part 2, arose, accrued, or were incurred on various dates or on a date or dates that are unknown to the Debtors or are subject to dispute. Where the determination of the date on which a claim arose, accrued, or was incurred would be unduly burdensome and costly to the Debtors' estates, the Debtors have not listed a specific date or dates for such claim.

As of the time of filing of the Schedules and Statements, the Debtors have not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtors reserve their rights, but undertake no obligations, to amend Schedules D and E/F if, or when, the Debtors receive such invoices.

The Debtors have made reasonable efforts to locate and identify Guaranties in each of the executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements to which any Debtor is a party. Where Guaranties have been identified, they have been included in the relevant Schedules for the Debtor or Debtors affected by such Guaranties as a contingent and unliquidated obligation. The Debtors have placed the Guaranties on Schedule H for both the primary obligor and the guarantor of the relevant obligation. Guaranties were additionally placed on Schedule D or F for each guarantor, except to the extent they are associated with obligations under an executory contract or unexpired lease identified on Schedule G. It is possible that certain Guaranties embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted. The Debtors reserve their rights to amend the Schedules to the extent additional Guaranties are identified or such Guaranties are discovered to have expired or be unenforceable. In addition, the Debtors reserve the right to amend the Schedules and Statements and to re-characterize or reclassify any such contract or Claim, whether by amending the Schedules and Statements or in another appropriate filing. Additionally, failure to list any Guaranties in the Schedules and Statements, including in any future amendments to the Schedules and Statements, shall not affect the enforceability of any Guaranties not listed.

***Intercompany***. The Debtors maintain business relationships among each other and with their foreign subsidiaries based in Canada and Europe (collectively, the "Foreign Subsidiaries"), resulting in intercompany receivables and payables in the ordinary course of business.

***Trade Payables***.  To the extent that goods were delivered under purchase orders prior to the Petition Date, vendors' claims with respect to such delivered goods are included on Schedule E/F.

***Customer Programs***.  A more thorough description of the Debtors' customer relationships is set forth in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Honor Certain Prepetition Obligations to Customers and (B) Otherwise Continue Certain Customer Programs in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 11].  The Debtors received approval under the *Final Order (I) Authorizing the Debtors to (A) Honor Certain Prepetition Obligations to Customers and (B) Otherwise Continue Certain Customer Programs in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 301] to continue to honor certain obligations to customers, and otherwise continue customer programs in the ordinary course of business such as courtesy credits issued to customers in the ordinary course of business.

In addition, the Debtors provide reserves for dilution of receivables in their annual filings, which are presented according to GAAP.  Such reserves and dilution have not been provided in these Schedules and Statements.

4.    ***Schedule G – Executory Contracts and Unexpired Leases***.  Although reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred.  Additionally, relationships between the Debtors and their customers are often governed by a master services agreement, under which customers also place work and purchase orders, which may be considered executory contracts.  The Debtors believe that disclosure of all of these purchase and work orders would be impracticable and unduly burdensome.  Accordingly, to the extent the Debtors have determined to disclose non-confidential master services agreements in Schedule G, purchase and work orders (including statements of work) placed thereunder may have been omitted.  The Debtors reserve all rights to sever or argue that any agreement listed in Schedule G is severable.

Contracts and leases listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors.  Where relevant, such agreements have been listed in the Schedules and Statements only of the Debtor entity that signed the original umbrella or master agreement.  Other Debtors, however, may be liable together with such Debtor on account of such agreements and the Debtors reserve all rights to amend the Schedules and Statements to reflect changes regarding the liability of the Debtors with respect to such agreements, if appropriate.

Although the Debtors have made diligent attempts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so due to the complexity and size of the Debtors' businesses.  Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments,

restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all final exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any executed agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed thereon.

Certain of the executory contracts and unexpired leases listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, right to lease additional space, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G.

Certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by more than one of the Debtors. Further, the specific Debtor obligor to certain of the executory contracts or unexpired leases could not be specifically ascertained in every circumstance. In such cases, the Debtors used their best efforts to determine the correct Debtor's Schedule G on which to list such executory contract or unexpired lease. To the extent the Debtors were unable to attribute an executory contract or unexpired lease to a specific Debtor, the liability has been listed on Schedule G of iMedia Brands, Inc.

In the ordinary course of business, the Debtors have entered into numerous contracts or agreements, some of which may be oral. While the Debtors have made every effort to reflect the current agreements, to the extent such contracts or agreements constitute executory contracts, certain of these contracts and agreements may not be listed individually on Schedule G.

Certain of the executory contracts and unexpired leases listed in Schedule G were assigned to, assumed by, or otherwise transferred to certain of the Debtors in connection with, among other things, acquisitions by the Debtors.

The Debtors reserve all rights to dispute or challenge the characterization of any transaction or any contract, agreement, document or other instrument related to a creditor's claim. Further, the designation of a category is not meant to be wholly inclusive or descriptive of the entirety of the rights or obligations represented by such contract. The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreements, instruments, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed thereon.

In some, but not all, cases, the same supplier or provider may appear multiple times in Schedule G. Multiple listings, if any, may reflect distinct agreements between the applicable Debtor and such supplier or provider, or work or purchase orders pursuant to a master services agreement, which may not be considered executory contracts. The listing of any contract on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract. The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission. The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth in Schedule G.

The Debtors have exercised reasonable efforts to locate and identify guarantees of their executory contracts, unexpired leases, secured financings, and other such agreements. Where guarantees have been identified, they have been included in the relevant Schedules G and H for the affected Debtor.

5.    ***Schedule H – Co-Debtors***.

For purposes of Schedule H, the Debtors have not listed any litigation-related co-Debtors on Schedule H. Instead, all such listings can be found on Schedules E/F. The Debtors have listed only the agent under the prepetition credit facility or counterparties that are subject to a guaranty related to the co-Debtors.

In the ordinary course of their business, the Debtors pay certain expenses on behalf of their subsidiaries. The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Further, certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable. Thus, the Debtors reserve their rights to amend to the extent that additional guarantees are identified or such guarantees are discovered to have expired or become unenforceable.

## III.   <u>Notes to Statements of Financial Affairs</u>

1.    ***Statements, Part 1, Questions 1 and 2 – Income and Non-business Revenue***. The income stated in the Debtors' response is consistent with the consolidated sales disclosed in compliance with GAAP and, for purposes of these Statements, does not include revenue derived from Intercompany Transactions. Revenue reported on Question 1 is net of discounts, chargebacks and related items. Revenue for the current fiscal year has been provided through the Reporting Date, on a prorated basis when indicated below. Although the Debtors track unrealized gains related to foreign exchange rates for accounting purposes, the Debtors' response to Question 2 does not reflect unrealized gains related to foreign exchange.

***Statements, Part 2, Questions 3 and 4 – Payments to Certain Creditors***.  The Debtors operate an integrated and elaborate system of bank accounts to facilitate the collection and disbursement of funds worldwide.  All payments to creditors and insiders listed in response to Questions 3 and 4 on each of the Debtors' Statements reflect payments made by iMedia Brands, Inc. or one of its Debtor affiliates from operating bank accounts (the "Operating Accounts"), on behalf of the corresponding Debtor, pursuant to the Debtors' Cash Management System described in the Cash Management Motion. Pursuant to the Debtors' cash management system, payments made to various parties may be made from a single Debtor on behalf of one or more Debtor entities.

The Debtors have responded to Question 3 in detailed format by listing each payment for the 90 days prior to the Petition Date.  The response to Question 3, however, does not include transfers to insiders (which transfers appear in response to Part 2, Question 4).

The payroll-related amount shown in response to Question 4, which includes, among other things, salary, wage, and additional compensation, is a gross amount that does not include reductions for amounts including employee tax or benefit withholdings.  In the ordinary course of business, certain corporate or personal credit cards may be utilized by insiders to pay for travel and business-related expenses for various other individuals employed by the Debtors.  As it would be unduly burdensome for the Debtors to analyze which credit card expenses related to those incurred on behalf of an insider as opposed to another employee (or the Debtors), the Debtors have listed the aggregate amount paid for such expenses.

Payments made to the Chief Transformation Officer of the Debtors are included in the payments to Huron Consulting Services, LLC.

The payments disclosed are based on payments made by the Debtors with payment dates. The actual dates that cash cleared the Debtors' bank accounts were not considered.  The Debtors' accounts payable system does not include the corresponding payment clear dates and compiling this data would have required a significant manual review of individual bank statements.  It is expected, however, that many payments included in Statement 3 have payment clear dates that are the same as payment dates (*e.g.*, wires and other forms of electronic payments).  The Debtors worked to manually review the Debtors' voluminous books and records across three unique payment systems to assemble the response to this question, and there may be instances in which a payment is not coded correctly. As a result, inadvertent errors or omissions may exist.

With respect to intercompany transfers, given the volume of transfers and nature of noncash accounting adjustments, it would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtors to separate and list such claims on an individual basis.  Rather, the Debtors have provided intercompany balances as of June 28, 2023 and the Reporting Date to illustrate the change in balance over one year.

Certain directors and executive officers of the Debtors are also directors and executive officers of certain Debtor and non-Debtor affiliates. To the extent payments to such individuals are not listed in the response to Questions 3 and 4 on the Statements for such Debtor affiliates, they did not receive payment for their services as directors or executive officers of these entities. Certain of the Debtors' directors and executive officers received distributions net of tax withholdings in the year preceding the Petition Date. The amounts listed under Questions 3 and 4 reflect the gross amounts paid to such directors and executive officers, rather than the net amounts after deducting for tax withholdings.

In the circumstance where the Schedules and Statements require information regarding "insiders," the Debtors have included information with respect to certain individuals who the Debtors believe may be included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods. The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed as an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for (1) the purposes of determining (i) control of the Debtors, (ii) the extent to which any individual exercised management responsibilities or functions or corporate decision-making authority over the Debtors, or (iii) whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (2) any other purpose.

As disclosed in the *Supplemental Declaration of James Alt in Support of Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures, the Form and Manner of Notice Thereof and (II) Granting Related Relief* [Docket No. 326], Mr. Richard E. French Jr. was elected to the iMedia Brands, Inc. Board of Directors (the "iMedia Board") on September 15, 2022 and resigned from the iMedia Board on December 28, 2022. Payments to entities affiliated with Mr. French during this time period are disclosed.

On April 10, 2023, Debtors EP Properties, LLC and VVI Fulfillment Center, Inc. sold real property located in Minnesota and Kentucky, respectively, and the proceeds of such sale were used to make certain payments identified on SOFA 3 Attachment. The Debtors have listed such payments on the Statements of Financial Affairs for both Debtors out of the abundance of caution.

2.      ***Statements, Part 2, Question 6 – Setoffs***. For a discussion of setoffs and nettings incurred by the Debtors, refer to Note 7 above in Section I. Notes Applicable to All Schedules and Statements.

3.      ***Statements, Part 3, Question 7 – Legal Actions or Assignments***. The actions described in response to Question 7 are the responsive proceedings or pending proceedings of which the Debtors are aware. The actions described in Question 7 include, but are not limited to, commercial litigation, customer credit cases, workers' compensation claims, in addition to environmental-related proceedings, potential violations under the Equal Employment

Opportunity Commission, potential violations under the Occupational Safety & Health Administration, as well as investigations under state and federal law.

The Debtors have devoted substantial resources to identify and provide as much information for as many proceedings as possible in response to Question 7 using records that were reasonably accessible and reviewable. Despite reasonable efforts, the Debtors may not have identified all current and potential causes of action the Debtors may have against third parties in their respective Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets.

The Debtors reserve all of their rights and defenses with respect to all listed lawsuits and administrative proceedings. The listing of any such suits and proceedings shall not constitute an admission by the Debtors of any liabilities or that the actions or proceedings were correctly filed against the Debtors or any affiliates of the Debtors. The Debtors also reserve their rights to assert that neither the Debtors nor any affiliate of the Debtors is an appropriate party to such actions or proceedings.

4.     ***Statements, Part 5, Question 10 – Losses from Fire, Theft or Other Casualty***. The Debtors occasionally incur losses for a variety of reasons, including theft and property damage. The Debtors, however, may not have records of all such losses if such losses do not have a material impact on the Debtors' businesses or are not reported for insurance purposes. Given the scale of the Debtors' operations, certain losses, including those attributable to theft, are unable to be traced by the Debtors with complete accuracy, and accordingly, such losses have not been listed on the Debtors' response to Statement 10.

5.     ***Statements, Part 6, Question 11 – Payments Related to Bankruptcy***. Presented herein are payments made to various professional services firms for services rendered within one year immediately preceding the Petition Date. The services rendered pertain to (i) debt restructuring, (ii) relief under the Bankruptcy Code, and (iii) preparation of a bankruptcy petition.

Information regarding the Debtors' retention of professional service firms is more fully described in the individual retention applications and related orders. The Debtors believe that it would be an inefficient use of the assets of the estates to allocate these payments on a Debtor-by-Debtor basis. The Debtors have listed all such payments on the Statement of iMedia Brands, Inc. In addition, in the interest of additional disclosure and out of an abundance of caution, the Debtors have included all payments to applicable professionals, including payments unrelated to bankruptcy (*e.g.*, for corporate, intellectual property, and litigation-related professional fees and expenses) made within one year proceeding the Petition Date.

6.     Statements, Part 6, Question 13 — The Debtors may, from time to, transfer equipment and other assets and/or sell certain equipment and other assets to third parties. These types of ordinary course transfers have not been disclosed. The Debtors may also abandon assets in place at the locations for which they have no future use or have been unable to sell to a third party. These types of transfers have not been disclosed.

7.     ***Statements, Part 12, Questions 22-24 – Details about Environmental Information***.  The Debtors acknowledge the possibility that information related to material proceedings, notices and governmental notifications responsive to Statements, Part 12, Questions 22-24, may be discovered subsequent to the filing of the Schedules and Statements.  The Debtors reserve the right to supplement or amend this response in the future if additional information becomes available.  In addition, Statements, Part 2, Question 7, may identify information that is also responsive to Statements, Part 12, Question 22.

8.     ***Statements, Part 13, Question 26 – Books, Records, and Financial Statements***.  The Debtors provided financial statements in the ordinary course of business to certain parties for business, statutory, credit, financing and other reasons.  Recipients include, among others, regulatory agencies, financial institutions, investment banks, equityholders, debtholders and their legal and financial advisors.  Financial statements may have also been provided to other parties as requested, subject to customary non-disclosure requirements where applicable.  In the event such financial statements are provided, the Debtors do not maintain complete lists or other records tracking such disclosures. The Debtors' financial statements are also included in their periodic securities filings and available to the public.  Therefore, the Debtors have not provided full lists of these parties in their response to Statement Question 26.

9.     ***Statements, Part 13, Question 28 – Controlling Shareholders***.  For purposes of the Schedules and Statements, the Debtors define "controlling shareholders" to include entities that directly hold in excess of 20% of the membership interests of the applicable Debtor entity.  Entities listed as "controlling shareholders" have been included for informational purposes only.  The Debtors do not take any position with respect to such entity's influence over the control of the Debtors or whether such entity could successfully argue that it is not a "controlling shareholder" under applicable law, including the federal securities laws, or with respect to any theories of liability or for any other purpose.

\* \* \* \* \*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| iMedia Brands, Inc., *et al.*,[1] | Case No. 23-10852 (KBO) |
| Debtors. | (Jointly Administered) |

## STATEMENT OF FINANCIAL AFFAIRS OF DEBTOR
### EP PROPERTIES, LLC (CASE NO. 23-10859)

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642).  The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

**Fill in this information to identify the case:**

Debtor name: EP Properties, LLC

United States Bankruptcy Court for the: District of Delaware

Case number: 23-10859

☐ Check if this is an amended filing

Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/22

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

### Part 1:    Income

**1. Gross revenue from business**

☑ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|---|
| From the beginning of the fiscal year to filing date: | From _____ to Filing Date _____ | ☐ Operating a business<br>☐ Other | _____ |
| For prior year: | From _____ to _____ | ☐ Operating a business<br>☐ Other | _____ |
| For the year before that: | From _____ to _____ | ☐ Operating a business<br>☐ Other | _____ |

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

| | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|---|
| From the beginning of the fiscal year to filing date: | From _____ to Filing Date _____ | _____ | _____ |
| For prior year: | From _____ to _____ | _____ | _____ |
| For the year before that: | From _____ to _____ | _____ | _____ |

**Part 2:** **List Certain Transfers Made Before Filing for Bankruptcy**

**3. Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers - including expense reimbursements - to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None

| Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|
| 3.1 <br><br> See SOFA 3 Attachment | | | ☐ Secured debt<br><br>☐ Unsecured loan repayments<br><br>☐ Suppliers or vendors<br><br>☐ Services<br><br>☐ Other |

**4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1 <br><br> Relationship to debtor | | | ☐ Secured debt<br><br>☐ Unsecured loan repayments<br><br>☐ Suppliers or vendors<br><br>☐ Services<br><br>☐ Other |

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller.
Do not include property listed in line 6.

☑ None

| Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|
| 5.1 | | | |

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| 6.1 <br><br> | Last 4 digits of account number | | |

| Part 3: | Legal Actions or Assignments |
|---|---|

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☑ None

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.1 **Name** _____ **Case number** _____ | _____ | Name _____ Street _____ City ____ State ____ Zip ____ | ☐ Pending ☐ On appeal ☐ Concluded |

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| 8.1 Custodian's name and address _____ Street _____ City ____ State ____ Zip ____ | Case title _____ Case number _____ Date of order or assignment _____ | Court name and address Name _____ Street _____ City ____ State ____ Zip ____ |

| Part 4: | Certain Gifts and Charitable Contributions |
|---|---|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| 9.1 Recipient's name _____ Street _____ City ____ State ____ Zip ____ Recipient's relationship to debtor _____ | _____ | _____ | _____ |

| Part 5: | Losses |

**10. All losses from fire, theft, or other casualty within 1 year before filing this case**

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. List unpaid claims on Official Form 106A/B (Schedule A/B: Assets – Real and Personal Property). | Date of loss | Value of property lost |
|---|---|---|---|
| 10.1 | | | |

| Part 6: | Certain Payments or Transfers |

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| 11.1 | | | |
| See Global Notes | | | |
| **Email or website address** | | | |
| **Who made the payment, if not debtor?** | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.

Do not include transfers already listed on this statement.

☑ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|
| 12.1 | | | |
| **Trustee** | | | |

### 13. Transfers not already listed on this statement

List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☐ None

| Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|
| **13.1** <br><br> Pontus IMB Portfolio LLC <br> 875 Prospect St #303 <br> LaJolla, CA 92037 <br><br> Relationship to debtor <br> Landlord | 1) 6740 Shady Oak Rd, Eden Prairie, MN | 04/10/2023 | Unknown |

---

**Part 7:    Previous Locations**

### 14. Previous addresses

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| Address | | | Dates of occupancy | |
|---|---|---|---|---|
| **14.1** <br> Street <br> 6740 Shady Oak Rd <br><br> City <br> Eden Prairie | State <br> MN | Zip <br> 55344 | From <br> See <br> Note | to <br> Present |

The exact occupancy start date is not readily available, however the debtor was at this location for over 3 years, the reporting period.

---

**Part 8:    Health Care Bankruptcies**

### 15. Health Care bankruptcies

Is the debtor primarily engaged in offering services and facilities for:

☐ diagnosing or treating injury, deformity, or disease, or

☐ providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to part 9.

☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| **15.1** <br> Street <br><br> City      State      Zip | Location where patient records are maintained (if different from facility address). If electronic, identify any service provider | How are records kept? <br> Check all that apply: <br> ☐ Electronically <br><br> ☐ Paper |

**Part 9:**   **Personally Identifiable Information**

**16. Does the debtor collect and retain personally identifiable information of customers?**

☑ No.

☐ Yes. State the nature of the information collected and retained. _____

      Does the debtor have a privacy policy about that information?

      ☐ No

      ☐ Yes

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

☐ Yes. Does the debtor serve as plan administrator?

      ☐ No. Go to Part 10.

      ☐ Yes. Fill in below:

**Name of plan**                                                                 **Employer identification number of the plan**

_____          _____

Has the plan been terminated?

☐ No

☐ Yes

**Part 10:**   **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

**18. Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred? Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| 18.1 Name _____<br>Street _____<br>City _____ State ___ Zip ___ | _____ | ☐ Checking<br>☐ Savings<br>☐ Money market<br>☐ Brokerage<br>☐ Other<br>_____ | _____ | _____ |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| 19.1 | | | ☐ No |
| Name | Address | | ☐ Yes |
| Street | | | |
| City      State      Zip | | | |

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| 20.1 | | | ☐ No |
| Name | Address | | ☐ Yes |
| Street | | | |
| City      State      Zip | | | |

**Part 11:    Property the Debtor Holds or Controls that the Debtor Does Not Own**

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property

☑ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| 21.1 | | | |

**Part 12:**    **Details About Environmental Information**

**For the purpose of Part 12, the following definitions apply:**

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders

☑ No.

☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| 22.1 _____ <br> Case Number _____ | Name _____ <br> Street _____ <br> City _____ State ___ Zip ___ | _____ | ☐ Pending <br> ☐ On appeal <br> ☐ Concluded |

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| 23.1 Name _____ <br> Street _____ <br> City ___ State ___ Zip ___ | Name _____ <br> Street _____ <br> City ___ State ___ Zip ___ | _____ | _____ |

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| 24.1 Name _____ <br> Street _____ <br> City ___ State ___ Zip ___ | Name _____ <br> Street _____ <br> City ___ State ___ Zip ___ | _____ | _____ |

**Part 13:    Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.1 | | EIN _____<br><br>**Dates business existed**<br>From _____    to _____ |

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26a.1<br><br>Amber Eader<br>6740 Shady Oak Rd<br>Eden Prairie, MN 55344 | From<br>06/20/2022    to<br>Present |
| 26a.2<br><br>Chad Underwood<br>6740 Shady Oak Rd<br>Eden Prairie, MN 55344 | From<br>06/07/2021    to<br>03/04/2022 |
| 26a.3<br><br>Montgomery Wageman as Treasurer<br>6740 Shady Oak Rd<br>Eden Prairie, MN 55344 | From<br>05/08/2022    to<br>Present |
| 26a.4<br><br>Montgomery Wageman as Former SVP CFO<br>6740 Shady Oak Rd<br>Eden Prairie, MN 55344 | From<br>06/16/2021    to<br>05/08/2022 |
| 26a.5<br><br>Thomas Zielecki<br>6740 Shady Oak Rd<br>Eden Prairie, MN 55344 | From<br>01/02/2022    to<br>02/08/2023 |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service | |
|---|---|---|
| **26b.1** | | |
| BDO USA LLP | From | to |
| 200 Ottawa Ave NW, Suite 300 | 08/14/2022 | 06/28/2023 |
| Grand Rapids, MI 49503 | | |
| **26b.2** | | |
| Deloitte & Touche LLP | From | to |
| 50 South Sixth Street, Suite 2800 | 10/11/2005 | 06/28/2023 |
| Minneapolis, MN 55402-1538 | | |
| **26b.3** | | |
| Deloitte Tax | From | to |
| 50 South Sixth Street, Suite 2800 | 12/03/2021 | 06/28/2023 |
| Minneapolis, MN 55402-1538 | | |
| **26b.4** | | |
| Grant Thornton LLP | From | to |
| Grant Thornton Tower | 06/08/2021 | 06/28/2023 |
| 171 N. Clark St., Ste 200 | | |
| Chicago, IL 60601-3370 | | |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| **26c.1** | |
| Amber Eader | |
| 6740 Shady Oak Rd | |
| Eden Prairie, MN 55344 | |
| **26c.2** | |
| Tim Peterman | |
| 6740 Shady Oak Rd | |
| Eden Prairie, MN 55344 | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address |
|---|
| **26d.1** |
| See Global Notes |

Debtor  EP Properties, LLC
Name

Case number *(if known)* 23-10859

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name and Address | Position and nature of any interest | % of interest, if any |
|---|---|---|
| 28.1 iMedia Brands, Inc. 6740 Shady Oak Rd Eden Prairie, MN 55344 | Sole Member | 100 |
| 28.2 Monty Wageman 6740 Shady Oak Rd Eden Prairie, MN 55344 | Chief Financial Officer (CFO) | 0 |
| 28.3 Tim Peterman 6740 Shady Oak Rd Eden Prairie, MN 55344 | Chief Executive Officer (CEO) | 0 |

**29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No

☑ Yes. Identify below.

| Name and Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|
| 29.1 Monty Wageman 6740 Shady Oak Rd Eden Prairie, MN 55344 | Former Chief Financial Officer (CFO) | From 06/16/2021   to   07/03/2023 |

**30. Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No

☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1 | | | |

| Relationship To Debtor |
|---|
| |

**31.Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No

☑ Yes. Identify below.

| Name of the parent corporation | | Employer Identification number of the parent corporation |
|---|---|---|
| 31.1 iMedia Brands, Inc. LLC | EIN | 41-1673770 |

**32.Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No

☐ Yes. Identify below.

| Name of the pension fund | | Employer Identification number of the pension fund |
|---|---|---|
| 32.1 | EIN | |

**SOFA 3 ATTACHMENT**

Certain payments or transfers to creditors within 90 days before filing this case

| Creditor's Name | Address 1 | Address 2 | City | State | ZIP | Payment Date | Payment Amount | Reason for Payment or Transfer |
|---|---|---|---|---|---|---|---|---|
| B. Riley Real Estate Solutions | 11100 Santa Monica Blvd. | Ste. 800 | Los Angeles | CA | 90025 | 4/10/2023 | $960,000.00 | Inv. BRR-0272 - Brokerage Fee to B. Riley Real Estate Solutions |
| ECI Environmental | PO BOX 153 | | Fox Island | WA | 98333 | 4/10/2023 | $3,190.00 | Proj. 0831-01 - Phase I ESA Update to ECI Environmental |
| First American Title Insurance Company National Commercial Services | 666 Third Avenue, 5th Floor | | New York | NY | 10017 | 4/10/2023 | $187,201.00 | Title/Escrow Charges |
| GreenLake Real Estate Finance LLC | 1416 El Centro Street | | South Pasadena | CA | 91030 | 4/10/2023 | $28,418,937.45 | Payoff Loan(s) |
| Hennepin County Treasurer | A-600 Government Center | | Minneapolis | MN | 55487-0060 | 4/10/2023 | $250,256.00 | 1st Half RE Taxes - Property ID 0111622340022 to Hennepin County Treasurer |
| Pontus IMB Portfolio, LLC | 875 Prospect St. | Ste. 303 | La Jolla | CA | 92037 | 4/10/2023 | $264,600.00 | April Rent |
| Pontus IMB Portfolio, LLC | 875 Prospect St. | Ste. 303 | La Jolla | CA | 92037 | 4/10/2023 | $4,536,000.00 | Security Deposit |
| Pontus IMB Portfolio, LLC | 875 Prospect St. | Ste. 303 | La Jolla | CA | 92037 | 4/10/2023 | $958,550.00 | Repair to Pontus IMB Portfolio, LLC |
| Pontus IMB Portfolio, LLC | 875 Prospect St. | Ste. 303 | La Jolla | CA | 92037 | 4/10/2023 | $330,000.00 | Commitment Fee to Pontus IMB Portfolio, LLC |
| Strauss & Troy Co., LPA | 150 E. Fourth Street | 4th Floor | Cincinnati | OH | 45202-4018 | 4/10/2023 | $1,696.55 | Inv. MER 884365 - KY Local Counsel Fee to Strauss & Troy Co., LPA |

**Fill in this information to identify the case:**

Debtor name: EP Properties, LLC

United States Bankruptcy Court for the: District of Delaware

Case number: 23-10859

☐ **Check if this is an amended filing**

**WARNING** - Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on
08/09/2023

/s/ Amber Eader _____

Signature of individual signing on behalf of debtor

Amber Eader _____

Printed name

VP, Corporate Controller _____

Position or relationship to debtor

**Are additional pages to Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?**

☑ No

☐ Yes