# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| iMedia Brands, Inc., *et al.*,[1] | Case No. 23-10852 (KBO) |
| Debtors | (Jointly Administered) |
| | **Related to Docket No. 241** |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE RETENTION AND EMPLOYMENT OF LINCOLN PARTNERS ADVISORS LLC AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO 11 U.S.C. §§ 327(a) AND 328, *NUNC PRO TUNC* TO THE PETITION DATE, (B) WAIVING CERTAIN REQUIREMENTS IMPOSED BY LOCAL RULE 2016-2, AND (C) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of iMedia Brands, Inc. and its debtor affiliates (collectively, the "Debtors") hereby files this limited objection (the "Objection") to the *Debtors' Application for Entry of an Order (A) Authorizing the Retention and Employment of Lincoln Partners Advisors LLC as Investment Banker for the Debtors and Debtors in Possession, Pursuant to 11 U.S.C. §§ 327(a) and 328,* Nunc Pro Tunc *to the Petition Date, (B) Waiving Certain Requirements Imposed by Local Rule 2016-2, and (C) Granting Related Relief* (the "Lincoln Application").[2] In support of the Objection, the Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642). The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

[2] Docket No. 241.

## PRELIMINARY STATEMENT

1. By the Lincoln Application, the Debtors seek authorization to retain Lincoln Partners Advisors LLC ("Lincoln") as their investment banker in connection with these cases. The terms of Lincoln's proposed retention are set forth in the engagement letter filed with the Lincoln Application (the "Engagement Letter").[3] Among Lincoln's responsibilities are "formulating and recommending a strategy for pursuing a potential Sale Transaction."[4]

2. The Committee is not challenging Lincoln's qualifications or the retention of Lincoln in these cases. Critically, however, the Lincoln Application requests approval, ***in advance***, of the fees payable to Lincoln under the Engagement Letter. The Committee submits that prejudging Lincoln's compensation as "reasonable" is premature, particularly given the known issues attendant to the sale process in these cases.

3. In light of these issues, Lincoln's compensation should be subject to the standard review and objection process that applies to other professional advisors. That approach is the only way to ensure that the estates receive commensurate value in exchange for what they are paying Lincoln. For this reason, which is further discussed below, fees for Lincoln's services should not be pre-approved but, rather, be subject to review, and potential reduction, based upon the actual benefit those services conferred to the estates.

## BACKGROUND

### I. General Background

4. The Debtors commenced these voluntary cases on June 28, 2023 (the "Petition Date"), and the cases are being jointly administered pursuant to Rule 1015 of the Federal Rules of

---

[3] The Engagement Letter is attached to the Lincoln Application as Exhibit B.

[4] *See* Engagement Letter § 1(b)(iii).

Bankruptcy Procedure and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware. The Debtors continue to operate their businesses and manage their properties as debtors in possession, and no trustee or examiner has been appointed.

5. On July 10, 2023, the United States Trustee appointed the Committee pursuant to section 1102(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code").[5] On July 11, 2023, the Committee selected McDermott Will & Emery LLP as its counsel and AlixPartners, LLP as its financial advisor (both subject to Court approval). On August 5, 2023, the Committee, also subject to Court approval, selected Gellert Scali Busenkell & Brown, LLC as its conflicts counsel.

## II. Lincoln's Proposed Compensation and Responsibilities

6. The terms of Lincoln's retention, including financial terms, are set forth in the Engagement Letter. The Debtors propose to compensate Lincoln as follows (the "Fee Structure"):

- A "Monthly Advisory Fee" of $50,000.

- A "Sale Transaction Fee" equal to 3.0% of the "Enterprise Value" up to $40,000,000, *plus* 1.5% of the Enterprise Value in excess of $40,000,000, with a minimum fee amount of $750,000.

- A "Financing Transaction Fee" equal to (i) 1.5% of the committed amount of any asset based revolving credit debt; *plus* (ii) 2.0% on the committed amount of any other debt or debt-like facilities; *plus* (iii) 3.0% on any preferred stock or common stock raised.

- A "Restructuring Transaction Fee" equal to 1.5% of any "Obligations" if a Restructuring Transaction is consummated.

---

[5] *See Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 126].

7. The Engagement Letter also sets forth Lincoln's role and the services being provided.[6] In connection with a "Sale Transaction," Lincoln is responsible for:

- Identifying potential parties who might be interested in entering into a Sale Transaction;

- Assisting with the preparation of an information memorandum for delivery to potential parties to a Sale Transaction;

- Formulating and recommending a strategy for pursuing a potential Sale Transaction;

- Contacting and eliciting interest from potential parties to a Sale Transaction;

- Conveying information desired by potential parties;

- Reviewing and evaluating potential parties; and

- Reviewing and analyzing proposals.

8. In short, Lincoln is responsible for formulating and managing the most salient aspects of the Debtors' sale process.

**OBJECTION**

9. The Debtors ask that the Court "pre-approve" the Fee Structure under Bankruptcy Code section 328(a). For a professional's compensation to be pre-approved under that section, the terms and conditions must be "reasonable." *See* 11 U.S.C. § 328(a). The party seeking approval of a professional's employment under section 328 has the burden of establishing the reasonableness of the terms. *See, e.g.*, *In re Energy Partners., Ltd*., 409 B.R. 211, 226 (Bankr. S.D. Tex. 2009) ("the trustee or committee seeking the employment of professionals under § 328(a) must establish that the terms and conditions of employment are reasonable" (quoting *In*

---

[6] *See* Engagement Letter § 1(b).

*re High Voltage Eng'g Corp.*, 311 B.R. 320, 333 (Bankr. D. Mass. 2004))); *In re Frontier Commc'ns Corp.*, 623 B.R. 358, 363 (Bankr. S.D.N.Y. 2020) (same).

10. Importantly, if a court pre-approves the terms of a professional's retention under section 328, its power to subsequently alter those terms becomes severely constrained. A court may only "allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also Energy Partners*, 409 B.R. at 223 ("Once a bankruptcy court approves a professional's compensation under [section] 328, only extremely limited circumstances warrant altering that compensation"); *Frontier Commc'ns*, 623 B.R. at 362 (explaining that once their compensation is approved under section 328(a), "professionals largely lock in how they will be paid").

11. Pre-approval under Bankruptcy Code section 328 stands in stark contrast to the standard compensation procedures under Bankruptcy Code section 330. Normally, section 330(a) "allows a court to award less than the total amount of compensation requested by a professional for work performed in connection with a bankruptcy proceeding." *In re Northwestern Corp.*, 344 B.R. 40, 43 (D. Del. 2006) (citing 11 U.S.C. § 330(a)). Conversely, pre-approval under section 328(a) essentially forecloses after-the-fact review. *Riker, Danzig, Scherer, Hyland & Perretti v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 552 F.3d 228, 233 (2d Cir. 2009) ("[T]here is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under 11 U.S.C. § 328.").

12. Courts therefore must be vigilant when reviewing applications under Bankruptcy Code section 328. "The overarching purpose of a review of proposed compensation under section 328(a) is for the bankruptcy court to 'act as gatekeeper and ensure that the employment of these professionals is in the best interests of the Debtor's bankruptcy estate and consistent with preserving the integrity of the bankruptcy system.'" 3 Collier on Bankruptcy ¶ 328.02 (16th ed. 2023) (quoting *Energy Partners*, 409 B.R. at 225 n.12). In its "gatekeeper" role, "a bankruptcy court has an obligation to determine the reasonableness of terms and conditions **before** authorizing the employment of professionals under [section] 328(a)." *Energy Partners*, 409 B.R. at 225. Further, the court "may eliminate, modify, or impose additional terms and conditions to satisfy the requirement of reasonableness." *Id.*; *see also Comm. of Equity Sec. Holders of Federal-Mogul Corp. v. Official Comm. of Unsecured Creditors (In re Federal-Mogul Global, Inc.)*, 348 F.3d 390, 398 (3d Cir. 2003) (explaining that "a Bankruptcy Court need not approve or reject an application as presented but may approve an application with modified terms that the Court finds necessary to render the proposed employment reasonable").

13. Approval under section 328 requires "a sufficiently strong record" to allow the court to "predict whether, and to what extent, a professional will be able to provide a tangible, identifiable, and material benefit to the estate." *Energy Partners*, 409 B.R. at 225, 229–30. The Committee submits that, at this point in the cases, the record is not sufficient to assess whether Lincoln's proposed compensation—the amount of which currently is unknown—is reasonable. The Committee believes that the appropriate time to make this determination will be after the auction for the Debtors' assets has concluded, the sale transaction has closed, and Lincoln has submitted its final fee application detailing the calculation of its proposed success fees.

14. The Mirant Corporation bankruptcy serves as a cautionary tale. There, the court pre-approved fees for certain financial advisors, only to find that it had "erred seriously in entering orders which left it so little discretion in assessing the work of the financial advisors." *In re Mirant Corp.*, 354 B.R. 113, 128 (Bankr. N.D. Tex. 2006). As it turned out, "some sort of 'success' was inevitable," such that, even if the financial advisor had "done no work whatsoever to earn its fees, it would be entitled to the success fee for which it negotiated." *Id*. The court was unable to find that the "estate and its constituencies received direct benefit commensurate with the fees [] to be paid to some of the financial advisors." *Id*. at 129. Nevertheless, approval of the advisors' compensation terms had not proven to be "improvident," so the court was bound to "honor those terms," which was "a regrettable consequence of the requirement that the court apply section 328(a) strictly." *Id*. at 131.

15. The Committee is concerned that pre-approval of the Fee Structure in these cases would invite the same result as in *Mirant*. A "'success' fee should be contingent upon the professional being the agent of that success" in order to "protect against the incurrence of costs for which concomitant value is not received." *Mirant*, at 129 n.35. Approval of the Fee Structure under section 328 would allow Lincoln to secure payment without any showing that the estates received anything of comparable value. Allowing professional advisors to receive fees without providing a demonstable benefit to the estate is "contrary to the most basic axiom of bankruptcy law—that estates of bankrupt debtors should not be diminished absent receipt of comparable value." *Id*.

16. As noted by the Third Circuit in *Federal-Mogul*, a bankruptcy court may, under section 328(a), "approve a professional's retention but specifically reserve the right to approve the fees." *Federal-Mogul*, 348 F.3d at 398-99 (citation omitted). Should the Court determine to

7

approve the Lincoln Application, then, the Court should decline to approve the Fee Structure under section 328. "[U]nless the entity obtained approval under section 328 as to the reasonableness of the compensation sought for the engagement, the reasonableness of the professional's compensation is evaluated under section 330." *In re XO Commc'ns, Inc*., 398 B.R. 106, 113 (Bankr. S.D.N.Y. 2008). Unlike pre-approval, the "'reasonable standard' of section 330 allows a court to view, on an ongoing basis, the nexus between the tasks performed and the results achieved." *Id*. The Committee respectfully submits that under the facts and circumstances presented by these cases, Lincoln's fees should only be allowed following full consideration of the services Lincoln actually provided and the results Lincoln actually achieved.[7]

## RESERVATION OF RIGHTS

17. The Committee reserves the right to further object to the Lincoln Application and any other ancillary issues on any grounds and to respond to any reply of any party in interest, either by further submission to this Court, at oral argument, or by testimony or other evidence to be presented at any hearing on the Lincoln Application.

---

[7] In particular, the Committee requests that paragraph 4 of Lincoln's proposed retention order be modified to include the following bold-faced language: "Lincoln's fees in these Chapter 11 Cases … are hereby approved pursuant to section 328(a) of the Bankruptcy Code. The fees and expenses payable to Lincoln pursuant to the Engagement Letter and this Order shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the U.S. Trustee **and the Official Committee of Unsecured Creditors appointed in these cases (the "Committee")** shall have the right to object to Lincoln's requests for interim and final compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code; *provided*, *however*, that "reasonableness" shall be evaluated by comparing (among other things) the fees payable in the case to the fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated primarily on an hourly or length-of-case based criteria. This Order shall not prejudice or otherwise affect the rights of the U.S. Trustee **or the Committee** to challenge the reasonableness of Lincoln's fees under the standard set forth in the preceding sentence. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee **or the Committee** with respect to the reasonableness of Lincoln's fees and expenses."

## **CONCLUSION**

WHEREFORE, for the reasons above, the Committee respectfully requests that the Court sustain its Objection, decline to approve the Fee Structure under Bankruptcy Code section 328, and require Lincoln to modify its proposed retention order as requested herein.

Dated: August 11, 2023　　　　　　　　**GELLERT SCALI BUSENKELL & BROWN, LLC**
Wilmington, Delaware

*/s/ Ronald S. Gellert*
Ronald S. Gellert (DE 4259)
Bradley P. Lehman (DE 5921)
1201 N. Orange St., Ste. 300
Wilmington, Delaware 19801
Telephone: (302) 425-5800
Facsimile: (302) 425-5814
rgellert@gsbblaw.com
blehman@gsbblaw.com

*Proposed Conflicts Counsel for the Committee*