**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| iMedia Brands, Inc., *et al.*,[1] | Case No. 23-10852 (KBO) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF EUGENE LEE IN SUPPORT**
**OF THE DEBTORS' PROPOSED SALE TO WINNING BIDDER**

I, Eugene Lee, hereby declare under penalty of perjury to the best of my knowledge, information, and belief:

1.     Except as otherwise indicated herein, all facts set forth herein are based on my direct personal knowledge or views, my opinion based upon experience, or on information that I have obtained from the members of the Debtors' management, the Debtors' other advisors, my review of relevant documents and/or employees of Lincoln Partners Advisors LLC ("Lincoln") working directly with me and under my supervision, direction, or control.  I am not being specifically compensated for this testimony other than through payments that Lincoln receives in its capacity as the Debtors' proposed investment banker.   I am over the age of 18 years and am authorized to submit this Declaration on behalf of the Debtors.  If called upon to testify, I could and would competently testify to the facts set forth herein to the best of my knowledge, information, and belief.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642).  The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

2.      I submit this declaration to supplement my declarations that were filed with the Court on July 4, 2023 [Docket No. 94] and July 24, 2023 [Docket No. 243] (together, the "Previous Declarations"), which Previous Declarations are incorporated herein by reference, and in support of the Debtors' proposed sale to the Winning Bidder in accordance with the relief granted by the Court pursuant to the *Order (I) Approving Bidding Procedures, the Form and Manner of Notice Thereof and (II) Granting Related Relief* [Docket 345] (the "Bidding Procedures Order").[2]

### The Debtors' Continued Marketing Process

3.      As set forth in the Previous Declarations, under my direction Lincoln began a marketing and sale process for all or portions of the Debtors' assets beginning in May 2023, which initially culminated in the Debtors' entry into an asset and equity purchase agreement with RNN-TV Licensing Co., LLC ("RNN") on July 3, 2023 (the "RNN APA").[3]  This process was undertaken under the supervision of the disinterested Special Committee of the board of directors of iMedia Brands, Inc. (the "Special Committee").  Following the Debtors' entry into the RNN APA, Lincoln, under the supervision of the Special Committee, continued to solicit and develop higher and better bids for some or all of the Debtors' assets.  This process continued through and after the Court's entry of the Bidding Procedures Order.

4.      In particular, following the entry of the Bidding Procedures Order, and under the supervision of the Special Committee, Lincoln continued to engage with potential buyers

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

[3]     The RNN APA is attached as Exhibit 2 to the *Debtors' Motion Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code for Entry of an Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities; (II) Approving the Debtors' Entry into the Asset Purchase Agreement; (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Docket No. 93] (the "Sale Motion").

and encouraged them to participate in the Auction by submitting binding bids by the bid deadline.  As part of this process, Lincoln encouraged and worked with those potential buyers who had previously submitted binding proposals to the Debtors—RNN and IV Media, LLC ("IVM")—to improve their potential bids, which IVM did prior to the bid deadline   These efforts culminated in the Debtors receiving three potential bids for substantially all or a portion of their assets prior to the bid deadline.  Specifically, the Debtors received (i) a bid (the "IVM Bid") for substantially all of the Debtors' assets submitted by IVM, (ii) a bid (the "RNN Bid") for the iMDS and 123tv businesses submitted by RNN, which was submitted by RNN on August 9, 2023, following the termination on August 8, 2023 of the RNN APA, and (iii) a bid for substantially all of the Debtors' assets submitted by a third party (the "Third Bidder") who had conducted minimal diligence prior to the bid deadline (the "Third Bid").

5.    The Third Bid consisted of a markup of the RNN APA and nothing more. Among other things, the Third Bid failed to include (a) written confirmation that the Third Bid was binding, non-contingent, and irrevocable or a statement that it had been approved by the Third Bidder's board of directors or equivalent governing body, (b) written evidence of the financing available to support the Third Bid, including the financing commitments and documentation of the financial wherewithal to be able to close, (c) proposed adequate assurance information to be provided to contract counterparties and similarly-situated counterparties, (d) a disclosure regarding whether additional parties were supporting the Third Bid, (e) disclosure schedules or exhibits to the proposed purchase agreement, or (f) written acknowledgement that the Third Bidder had had the opportunity to conduct diligence, had relied solely on its own diligence, and had not relied on any written or oral statements or

representations regarding the assets proposed to be purchased except as specifically provided by the proposed purchase agreement.

6.     Despite these deficiencies, and in consultation with the Consultation Parties, Lincoln and the Debtors' other advisors sought to work with the Third Bidder to correct the deficiencies associated with its bid and attempted to elicit such information from the Third Bidder through a series of email correspondences and telephone conferences.    At approximately 6:00 p.m. ET, or nine hours after the Bid Deadline, Lincoln managed to obtain a response from the Third Bidder by telephone, and again sought to work with the Third Bidder to remedy the deficiencies with the Third Bid.  Despite these efforts, the Third Bidder never produced any further information regarding the Third Bid.  Thereafter, after further consultation with the Consultation Parties, the Debtors determined that the Third Bid was not a Qualifying Bid.

7.     The Debtors, in consultation with the Consultation Parties and under the supervision of their Special Committee, then determined that the bids submitted by IVM and RNN were each deemed to be Qualified Bids, and that the IVM Bid would be the Baseline Bid.  Specifically, the IVM Bid provided for at least $55 million of value for the Debtors' estates in the form of a cash purchase price of approximately $40 million plus the assumption of certain liabilities, including up to $8 million of administrative liabilities accruing postpetition, a $3 million minimum cash amount, plus a payment to the lenders under the 123tv Seller Note (of which certain of the Debtors' non-Debtor subsidiaries in Germany are borrower and guarantors) of EUR 5,975,000 (approximately $6.5 million) in full and final satisfaction of the EUR 15,000,000 outstanding principal balance on the 123tv Seller Note, which will allow the Debtors' non-Debtor subsidiaries in Germany that operate the 123tv

business to avoid their own potential German insolvency proceeding, plus the payment or assumption of Cure Costs.  The RNN Bid, on the other hand, was limited to the iMDS and 123tv businesses, and provided only approximately $15 million of value for the Debtors through an $8.5 million cash purchase price and similar payoff of the 123tv Seller Note. Without a separate bid for the Debtors' remaining assets, namely the ShopHQ, Christopher & Banks, and J.W. Hulme retail assets, the RNN Bid provided significantly less value for the Debtors and their estates, and posed significant execution challenges related to carving out the specific assets from the Debtors' operations and providing insufficient value to pay the Debtors' secured lenders in full.  The RNN Bid also did not come with any assurance the Debtors could continue as a going concern, given the absence of any standalone solution for the Debtors' ShopHQ business.  Nevertheless, Lincoln and the Debtors' other advisors encouraged RNN to participate in the Auction and to submit a higher or better bid than the IVM Bid.

### The Auction

8.    On August 10, 2023, the Debtors conducted the Auction pursuant to the Bidding Procedures Order with the two Qualified Bidders attending in person at Debtors' counsel's office in New York.  At the opening of the Auction, following a review of the procedures governing the Auction, RNN requested a short adjournment to discuss the opportunity to speak with IVM about a potential combination bid whereby RNN would purchase the iMDS and/or 123tv businesses and IVM would purchase the Debtors' remaining assets.  After consultation with the Consultation Parties, the Debtors, in an effort to drive additional consideration to the Debtors' estates, allowed RNN and IVM to speak about a potential combination bid in a meeting attended by Lincoln and AlixPartners, as

5

representatives of the Debtors and the official committee of unsecured creditors.  After a short meeting, no agreement was reached between IVM and RNN.  Thereafter, the Auction was again opened and RNN offered the chance to overbid the IVM Bid.  RNN chose not to overbid the IVM Bid, and therefore the Auction concluded with the IVM Bid being designated as the Winning Bid, and the only bid that provides for the Debtors' continuation as a going concern, as opposed to a piecemeal break-up and potential liquidation of certain of the Debtors' assets.

### The IVM Bid Represents the Highest and Best Value

9.      Taking into account all of the relevant facts and circumstances of these Chapter 11 cases and the Debtors marketing efforts throughout the sale process, the bidding process and conduct of the Auction, it is my opinion that the IVM Bid is the highest and best bid available for substantially all of the Debtors' assets, and that the proposed sale to IVM constitutes a reasonable and sound exercise of the Debtors' business judgment, is in the best interest of the Debtors and their estates, and should be approved.  I believe the IVM Bid represents a fair and reasonable offer to purchase the Debtors' assets, is a reasonably equivalent exchange of value for the Assets, and that no other person, entity, or group of entities has offered to purchase all or substantially all of the Debtors' assets for greater overall value to the Debtors' estates than IVM.

10.      Based on my professional experience and knowledge of these chapter 11 cases, I further believe that the Debtors conducted a fulsome marketing process for the Debtors' assets and the Debtors and their professional advisors afforded all potential purchasers an appropriate opportunity to participate in the sale process and submit a bid for the Debtors' assets.  Additionally, I believe the Debtors' sale process was robust and fair given the circumstances facing the Debtors and that the IVM Bid represents fair and reasonable terms

for the purchase of substantially all of the Debtors' assets based on the marketing process described herein and in my Previous Declarations.

## **IVM's Good Faith**

11.    I, and others at Lincoln under my supervision, have been personally involved in all aspects of the sale process, including negotiations with IVM over the IVM Bid and the terms of the proposed order approving the IVM Bid.  Based on my experience and personal observations, including representations made on the record at the Auction, at all times during the sale process and in negotiations over the IVM Bid and the proposed order approving the IVM Bid, IVM (including its representatives) has (a) acted in good faith and on an arm's-length basis with the Debtors and their advisors and (b) conducted itself in a non-collusive, fair, and good-faith manner.

12.    Further, I am not aware of any facts indicating that the IVM Bid was entered into for the purpose of hindering, delaying, or defrauding creditors or fraudulently entered into.  I believe that the IVM Bid and the transactions contemplated thereunder were negotiated at arm's-length and in good faith with the Debtors and their advisors and have been entered into by IVM and the Debtors without collusion or fraud of any kind. I further believe that under the circumstances, including the comprehensive marketing process conducted by the Debtors, the consideration provided by IVM is fair and reasonable, and the highest and best value for the assets to be sold.

13.    Based on the forgoing, I believe that IVM submitted the IVM Bid, and all transactions pursuant thereto will be entered into, in good faith within the meaning of the use of such term in 11 U.S.C. § 363(m) such that IVM should be entitled to the protections provided therein.

14.     In my opinion, the sale of substantially all of the Debtors' assets contemplated by the IVM Bid represents the highest and best value for the Debtors' estates, a reasonable exercise of the Debtors' business judgment, and should be approved by the Court.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: August 14, 2023

/s/ *Eugene Lee*
_____
Eugene Lee
Managing Director
Lincoln Partners Advisors, LLC