**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| iMedia Brands, Inc., *et al.*,[1] | Case No. 23-10852 (KBO) |
| Debtors. | (Jointly Administered) |

**ORDER (I) AUTHORIZING THE SALE OF**
**SUBSTANTIALLY ALL OF THE DEBTORS'**
**ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES**
**OTHER THAN ASSUMED LIABILITIES; (II) APPROVING**
**THE DEBTORS' ENTRY INTO THE ASSET PURCHASE AGREEMENT;**
**(III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**

Upon the *Debtors' Motion Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code for Entry of an Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities; (II) Approving the Debtors' Entry into the Asset Purchase Agreement; (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Docket No. 93] (the "Sale Motion") and the *Debtors' Motion For Entry of an Order (I) Approving Bidding Procedures, the Form and Manner of Notice Thereof and (II) Granting Related Relief* [Docket No. 311] (the "Bidding Procedures Motion, and together with the Sale Motion, collectively, the "Motions") filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and this Court having previously entered the *Order (I) Approving*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: ValueVision Media Acquisitions, Inc. (8670); iMedia Brands, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642). The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

*Bidding Procedures, the Form and Manner of Notice Thereof and (II Granting Related Relief* [Docket No. 345] (the "Bidding Procedures Order"); and IV Media, LLC (the "Buyer") having submitted the highest or best bid for the Purchased Assets, as reflected in that certain Asset and Equity Purchase Agreement, dated as of August 14, 2023, by and among the Buyer and the Debtors party thereto (as amended or otherwise modified from time to time, the "APA"),[2] a copy of which is attached hereto as **Exhibit 1**; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motions in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motions is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motions and opportunity for a hearing on the Motions were sufficient and no other notice need be provided; and this Court having reviewed the Motions and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motions and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the APA. For the avoidance of doubt, Portal Acquisition Co. is not a "Seller" under the APA.

## I.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

**NOW, THEREFORE, THIS COURT HEREBY FINDS AND CONCLUDES THAT**:[3]

A.      The legal and factual bases set forth in the Motions and the Hearing establish just and sufficient cause to grant the relief set forth herein.

B.      On July 3, 2023, the Debtors filed the Sale Motion.  On July 28, 2023, the Debtors filed the Bidding Procedures Motion.  On August 3, 2023, this Court entered the Bidding Procedures Order.

C.      On August 10, 2023, the Debtors held an auction for the Purchased Assets pursuant to the Bidding Procedures Order (the "Auction").  At the conclusion of the Auction, the Debtors and the Buyer entered into the APA (the transactions contemplated therein, collectively, the "Sale Transaction").

D.      At the Closing of the Sale Transaction, (i) all obligations under the DIP Credit Agreement (other than the ETF (as defined in DIP Credit Agreement)) and the order approving the DIP Credit Agreement (the "DIP Order") will be indefeasibly paid and satisfied in full from the Cash Balance (as defined in the APA) by wire directly to Siena Lending Group LLC in its capacity as the DIP agent (the "DIP Agent") for the benefit of the DIP Lenders and applied in accordance with the DIP Credit Agreement and the DIP Order, and (ii) the Pre-Petition Revolving Liens and Pre-Petition Obligations and DIP Liens and DIP Obligations will attach to the remaining proceeds of the Sale Transaction to the extent provided by the DIP Order, subject to the rights reserved with respect to the same under the DIP Order.

E.      At the Hearing held on August 14, 2023, the Debtors sought approval from this Court of the Sale Transaction.

---

[3]   Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

F.      As demonstrated by the testimony proffered and the evidence adduced at the Hearing and the representations of counsel made on the record at the Hearing, the Debtors adequately marketed the Debtors' assets prior to the commencement of and during these Chapter 11 Cases based on the facts and circumstances, and the sale process was conducted in a non-collusive, fair, and good-faith manner, and all interested parties were provided a full, fair and reasonable opportunity to make an offer to purchase the Purchased Assets.  The Debtors, the Buyer and their respective counsel and other advisors have complied with the Bidding Procedures and the Bidding Procedures Order.  The Sale Transaction must be approved and consummated promptly in order to preserve the viability of the Debtors' business as a going concern and to maximize the value of the Debtors' estates.  Time is of the essence to implement the APA and to consummate the Sale Transaction contemplated thereby without any interruption.

G.      The Buyer acted in good faith and conducted itself in a non-collusive and fair manner.  The Buyer is a "good-faith purchaser" within the meaning of sections 363(m) and 364(e) of the Bankruptcy Code, and, as such, is entitled to all the protections afforded thereby in the event that this Order is modified, amended, vacated, or reversed by a subsequent order of this Court or any other court on appeal.  No such appeal, modification, amendment, or vacatur shall affect the validity and enforcement of the Sale Transaction.  Neither the Debtors, nor the Buyer have engaged in any conduct that would cause or permit the APA to be avoided and/or costs and damages to be imposed under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) and 364(e) of the Bankruptcy Code.  The Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction.  The Buyer's payment of amounts owing under the APA is in good faith and for valid business purposes and uses.  The Buyer is not an "insider" of any of the Debtors, as that term is defined in section 101 of the

Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between the Buyer and the Debtors.

H.      Subject to the entry of this Order, each Debtor has: (i) full requisite corporate or other organizational power and authority to execute, deliver, and perform its obligations under the APA and all other documents contemplated thereby, and (ii) taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the execution, delivery, and performance of its obligations under the APA and to consummate the Sale Transaction, and upon execution thereof, the APA and the related documents are duly and validly executed and delivered by such Debtor and enforceable against such Debtor in accordance with its terms and, assuming due authorization, execution, and delivery thereof by the other parties thereto, constituted or will constitute a valid and binding obligation of such Debtor.  No government or regulatory approval, other than such approvals, the failure of which to obtain would not, individually or in the aggregate, reasonably be expected to be material to the Purchased Assets, are required for the execution, delivery, and performance by the Debtors of the APA or the consummation of the Sale Transaction contemplated thereby.

I.      The total consideration provided by the Buyer for the Purchased Assets as reflected in the APA is the highest and otherwise best offer received by, and available to, the Debtors for the Purchased Assets.  The Debtors' determination that the APA is the highest and otherwise best offer constitutes a valid and sound exercise of the Debtors' business judgment, and the Debtors' decision to enter into the APA and the Sale Transaction constitutes a proper exercise of the fiduciary duties of the Debtors and their officers, directors, and managers.  The offer of the Buyer, upon the terms and conditions set forth in the APA, including the total consideration to be realized by the Debtors thereunder, (i) is the highest and otherwise best offer received by the Debtors after

an extensive and thorough marketing process and the completion of the Auction, and (ii) is in the best interests of the Debtors, their creditors, their estates and other parties in interest.  Taking into consideration all relevant factors and circumstances, no other entity has submitted a higher or otherwise better offer to purchase the Purchased Assets from the Debtors, and the Sale Transaction is the best alternative for the Debtors.

J.      The Debtors have articulated good and sufficient business reasons for this Court to authorize (i) the Debtors' entry into the APA and consummation of the Sale Transaction, including the sale of the Purchased Assets to the Buyer, pursuant to the terms of the APA, (ii) the assumption of the Assumed Liabilities as set forth herein and in the APA, (iii) the Buyer's designation rights as set forth in the APA, including with respect to the Designated Contracts, and (iv) the assumption and assignment to Buyer of Purchased Contracts and Designated Contracts in accordance with the procedures set forth herein and in the APA.  Entry into the APA and consummation of the Sale Transaction are sound exercises of the Debtors' business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest.

K.      Sound business justifications also exists for the funding of the Excluded Cash together with the Purchase Price Reserve.  The Excluded Cash will avoid a freefall shutdown of the Debtors' remaining estates and will be used for the purpose of providing funding of those professional fees and other expenses that are necessary to implement an orderly and responsible wind-down of the Debtors' estates.  The Excluded Cash together with the Purchase Price Reserve is reasonable under the facts and circumstances of these Chapter 11 Cases.

L.      The Debtors may sell the Purchased Assets free and clear of all claims, liens, interests, and encumbrances (other than Permitted Encumbrances and Assumed Liabilities

expressly assumed under, or expressly permitted by, the APA) because, with respect to each creditor asserting a claim, lien, interest or encumbrance, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Those holders of claims, liens, interests, or encumbrances that did not object to or that withdrew their objections to the sale of the Purchased Assets or the Motion are deemed to have consented to the Motion and the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of claims, liens, interests, or encumbrances that did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, therefore, are adequately protected.

M.    The protections afforded to the Buyer under the Bankruptcy Code and this Order, including the sale of the Purchased Assets free and clear of all Encumbrances (other than the Permitted Encumbrances and Assumed Liabilities expressly assumed under, or permitted by, the APA), are critical to the Buyer.  Absent such protections, the Buyer would not have entered into the APA.  Further, absent such protections, the Buyer will not consummate the Sale Transaction contemplated thereby, thus materially and adversely affecting the Debtors, their estates, and their creditors.

N.    The total consideration to be provided under the APA reflects the Buyer's reliance on this Order to provide, pursuant to section 363(f) of the Bankruptcy Code, that, upon the Closing, the Buyer will have title to and possession of the Purchased Assets free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities expressly assumed under, or permitted by, the APA).

O.    The assumption and assignment of the Purchased Contracts pursuant to the terms of this Order is integral to the APA and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, is integral to the Sale Transaction and the

transactions contemplated pursuant to the APA, and represents a reasonable exercise of sound and prudent business judgment by the Debtors.  Payment of the Cure Costs, including amounts agreed by a contract counterparty in full settlement and satisfaction of any Cure Costs, by the Buyer shall (i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Purchased Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.  The Buyer's financial wherewithal to consummate the Sale Transaction contemplated by the APA and the evidence presented prior to or at the Hearing demonstrating the Buyer's ability to perform the obligations under the Purchased Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

P.     The Debtors filed and served a notice of potential Purchased Contracts upon each non-Debtor counterparty to a Contract [Docket No. 132], as later amended by that certain amended notice of potential Purchased Contracts [Docket No. 352] (the "Cure Notice"), identifying the amount, based on the Debtors' books and records, required to cure any and all defaults and actual pecuniary losses to the non-Debtor counterparties to all Contracts that could be Purchased Contracts or Designated Contracts resulting from such defaults, including, but not limited to, all claims, demands, charges, rights to refunds, and monetary and non-monetary obligations that the non-Debtor counterparties can assert under such Contracts, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising

under or out of, in connection with, or in any way relating to, the Contracts (the foregoing amounts collectively referred to as the "Cure Costs").  The service and provision of the Cure Notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of the assumption and assignment of the Purchased Contracts or for establishing the Cure Cost for any respective Purchased Contract, including any Designated Contract.  Non-Debtor counterparties to the Purchased Contracts have had an adequate opportunity to object to the assumption and assignment of the applicable Purchased Contract and the Cure Cost as set forth in the Cure Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Buyer for purposes of section 365(c)(1) of the Bankruptcy Code).  The deadline for a non-Debtor counterparty to file an objection to the stated Cure Costs in the Cure Notice, as applicable, has expired and, to the extent any such party timely filed an objection, all such objections have been resolved, withdrawn, overruled, or continued to a later hearing or other disposition by agreement of the parties or as otherwise provided in this Order.  Notwithstanding anything in this Order or the APA to the contrary, no Designated Contract shall constitute a Purchased Contract or Purchased Asset until such time as such Designated Contract is assumed and assigned to Buyer with the consent of the counterparty to such Designated Contract or by subsequent order of this Court.

Q.    The Buyer's designation rights with respect to Designated Contracts are integral to the APA, and as a result are in the best interests of the Debtors and their estates, and represent the reasonable exercise of the Debtor's business judgment.  Specifically, the Buyer's designation rights (i) are necessary to sell the Purchased Assets to the Buyer, (ii) limit the losses suffered by counterparties to the Purchased Contracts, and (iii) maximize the recoveries to creditors of the

Debtors by potentially limiting the number and amount of claims against the Debtors' estates arising out of the rejection of Contracts.

R.    The sale, conveyance, assignment, and transfer of any personally identifiable information pursuant to the terms of the APA and this Order complies with the terms of the Debtors' policy regarding the transfer of such personally identifiable information as of the Petition Date and, as a result, the consummation of the Sale Transaction is permitted pursuant to section 363(b)(1)(A) of the Bankruptcy Code.    Accordingly, appointment of a consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

S.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the APA and this Order, including, without limitation, the Sale Transaction and the assumption and assignment of the Purchased Contracts prior to, and outside of, a chapter 11 plan because, among other things, the Debtors' estates will suffer irreparable harm if the relief requested in the Motion is not granted on an expedited basis.    This Court expressly finds that there is no just reason for delay in the implementation of this Order.

T.    The APA was negotiated in good faith and at arm's-length.    The Buyer participated in good faith in these Chapter 11 Cases and the Auction.    The consideration to be paid by the Buyer under the APA was negotiated at arm's-length and constitutes (i) fair, adequate, and reasonable consideration for the Purchased Assets and (ii) reasonably equivalent value for the Purchased Assets.    The terms and conditions set forth in the APA are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtors or their creditors under any applicable laws.

U.      The Buyer is not, and shall not be deemed to be, a mere continuation, alter ego, or successor in interest, and there is no continuity between the Buyer and the Debtors based upon the Sale Transaction, the APA, or this Order.  The Sale Transaction does not amount to a consolidation, merger, or de facto merger of the Buyer and the Debtors.

V.      The Sale Transaction does not impermissibly restructure the rights of any of the Debtors' creditors or impermissibly dictate the terms of a liquidating plan of reorganization of the Debtors.  Nothing in this Order is approving any disclosure statement, plan, or a finding of fact or conclusion of law in connection therewith.  Further, nothing in this Order is approving any distribution that would be inconsistent with the Bankruptcy Code's priority scheme, including the timing and/or amount of money to be paid to creditors in any future plan.

W.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Court expressly finds that there is no just reason for delay in the implementation of this Order, and sufficient cause exists for the waiver of any such stay.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction, as contemplated by the APA.  The Buyer, being a good-faith purchaser under section 363(m) of the Bankruptcy Code, may close the Sale Transaction contemplated by the APA at any time after entry of this Order.

X.      As evidenced by those certificates of service filed with this Court at Docket Nos. 135, 157, 184, 190, 192, 332, 334, 343, 349, 368, 369, 370, 384, 390, 392, and 394, and those certificates of publication filed with this Court at Docket Nos. 130 and 131: (i) proper, timely, adequate, and sufficient notice of the Motions, the Hearing, the Sale Transaction, and this Order was provided by the Debtors; (ii) such notice was good, sufficient, and appropriate under the

particular circumstances; and (iii) no other or further notice of the Motions, the Hearing, the Sale Transaction, or this Order is required.

Y.    Parties in interest were afforded a full opportunity to participate in the Hearing.

Z.    The relief granted herein is in the best interests of the Debtors, their estates and creditors, and other parties in interest.

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Motion is granted to the extent set forth herein.

2.    All objections to the Motion or any other relief granted in this Order, to the extent not resolved, adjourned for hearing on a later date, waived, or withdrawn or previously overruled, and all reservations of rights included in any objection, are hereby overruled and denied on the merits, except as otherwise provided on the record at the Hearing; *provided* that this Order does not alter or otherwise modify the rights of any Counterparty to a Designated Contract to object to the adequate assurance of performance provided by the Buyer prior to the expiration of the Adequate Assurance Objection Deadline.

3.    The APA and the Sale Transaction are hereby approved, and the Debtors are authorized to enter into and perform under the APA and other related agreements pursuant to sections 105, 363, 364, and 554 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, 6006, and 9014, each as applicable.  Each of the Debtors and the Buyer are hereby authorized and directed to take any and all actions necessary or appropriate to consummate the transactions contemplated therein.

4.    Notwithstanding anything to the contrary herein or in the APA, all amounts the Buyer is responsible for paying pursuant to the APA to the extent payable to a counterparty to a

Purchased Contract or a Designated Contract may be paid by the Buyer directly to such counterparty.

5.      During the Designation Rights Period, the Buyer may (i) assume and assign Designated Contracts pursuant to the APA with the consent of the counterparties to a Designated Contract or (ii) direct the Debtors to file a notice with this Court to assume and assign Designated Contracts to the Buyer upon payment of the resolved Cure Costs, as applicable, in each case pursuant to section 365 of the Bankruptcy Code (a "Designation Notice").  Notwithstanding the foregoing, any objection to the assumption and assignment of a Designated Contract that was timely filed in accordance with the Bidding Procedures Order is hereby preserved, and the Debtors may not assume and assign such applicable Designated Contracts without further order of this Court or the consent of the applicable counterparty.

6.      At any time that is at least ten (10) days prior to the end of the Designation Rights Period, by written notice to the Debtors, Buyer may (i) send a Designation Notice or (ii) designate any Designated Contract to be an Excluded Contract (an "Excluded Contract Notice").

7.      Two (2) Business Days after delivery of an Excluded Contract Notice to the Debtors, any Designated Contract listed in such Excluded Contract Notice shall be deemed to be an Excluded Contract.

8.      For any Designated Contract that the Buyer directs the Debtors to assume and assign to the Buyer pursuant to paragraph 5(i) of this Order and that is subject to a written agreement (each, an "Assumption Agreement") executed by and between the Buyer and a counterparty to a Designated Contract, such Designated Contract shall be deemed assumed by the Debtors and assigned to the Buyer pursuant to section 365 of the Bankruptcy Code in accordance with and effective as provided in the Assumption Agreement between the Buyer and the

counterparty to a Designated Contract without further order of this Court.  For the avoidance of doubt, the Buyer is authorized to enter into Assumption Agreements with counterparties to a Designated Contract.  To the extent liabilities related to the Cure Costs are assigned to the Buyer pursuant to the APA, the Debtors shall not be liable for any Cure Costs related to Designated Contracts.

9.     Within two (2) business days of the expiration of the Designation Rights Period, the Debtors shall file a notice with this Court with an exhibit listing the Designated Contracts that were deemed Excluded Contracts during the Designation Rights Period.

10.     The Debtors are hereby authorized in accordance with section 365 of the Bankruptcy Code and the procedures set forth in this Order and in the APA to assume and assign the Purchased Contracts listed on **Exhibit 2** attached hereto to the Buyer free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities expressly assumed under, or permitted by, the APA), subject to Paragraph 15 of this Order, and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Purchased Contracts to the Buyer as provided in the APA; *provided*, that Designated Contracts shall only be transferred free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities expressly assumed under, or permitted by, the APA) upon assumption or assumption and assignment of such Designated Contracts.  The Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Purchased Contracts assumed and assigned in accordance with the procedures set forth in the APA and this Order, notwithstanding any requirement for approval or consent by any person, except as set forth in paragraph 8 herein, and, to the extent permitted under section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from further liability with respect to the Purchased Contracts.

11.    To the extent that any counterparty to a Purchased Contract, including a Designated Contract, failed or fails to timely object to the proposed Cure Costs, such counterparty is deemed to have consented to such Cure Costs and the assumption and assignment of its respective Purchased Contract to the Buyer in accordance with the APA.  Unless otherwise provided in this Order or agreed between Buyer and the applicable contract counterparty, the Cure Cost listed next to each Purchased Contract on **Exhibit 2** attached hereto shall be the Cure Cost payable for assignment of such Purchased Contract to Buyer.

12.    Upon the Debtors' assignment of the Purchased Contracts to the Buyer in accordance with section 365 of the Bankruptcy Code, no default shall exist under any Purchased Contracts unless otherwise stipulated in the applicable Assumption and Assignment Agreement or in any order assuming or assuming and assigning a Purchased Contract, and no counterparty to any Purchased Contracts shall be permitted to declare a default by any Debtor or the Buyer, or otherwise take any action against the Buyer, as a result of any of the Debtors' financial condition, bankruptcy, or the Debtors' failure to perform any of its obligations under the relevant Purchased Contracts.  Any provision in a Purchased Contract that prohibits or conditions the assignment or sublease of such Purchased Contract or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision under section 365 of the Bankruptcy Code that is void and of no force and effect, but only in connection with any assumption and assignment authorized by this Order.  The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Purchased Contract shall not constitute a waiver of such terms or conditions or of the Debtors' or the Buyer's rights to enforce every term and condition of the Purchased Contracts in accordance therewith.

13.     At the Closing, all of the Debtors' right, title, and interest in and to, and the possession of, the Purchased Assets shall be immediately vested in the Buyer pursuant to sections 363(b), 363(f), and 365 of the Bankruptcy Code; *provided*, that right, title, and interest in and to Designated Contracts shall be vested in the Buyer only upon assumption, or assumption and assignment, of such Designated Contract to the Buyer. The transfer to the Buyer of the Debtors' rights, title, and interest in the Purchased Assets pursuant to the APA shall be, and hereby is deemed to be, a legal, valid, and effective transfer of the Debtors' rights, title, and interest in the Purchased Assets, and vests with or will vest in the Buyer all rights, title, and interest of the Debtors in the Purchased Assets, free and clear of all claims, liens, interests, and encumbrances of any kind or nature whatsoever (other than the Permitted Encumbrances and Assumed Liabilities expressly assumed under, or permitted by, the APA), with any such claims, liens, interests, and encumbrances attaching to the proceeds of the Sale Transaction with the same validity, extent, and priority as immediately prior to the sale of the Purchased Assets, subject to any rights, claims, and defenses of the Debtors and other parties in interest.

14.     This Order (a) shall be effective as a determination that upon the Closing that (i) no claims or causes of action arising from any period prior to the Closing other than the Assumed Liabilities can be asserted against the Buyer or any of its assets, (ii) the Purchased Assets shall have been transferred to the Buyer free and clear of all liens, claims, interests, and encumbrances, other than the Permitted Encumbrances, and (iii) the conveyances described herein have been effected; (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and

local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the APA.

15.    At the Closing of the Sale Transaction, (a) all obligations under the DIP Credit Agreement (other than the ETF (as defined in the DIP Credit Agreement)) and DIP Order will be indefeasibly paid and satisfied in full from the Cash Balance by wire directly to DIP Agent for the benefit of the DIP Lenders and applied in accordance with the DIP Credit Agreement and the DIP Order and (b) the Pre-Petition Revolving Liens and Pre-Petition Obligations and DIP Liens and DIP Obligations will attach to the remaining proceeds of the Sale Transaction to the extent provided by the DIP Order, subject to the rights reserved with respect to the same under the DIP Order.

16.    The APA has been entered into, and the Sale Transaction contemplated under the APA is undertaken, by the Buyer in good faith, and the Buyer is a good-faith purchaser of the Purchased Assets as that term is used in section 363(m) of the Bankruptcy Code.  The Buyer is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.  Neither the Debtors nor the Buyer have engaged in any action or inaction that would cause or permit the Sale Transaction to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.

17.    The consideration provided by the Buyer for the Purchased Assets under the APA shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration

under the Bankruptcy Code and any other applicable law, and the sale of the Purchased Assets may not be avoided, or costs or damages imposed or awarded under section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or any other similar federal or state laws.

18.     The APA and any related agreements, documents, or other instruments may be modified, amended, supplemented, or restated by the parties thereto in a writing signed by such parties, and in accordance with the terms thereof, without further order of this Court; *provided*, that any such modification, amendment, supplement, or restatement shall not cause (i) a material adverse effect on the Debtors' estates or (ii) a reduction in the Cash Balance.

19.     The terms and provisions of the APA and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors (whether known or unknown), the Buyer, and each of their respective affiliates, successors, and assigns, and any affected third parties, including, without limitation, all Persons asserting Encumbrances (collectively, the "Bound Parties"), notwithstanding any subsequent appointment of any trustee, examiner, or receiver under the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, receiver, party, entity, or other fiduciary under the Bankruptcy Code or any other law with respect to any of the Bound Parties and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, receiver, party, entity, or other fiduciary.  The provisions of this Order and the terms and provisions of the APA shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors or converting these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.  The rights and interests granted

pursuant to this Order and the APA shall continue in these or any superseding cases and shall be binding upon the Bound Parties and their respective successors and permitted assigns including, without limitation, any trustee, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized and directed to perform under the APA and this Order without the need for further order of this Court.

20.     Following the Closing of the Sale Transaction, no holder of any Encumbrance (other than Permitted Encumbrances and Assumed Liabilities expressly assumed under, or expressly permitted by, the APA) shall interfere with the Buyer's title to, or use and enjoyment of, the Purchased Assets based on or related to any such Encumbrance or based on any actions or inactions the Debtors may take in these Chapter 11 Cases.

21.     None of the Buyer or its affiliates, successors, assigns, equity holders, officers, directors, employees, or professionals shall have or incur any liability to, or be subject to, any action by any of the Debtors or any of their estates, predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the APA and the entry into and consummation of the sale of the Purchased Assets, except as expressly provided in the APA or this Order.

22.     Neither the Buyer nor any of its respective affiliates, members, successors, assigns, equity holders, officers, directors, employees or professionals (each such entity and person individually and taken together, the "Buyer Group") shall be deemed, as a result of any action taken in connection with the APA, the consummation of the Sale Transaction contemplated by

the APA, or the transfer, operation, or use of the Purchased Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtors, including a "successor employer" for the purposes of the Internal Revenue Code of 1986, the Employee Retirement Income Security Act of 1974, or other applicable laws (other than as expressly provided in the APA), (b) have any responsibility or liability for any obligations of the Debtors or any affiliate of the Debtors based on any theory of successor or similar theories of liability, (c) have, de facto or otherwise, merged with or into the Debtors, (d) be an alter ego or a mere continuation or substantial continuation of the Debtors (and there is no continuity of enterprise between the Buyer and the Debtors) including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, ERISA, tax law, labor law, products liability law, employment law, environmental law, or other law, rule, or regulation (including, without limitation, any filing requirement under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation, or (e) be holding itself out to the public as a continuation of any of the Debtors or their respective estates.

23.     The Buyer shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the Purchased Assets other than as expressly set forth in the APA or (b) any claims against the Debtors or any of their predecessors or affiliates.  Except as expressly provided in the APA with respect to the Buyer, the Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or

unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Assets prior to the Closing.  Except to the extent expressly included in the Assumed Liabilities with respect to the Buyer, the Buyer shall have no liability or obligation under (a) the WARN Act (29 U.S.C. §§ 2101 et seq.), (b) the Comprehensive Environmental Response Compensation and Liability Act, (c) the Age Discrimination and Employment Act of 1967 (as amended), (d) the Federal Rehabilitation Act of 1973 (as amended), (e) the National Labor Relations Act, 29 U.S.C. § 151 et seq., or (f) any foreign, federal, state, or local labor, employment (including any rights under any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability) or environmental law, by virtue of the Buyer's acquisition of the Purchased Assets or the consummation of the Sale Transaction.  Without limiting the foregoing, the Buyer Group shall have no liability or obligation with respect to any (and there is no continuity of enterprise between the Buyer and the Debtors) liabilities of the Debtors or any environmental or other liabilities associated with the Purchased Assets, except to the extent they are expressly identified as Assumed Liabilities set forth in the APA.  Other than as expressly set forth in the APA, the Buyer shall have no liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Assets prior to the Closing.

24.     No bulk sales law or similar law shall apply in any way to the Sale Transaction, the APA or this Sale Order.   No sales tax shall be payable in connection with the Sale Transaction in any state that has an occasional sales tax exemption.

25.     The Buyer is a party in interest in these Chapter 11 Cases and shall have the ability to appear and be heard before this Court on all issues related to or otherwise connected to this Order, the Sale Transaction, and any issues related to or otherwise connected to the Sale Transaction and the APA.

26.     The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any related agreements in accordance with the terms and conditions thereof.   The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Order.

27.     Subject to and upon the Closing, other than the Debtors' rights to enforce the express terms of the APA, the Debtors hereby waive any and all actions related to, and hereby release the Buyer and any of its agents and designees and their respective property from, any and all claims and causes of action relating to the Sale Transaction and the APA, whether known or unknown, now existing or hereafter arising, asserted or unasserted, mature or inchoate, contingent or non-contingent, liquidated or unliquidated, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, except to the extent specifically assumed or established under this Order.

28.     Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Sale Transaction contemplated by the APA.

Nothing in this Order or the APA releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to any governmental unit that any entity would be subject to as the owner or operator of property after the Closing Date.  Without limiting the provisions of the foregoing sentence, but subject to section 525(a) of the Bankruptcy Code, no governmental unit may revoke or suspend any right, license, trademark, or other permission relating to the use of the Purchased Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale Transaction for the Purchased Assets.  Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

29.    Subject to the restrictions set forth in this Order, the Debtors and the Buyer are hereby authorized to take any and all actions as may be necessary or desirable to implement the Sale Transaction and to effectuate the relief granted in this Order, and any actions taken by the Debtors or the Buyer necessary or desirable to implement the Sale Transaction prior to the date of this Order are hereby approved and ratified.

30.    To the extent this Order is inconsistent with any prior order or pleading filed in these Chapter 11 Cases, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the APA, the terms of this Order shall govern.

31.     Notice of the Motions as provided therein shall be deemed good and sufficient notice of such Motions and the APA, and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

32.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h) and 6006(d), the terms and conditions of this Order are immediately effective and enforceable upon its entry, and sufficient cause having been shown, this Court hereby waives any stay pursuant to Bankruptcy Rule 6004(h) and 6006(d) and expressly directs entry of judgment.

33.     The provisions of this Order are non-severable and mutually dependent.

34.     The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provisions, with it being the intent of this Court that the APA be authorized and approved in its entirety.

35.     Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Cases or any order confirming any such plan or in any other order in these Chapter 11 Cases (including any order entered after any conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Order shall alter, conflict with, or derogate from, the provisions of the APA or this Order.

36.     From time to time, as and when requested by any party and to the extent contemplated by the APA, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale Transaction contemplated by the APA, including such actions as may be necessary to

vest, perfect, or confirm, of record or otherwise, in the Buyer its right, title, and interest in and to the Purchased Assets.

37.     The inventory currently consigned (including Christopher & Banks inventory, the "Consigned Inventory") by Restore to the Debtors will be deemed Purchased Assets subject to the current consignment arrangement and continue to be sold through the current channels and under the same economic terms as provided in the current consignment arrangement Restore has with the Debtors.  Restore and Buyer intend to sell through all of the Consigned Inventory by February 28, 2024 under the same economic terms as provided in the current consignment arrangement Restore has with the Debtors, and Buyer agrees to pay for any unsold Consigned Inventory at Restore's cost on that date (and may purchase it on those terms prior) in exchange for free and clear title and the unfettered right to sell or dispose of such unsigned Consigned Inventory thereafter.  Upon the disposition of the Consigned Inventory in full, including the purchase of unsold Consigned Inventory by Buyer, the current consignment arrangement shall terminate without further obligation or liability.  The Debtors shall have no further obligation or liability in respect of the Consigned Inventory or consignment arrangement as of the Closing.

38.     In addition, Hilco (and C&B NewCo, LLC, as applicable) shall enter into an interim license arrangement with Buyer as soon as practicable after the Closing, and terminating on February 28, 2024, that shall provide for a royalty of 5% payable on licensed products for using Christopher & Banks' intellectual property (other than the Consigned Inventory) that Buyer elects to buy or sell, and otherwise on similar terms as the prior licensing agreement.  As part of the license, Hilco (and C&B NewCo, LLC, as applicable) and Buyer will agree on reasonable minimum inventory purchases and minimum marketing levels.

39.     Notwithstanding anything to the contrary in this Sale Order, Sellers shall segregate cash proceeds in an amount equal to $1.25 million from the cash proceeds of the Sale Transaction (the "C&B Segregated Proceeds") pending a determination by the Court with respect to the interest, if any, that C&B Newco, LLC may hold with respect to such C&B Segregated Proceeds on the bases asserted by C&B Newco, LLC pursuant to the limited objection filed at [Docket No. 215], and the C&B Segregated Proceeds shall not be distributed by the Debtors absent written agreement of the Debtors, on the one hand, and C&B Newco, LLC, on the other hand (email being sufficient) or further order of the Court.  For the avoidance of doubt, all parties' rights are fully reserved.

40.     Notwithstanding anything to the contrary in this Sale Order, or any Notice related thereto, the New York Life Policies (as defined in the *Objection of New York Life Insurance Company to Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 163] (the "New York Life Objection")) shall be assumed and assigned to the Buyer as of the Closing as Purchased Contracts, and, in lieu of cure, all obligations due and payable under the New York Life Policies accruing prior to the Closing Date shall pass through to the Buyer and survive assumption and assignment, and nothing in this Sale Order or section 365 of the Bankruptcy Code shall affect such obligations. This fully resolves the New York Life Objection.

41.     Notwithstanding anything to the contrary in the Motion, the APA, any lists of Purchased Contracts or Designated Contracts to be assumed and assigned and/or any Cure Notices, this Order (other than the last sentence of this paragraph), or any documents relating to any of the foregoing, and subject to (a) the execution by the Buyer, the Chubb Companies and the Debtors of an assumption agreement (in a form and substance satisfactory to each of them,

the "Chubb Assumption Agreement") which the Debtors are hereby authorized to enter into and

(b) the satisfaction of the conditions precedent to effectiveness of the Chubb Assumption

Agreement, which, as provided in the Chubb Assumption Agreement, will occur upon (1) entry

of this Order, (2) assumption of the Chubb Insurance Contracts (defined below) for assignment

to the Buyer in accordance with the below, (3) occurrence of the Closing Date (as defined in the

APA), (4) execution of the Chubb Assumption Agreement by all parties, and (5) payment in full

by the Buyer of all liquidated sums currently due and owing to the Chubb Companies under the

Insurance Program:

    i.      effective as of the Closing Date, subject to and in accordance with the terms of the Chubb Assumption Agreement, the Debtors are authorized to and shall (a) assume, pursuant to 11 U.S.C. §§ 105 and 365, all insurance policies that have been issued to any of the Debtors or their predecessors by ACE American Insurance Company, Federal Insurance Company and/or any of their U.S.-based affiliates and subsidiaries (collectively, and together with any predecessors of any of the foregoing, the "Chubb Companies") and all agreements, documents or instruments relating thereto (collectively, the "Chubb Insurance Contracts"), provided the Chubb Insurance Contracts shall exclude all directors' and officers' liability insurance policies issued to any of the Debtors for any policy period (the "Retained Policies") and (b) assign the Chubb Insurance Contracts to the Buyer as Purchased Contracts;

    ii.     effective upon the assignment of Chubb Insurance Contracts, and in accordance with the terms of the Chubb Assumption Agreement, *inter alia*, (a) the Buyer shall assume and shall be liable for any and all obligations, liabilities, duties, terms, provisions, and covenants of any of the Debtors under the Chubb Insurance Contracts now existing or accruing after Closing owing to the Chubb Companies, including without limitation any and all such liabilities and obligations to pay or reimburse losses and expenses within the deductibles, provide collateral and/or security as required by the Chubb Companies, pay premiums to the Chubb Companies and pay service fees to any applicable third party claims administrators, each in accordance with the Chubb Insurance Contracts; provided, further, that, other than self-insured retentions, nothing in this paragraph shall be deemed to create a liability of the Buyer (and the Buyer shall not be liable) to pay (I) claims or other amounts directly to claimants with respect to claims covered by the Chubb Insurance Contracts where the date of loss precedes the Closing Date (or as to claims made policies, where the claim is made prior to the Closing Date) or (II) claims made solely by claimants against the Debtors where the date of loss is on or after the Closing Date (or as to claims made policies, where the claim is made after the Closing Date), but, for the avoidance of doubt, nothing shall relieve the Buyer from any obligations, monetary or nonmonetary, owing directly to the Chubb Companies, including any amounts within deductibles; (b) the rights and interests of the Debtors in the Chubb

Insurance Contracts shall be transferred and assigned to the Buyer, and all right, title and interest of the Debtors in the Chubb Insurance Contracts shall at the same time terminate; provided, however, that the Buyer shall only have coverage under the Chubb Insurance Contracts for claims against or by the Buyer where the date of loss is on or after the Closing Date (or as to claims made policies, for claims made after the Closing Date), and provided, further, that the Debtors shall remain insureds and entitled to the coverage, if any, to which they were entitled under the Chubb Insurance Contracts for claims against or by the Debtors where the date of loss precedes the Closing Date (or as to claims made policies, for claims made prior to the Closing Date), except that it is agreed that the right, if any, to any return premiums, loss payments, expense adjustments, return of paid loss deposit funds, and other benefits under the Chubb Insurance Contracts shall belong to Buyer, and not to the Original Insureds (as defined in the Chubb Assumption Agreement); (c) the Retained Policies shall constitute Excluded Assets; and (d) the Debtors shall remain jointly and severally liable for (and Buyer shall have no liability or obligation for) any and all now existing or hereafter arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under the Retained Policies, regardless of when such obligations arise, and without the need or requirement for the Chubb Companies to file a proof of claim, administrative claim or objection to any cure amount; and

iii.    except to the extent specifically addressed in this paragraph or in the Chubb Assumption Agreement (upon the occurrence of the Effective Date (as defined therein) in accordance with its terms), nothing shall amend, modify or otherwise alter the terms and conditions of the Chubb Insurance Contracts.

For the avoidance of doubt, nothing shall obligate any of the Chubb Companies, the Debtors or the Buyer to enter into the Chubb Assumption Agreement and, further, in the event the Chubb Assumption Agreement is not executed by August 18, 2023, none of the Chubb Insurance Contracts or any rights, proceeds, benefits, claims, rights to payments and/or recoveries thereunder shall be sold, assigned or otherwise transferred under this Order, and in such event, nothing shall impair the parties' rights to return to the Court for adjudication of whether the Chubb Insurance Contracts and rights and benefits thereunder may be assigned to Buyer per the terms of the APA and this Order as if this paragraph 41 did not exist (and it shall be deemed not to exist for all purposes of such adjudication).

42.    Prior to the Petition Date, and in accordance with that certain *Consignment Agreement*, dated September 28, 2022 (as amended from time to time, the "B.H. Multi

Consignment Agreement"), by and between B.H. Multi Com Corp. and B.H. Multi Color Corp. (together "B.H. Multi"), as consignors, and iMedia Brands, Inc., as consignee, B.H. Multi supplied iMedia Brands, Inc. with certain sample jewelry merchandise on a consignment basis (collectively, the "B.H. Multi Consigned Merchandise"). For the avoidance of doubt, the B.H. Multi Consignment Agreement and B.H. Multi Consigned Merchandise shall be deemed Excluded Assets, not Purchased Assets, Buyer shall have no obligation or liability in respect thereof, and B.H. Multi shall continue to maintain all right, title, and interest in the B.H. Multi Consigned Merchandise notwithstanding the terms of the APA and this Order.

43.    Notwithstanding any provision in the Sale Order or the APA: (a) the Synchrony Program Agreement will be a Purchased Contract under Section 2.05 of the APA and that no monetary cure amount is required to be paid; (b) the Synchrony Program Agreement will be deemed assumed by the Debtors and assigned to and performed by the Buyer as of the Closing Date (and will not thereafter be designated as an Excluded Contract); (c) no provision in the APA, the Sale Order, a Plan of Reorganization, or otherwise shall be deemed to amend, modify or otherwise affect the rights and obligations of the Buyer and Synchrony under the Synchrony Program Agreement; and (d) any amounts payable by Synchrony under the Synchrony Program Agreement after the Closing Date will be paid to the Buyer and not the Debtors.

44.    Notwithstanding any other provision of this Order or the APA, no contract or agreement between Oracle America, Inc. or its affiliates, inclusive of Wells Fargo via assignment (collectively, "Oracle") and the Debtors (the "Oracle Contracts") will become a Purchased Contract and be assumed, assigned and/or transferred to the Buyer unless Oracle has consented to such assignment or transfer in writing or the Court has so ordered.  From and after the Closing, until such time as the Oracle Contracts become Purchased Contracts or Excluded Contracts, the

Oracle Contracts shall be Designated Contracts.  All parties reserve all rights with respect to the Oracle Contracts and the assumption, assignment, or transfer thereof.

45.     Notwithstanding anything to the contrary contained in this Order, (i) the Buyer shall not acquire any interest in any goods manufactured by G-III Leather Fashions, Inc. (together with its affiliates, "G-III") for, or at the request of, iMedia Brands, Inc. or any other Debtor that have not been paid for in full (the "G-III Goods"); and (ii) the G-III Goods remain the property of G-III, are not property of the Debtors' estates and may be liquidated by G-III as and to the extent provided for in the agreements between G-III and any of the Debtors prior to the Petition Date.

46.     That certain lease agreement dated as of June 20, 2023, between Tanger Branson, LLC ("Tanger") and iMedia Brands, Inc., for Suite 304 at the Tanger Outlets in Branson, Missouri (the "Lease") shall be a Designated Contract.  If the Buyer directs the Debtors to designate the Lease as a Purchased Contract, the Debtors shall file a notice with the Court and serve such notice upon Tanger that sets forth the Debtors' proposed Cure Cost and adequate assurance for the proposed assignee of the Lease.  Tanger shall have seven (7) days following service of the notice to object to the Cure Cost and adequate assurance of any assignee for the Lease.  If the Debtors and Tanger agree upon the Cure Cost and adequate assurance, the Lease may be assumed and assigned without a hearing.  If the Debtors and Tanger do not agree upon the Cure Cost or adequate assurance, the Lease may not be assumed and assigned absent further order of the Court.

47.     Notwithstanding anything, including in this Order, the APA, or otherwise, all Purchased Third Party Claims and Purchased Actions shall constitute Purchased Assets and shall be immediately vested in the Buyer at Closing; *provided*, *however*, that Purchased Assets shall

not include any claims or causes of action (whether characterized as an Action or otherwise) solely (x) against shareholders of the Company, in each case solely in that capacity, (y) against current or former directors or officers of Sellers, in each case solely in that capacity, to the extent coverage for any such claim or cause of action is available under any and all of Sellers' current and prior director and officer liability insurance policies and all rights of any nature with respect thereto, but limited to the proceeds and recoveries from such insurance policies, *provided, further*, that such claims or causes of action are not against Transferred Employees, in which case those claims or causes of actions shall be considered Purchased Actions; *provided*, *further*, that the Excluded Individuals shall not be Transferred Employees.  The "Excluded Individuals" shall include those individuals identified pursuant to email correspondence from the Buyer to counsel to the Debtors and counsel to the Official Committee of Unsecured Creditors prior to the Sale Hearing.  Buyer hereby covenants and agrees that it shall not bring suit or otherwise assert any Purchased Third Party Claims or Purchased Actions to avoid preferential payments under Section 547(b) of the Bankruptcy Code or substantially similar state laws before any court, arbitrator, mediator, or administrative agency anywhere in the world.

48.     Notwithstanding any other provision of this Order or the APA, The Master Services Agreement between VXI Global Solutions ("VXI") and iMedia Brands, Inc. (the "VXI Contract") shall be a Designated Contract from and after the Closing until such time as the Debtors, Buyer, and VXI consent to the assignment of the VXI Contract to Buyer or the Court enters an order designating the VXI Contract a Purchased Contract; *provided* that if the VXI Contract has not become a Purchased Contract within 45 days of the entry of this Order (such period while the VXI Contract is a Designated Contract, the "VXI Designation Period"), VXI shall have the right to terminate the VXI Contract upon notice to the Court.  During the VXI

Designation Period, VXI will continue to provide services to the Debtors for the benefit of the Buyer in accordance with the Debtors and VXI's existing terms whereby VXI invoices the Debtors weekly for which payment is due within two weeks.  If the Buyer does not timely deliver payment, VXI may terminate the VXI Contract upon notice to the Court.  Notwithstanding the foregoing, the VXI Contract may be designated as an Excluded Contract at any time before VXI gives notice of termination pursuant to the terms of this Order.  For the avoidance of doubt, pursuant to section 2.02(*l*) of the APA, Buyer shall assume and therefore pay all administrative expenses arising under the VXI Contract while it is a Designated Contract in accordance with the terms set forth herein above.

49.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order and the APA.

Dated: August 15th, 2023
Wilmington, Delaware

_Ka B. O___._

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**