**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Legacy IMBDS, Inc., *et al.*,[1] | Case No. 23-10852 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 655** |

**NOTICE OF FILING OF EXHIBIT A TO COMBINED JOINT CHAPTER
11 PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT OF
LEGACY IMBDS, INC., AND ITS DEBTOR AFFILIATES**

**PLEASE TAKE NOTICE** that attached hereto is <u>Exhibit A</u> to the *Combined Joint Chapter 11 Plan of Liquidation and Disclosure Statement of Legacy IMBDS, Inc., and its Debtor Affiliates* [Docket No. 655] (the "<u>Combined Plan</u>").

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are:  ValueVision Media Acquisitions, Inc. (8670); Legacy IMBDS, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642).  The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

Dated:  October 31, 2023
      Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
E-mail:  ljones@pszjlaw.com
        tcairns@pszjlaw.com

-and-

**ROPES & GRAY LLP**
Ryan Preston Dahl (admitted *pro hac vice*)
Cristine Pirro Schwarzman (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
E-mail:  ryan.dahl@ropesgray.com
        cristine.schwarzman@ropesgray.com

-and-

**ROPES & GRAY LLP**
Stephen L. Iacovo (admitted *pro hac vice*)
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (212) 845-5500
E-mail:  stephen.iacovo@ropesgray.com

*Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A TO COMBINED PLAN

**Liquidation Analysis**

**LIQUIDATION ANALYSIS**

## A.  Introduction

The Debtors, together with their advisors, have prepared the accompanying hypothetical Liquidation Analysis in connection with the *Combined Joint Chapter 11 Plan of Liquidation and Disclosure Statement of Legacy IMBDS, Inc., and its Debtor Affiliates* (the disclosure statement portion hereof, the "Disclosure Statement" and the chapter 11 plan portion hereof, the "Plan," each as may be modified and/or amended from time to time, and collectively, the "Combined Plan and Disclosure Statement") for purposes of evaluating whether the Plan meets the "best interests test" under Bankruptcy Code section 1129(a)(7).[1] That section requires that each holder of a claim or interest will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is at least as much as the value the holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

## B.  Limitations and Key Assumptions

The Debtors prepared the illustrative Liquidation Analysis with their Chief Transformation Officer ("CTO"), his team from Huron Consulting Services LLC ("Huron"), and other advisors. The Liquidation Analysis contains numerous estimates, including Claims, based upon reviewing the Debtors' financial statements to account for estimated liabilities as necessary.  The Liquidation Analysis does not contemplate a sale of the Debtors' businesses on a going concern basis.  The Liquidation Analysis includes estimates for Claims as part of the Chapter 11 Cases, which could be asserted and allowed in a Chapter 7 liquidation, including unpaid Administrative Claims from the Chapter 11 Cases and Chapter 7 administrative claims such as Chapter 7 trustee fees.  The Debtors' estimate of Allowed Claims outlined in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and interests under the Plan.

The Plan contemplates the liquidation of the Debtors' remaining assets as substantially as the estimates of the results of the transactions contemplated by the Plan.  As detailed in the Liquidation Analysis, the Debtors believe that in a Chapter 7 liquidation, there would be additional costs and expenses, which costs and expenses would not otherwise be incurred in implementing the Plan and administering a Liquidating Trust.

**Such costs include the compensation of a Chapter 7 trustee and the costs of counsel and other professionals to be retained by the trustee.**  The Debtors believe such amounts may exceed the expenses that would be incurred in implementing the Plan and winding up the affairs of the Debtors in Chapter 11. The Estates would also be obligated to pay all unpaid expenses incurred by the Debtors during the Chapter 11 Cases (such as compensation for professionals) allowed in the Debtors' Chapter 7 cases.  Additionally, the Estates would suffer additional delays and potentially additional costs, as a Chapter 7 trustee and their new professionals would be faced with a "learning curve" to familiarize with the Debtors' cases and complete the administration of the Estates (including the prosecution of the applicable Causes of Action).

---

[1]   All capitalized terms not defined herein shall have the meanings ascribed to them in the Combined Plan and Disclosure Statement.

**THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS OUTLINED IN THE LIQUIDATION ANALYSIS.**

The determination of the hypothetical proceeds from the liquidation of assets is a highly uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors, the CTO team and their advisors, are inherently subject to significant business, economic, and competitive uncertainties, and contingencies beyond the control of the Debtors and their management team. Accordingly, there can be no guarantees that the values assumed in the Liquidation Analysis would be realized if the remaining assets of the Debtors were liquidated as outlined in the provided illustrative analysis. In addition, should any liquidation take place in the future, circumstances may exist which cannot presently be predicted. The Liquidation Analysis should be read in conjunction with the Combined Plan and Disclosure Statement in its entirety, as well as the notes and assumptions set forth below.

The Debtors recognize that there are other potential alternatives that could occur in a hypothetical Chapter 7 liquidation not presented in the Liquidation Analysis, including alternatives that would give rise to reduced and delayed creditor recoveries.

**THE DEBTORS RESERVE THEIR RIGHT TO SUPPLEMENT, MODIFY, OR ADJUST ANY PART OF THE ILLUSTRATIVE LIQUIDATION ANALYSIS, INCLUDING A CHANGE OF THE UNDERLYING ASSUMPTIONS AND ANALYSIS SET FORTH HEREIN.**

### C. Basis of Presentation

The Liquidation Analysis represents an estimated recovery for all creditors of the Debtors based upon a hypothetical liquidation of the Debtors' assets under a Chapter 7 scenario. The analysis assumes an orderly liquidation of substantially all the Debtors' remaining assets beginning December 9, 2023 (the "Conversion Date"). The Liquidation Analysis is premised on the assumption that the Chapter 11 Cases convert to cases under Chapter 7 on the Conversion Date and that the Chapter 7 trustee ("Trustee") continues to implement the same wind-down plan that the Debtors continued during the Chapter 11 Cases. Further, the Debtors assume that the proposed funding amount of $1,500,000 to the Liquidating Trust under the Plan will be unavailable for distribution to unsecured creditors in a Chapter 7 case. In the Chapter 11 scenario, under the Plan, the Debtors have provided for the creation of the Liquidation Trust, funded with $1,500,000 and other assets, including Causes of Action, to provide recoveries to the Debtors' general unsecured creditors, which assets will be transferred to the Liquidating Trust and which could subsequently yield a higher recovery for unsecured creditors, but which estimated value is unknown at this time.

The Debtors assume a liquidation would be conducted pursuant to Chapter 7 of the Bankruptcy Code, with a Trustee appointed to manage the bankruptcy estates. The Trustee would be responsible for liquidating the Debtors' remaining assets in a manner intended to maximize the recovery to creditors. Asset collection, monetization, and sale proceeds resulting from the liquidation process would be reduced by the expenses of the liquidation process prior to distributing such proceeds, if any, to any holders of allowed claims. The major components of the process are as follows:

- Costs related to the liquidation process, such as estate wind-down costs, priority and administrative claims, and Trustee and professional fees; and

- Distribution of net proceeds generated from retained causes of action in accordance with the priority scheme under Chapter 7 of the Bankruptcy Code.

If litigation becomes necessary to resolve claims asserted in Chapter 7, distributions to creditors may be further delayed, which both decreases the present value of those distributions and increases administrative expenses that could diminish the liquidation proceeds available to creditors. The effects of this potential delay on the value of distributions under the Liquidation Analysis have not been considered in this analysis.

Except as otherwise noted herein, the Liquidation Analysis is based on the projected balance sheets of the Debtors as of the Conversion Date. Several asset values were adjusted on a pro forma basis to the Conversion Date. For certain other assets, historical balance sheet amounts, unless otherwise noted herein, are intended to be a proxy for actual balances on the Conversion Date.

## D.  Notes to the Liquidation Analysis

i.   **Dependence on Assumptions.**   The Liquidation Analysis is based on several estimates and assumptions that are inherently subject to significant economic, business, regulatory, and competitive uncertainties and contingencies beyond the control of the Debtors. Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtors were to undergo such liquidation, and actual results could vary materially and adversely from those contained herein.

ii.   **Litigation Claims.** The Liquidation Analysis does not attribute any value to potential litigation claims that may belong to the Debtors' Estates, including any claims to recover potentially avoidable preferential and/or fraudulent transfers.

iii.   **Chapter 7 Liquidation Costs.** It is assumed that three months would be required to complete the liquidation of the Debtors' Estates, not accounting for any pursuit of causes of actions by the Liquidating Trustee. The fees and operating expenses to be incurred during the Chapter 7 process are included in the estimate of Chapter 7, Administrative Claims and Trustee Expenses. In addition, there are liquidation costs associated with most of the Debtors' assets. Costs of liquidation are displayed as a reduction to gross liquidation proceeds.

iv.   **Claim Estimates.** Claims are estimated as of the Conversion Date based on management and its advisors' current projections. As of the filing of this analysis, the Debtors cannot fully evaluate the potential claims that may be filed against the Debtors' Estates and adjudicated before the Bankruptcy Court. Accordingly, the final Allowed Claims against the Debtors' Estates may differ from the claim's amounts used in this Liquidation Analysis.

## E.  Detailed and Specific Assumptions to the Liquidation Analysis

1.  Cash & Cash Equivalents. The Debtors estimate 100% realization on projected unrestricted cash and cash equivalents as of the Conversion Date.

2.  Retained Causes of Action.  In accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Debtors' rights to

3

commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan.

3.  Secured Claims Reserve. There are no secured claims.

4.  Priority Claims Reserve. The Plan provides for a priority reserve fund to be established by the Liquidating Trustee in an amount determined by the Liquidating Trustee, to satisfy all priority claims in accordance with the Plan.

5.  Professional Fee Escrow. As soon as is reasonably practicable after the Confirmation Date and as a condition precedent to the Effective Date, the Debtors shall establish (if not previously established) and fund the Professional Fee Escrow Account with Cash such that the aggregate amount of Cash in the Professional Fee Escrow Account on the Effective Date equals the Professional Fee Escrow Amount.

6.  Liquidating Trust Cash Funding.  The Liquidating Trust to be established under the Plan to implement the Plan and Liquidating Trust Agreement, will be initially funded with $1,500,000.

7.  Excess Cash and Cash Equivalents.  Cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America

8.  Retained Causes of Action.  In accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan.

9.  Estate Wind-down Costs & Professional Fees. Estate wind-down costs and professional fees reflect the estimated cost and fees to achieve the recoveries on the Debtors' assets, such as personnel, professional fees, and other operational costs.  The Debtors believe that the overall professional/personnel fees and costs in the Chapter 11 scenario would be lower than those in a Chapter 7. The professional fees include the estimated fees and costs the Chapter 7 trustee's professionals would incur to accelerate becoming familiar and informed about the Debtors' circumstances and assets.  Under either the Chapter 11 or Chapter 7 scenario, further action in the case (by the Liquidating Trustee under the Plan or the Chapter 7 trustee in the Chapter 7 case) is dependent on the initial funding of expenses to the extent required for the case to be properly administered (more specifically, in the Chapter 11, to the extent required for the Plan to become effective and for the Liquidating Trustee to administer and implement the Plan and Liquidating Trust Agreement).

10. Chapter 7 Trustee Fees. The Liquidation Analysis assumes that the Trustee would be compensated in accordance with the guidelines of Bankruptcy Code section 326.

11. Administrative Claims. All known administrative claims are expected to be satisfied in accordance with the terms of the Plan before the anticipated effective date.  The Post-Effective Date Debtors or the Liquidating Trust (as applicable) shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash Pro Rata to such Professionals, including from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court; provided, to the extent any such Professional has already been paid a greater Pro Rata amount of its Allowed Professional Fee Claims compared to the Pro Rata amount paid to all Professionals on account of all Allowed Professional Fee Claims, such Professional shall defer payment of any further amounts until all Professionals have been paid an equivalent Pro Rata amount of their respective Allowed Professional Fee Claims; provided, further, following the exhaustion of the amounts in the Professional Fee Escrow Account, each Professional shall defer payment of any further unpaid Allowed Professional Fee Claims until the Liquidating Trust has made $750,000 in distributions to the Beneficiaries of the Liquidating Trust (the "Distribution Trigger Event"); provided, further, that following the Distribution Trigger Event, all subsequent distributions from the Liquidating Trust shall be paid Pro Rata to the Professionals until all Allowed Professional Fee Claims have been paid in full in Cash; provided, further, that, to the extent (i) the Distribution Trigger Event does not occur or (ii) following liquidation of the Liquidating Trust Assets, there are not sufficient funds to pay all Allowed Professional Fee Claims, all then-outstanding and unpaid Allowed Professional Fee Claims shall be waived in full.

12. Priority Unsecured Tax Claims. The Debtors believe all priority unsecured tax claims will  not exceed approximately $648,000, and that all such allowed claims would be fully satisfied by the amounts reserved pursuant to the Plan and paragraph 3 of the *Final Order (I) Authorizing Debtors to Pay Certain Prepetition Taxes and Fees and (II) Granting Related Relief* [Docket No. 283]

13. Priority Unsecured Non-Tax Claims.  The Debtors are aware of a potential unsecured priority claim consisting of a claim for wages outstanding at the time of filing. However, additional items may be identified and allowed by the Bankruptcy Court.

14. General Unsecured Claims. The estimated amounts are based upon pre-petition accounts payable and accrued expenses.  No specific value has been assessed for any potential lease or contract rejection claims, or litigation claims.

**Legacy IMBDS, Inc.**                                                                                          **DRAFT - Confidential; Subject to Material Revision**
Illustrative Liquidation Analysis

| ($ in 000s) | Notes | Estimated as of 12/9/23 | Liquidating Chapter 7 Potential Recovery (%) | Liquidating Chapter 11 Potential Recovery (%) | Liquidating Chapter 7 Potential Recovery ($) | Liquidating Chapter 11 Potential Recovery ($) |
|---|---|---|---|---|---|---|
| Cash and cash equivalents | [1] | 6,747 | 100.0% | 100.0% | $ 6,747 | $ 6,747 |
| Retained Causes of Action | [2] | TBD | N/A | N/A | TBD | TBD |
| **Total Estate Assets** | | **6,747** | **100.0%** | **100.0%** | **$ 6,747** | **$ 6,747** |
| | | | | | | |
| Secured Claims Reserve | [3] | - | N/A | 100.0% | - | - |
| Priority Claims Reserve | [4] | 663 | N/A | 100.0% | - | 663 |
| Professional Fee Escrow | [5] | 2,776 | N/A | 100.0% | - | 2,776 |
| Liquidating Trust Cash Funding | [6] | 1,500 | N/A | 100.0% | - | 1,500 |
| Excess cash and cash equivalents | [7] | 1,808 | 100.0% | 100.0% | 6,747 | 1,808 |
| Retained Causes of Action | [8] | TBD | N/A | N/A | TBD | TBD |
| **Total Assets Available for Creditors** | | **$ 6,747** | | | **$ 6,747** | **$ 6,747** |
| | | | | | | |
| Estate Wind-down Costs, Professional Fees, US Trustee Fees | [9] | | | | (1,750) | (1,500) |
| Chapter 7 Trustee Fees | [10] | | | | (168) | - |
| **Total Costs** | | | | | **$ (1,918)** | **$ (1,500)** |
| **Net Proceeds Available for Creditors** | | | | | **$ 4,829** | **$ 5,247** |

| | | Claims Estimate | | Chapter 7 Recovery | Chapter 11 Recovery |
|---|---|---|---|---|---|
| | | Chapter 7 | Chapter 11 | Estimate ($) | Estimate ($) |
| **Estimated Claims** | | | | | |
| | | | | | |
| **Proceeds Available for Administrative & Priority Claims** | | | | **$ 4,829** | **$ 5,247** |
| | | | | | |
| Administrative Claims | [11] | $ 6,379 | $ 4,084 | $ 4,181 | $ 4,084 |
| Priority Unsecured Tax Claims | [12] | 648 | 648 | 648 | 648 |
| Priority Unsecured Non-Tax Claims | [13] | 15 | 15 | - | 15 |
| **Total Administrative & Priority Claims** | | **$ 7,041** | **$ 4,747** | **$ 4,829** | **$ 4,747** |
| ***Estimated Administrative & Priority Claims Recovery*** | | | | ***68.6%*** | ***100.0%*** |
| | | | | | |
| **Proceeds Available for General Unsecured Claims** | | | | **-** | **500** |
| | | | | | |
| **General Unsecured Creditor Claims** | [14] | **241,322** | **241,322** | **$ -** | **$ 500** |
| ***Estimated General Unsecured Creditor Claims Recovery*** | | | | ***0.0%*** | ***0.2%*** |