**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Legacy IMBDS, Inc., *et al.*,[1] | Case No. 23-10852 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 635** |

**DEBTORS' LIMITED OBJECTION TO**
**REQUEST FOR PAYMENT OF ADMINISTRATIVE**
**EXPENSE OF WRNN-TV ASSOCIATES LIMITED PARTNERSHIP**

Legacy IMBDS, Inc. (f/k/a iMedia Brands, Inc.) and the above-captioned debtors and debtors in possession in these chapter 11 cases (collectively, the "Debtors"), hereby file this limited objection to the *Request for Payment of Administrative Expense of WRNN-TV Associates Limited Partnership* [Docket No. 635] (the "Motion").[2] In support of this limited objection, the Debtors respectfully state as follows:

**LIMITED OBJECTION**

**I.  THE AUGUST AMOUNT IS AN ASSUMED LIABILITY ASSUMED BY BUYER UNDER SECTION 2.02 OF THE APA**

1.  The Debtors have not paid WRNN-TV Associates Limited Partnership ("RNN") the amount requested in the Motion (the "August Amount") because the August Amount is an Assumed Liability to be paid by IV Media, LLC pursuant to section 2.02(q) of that certain Asset

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: ValueVision Media Acquisitions, Inc. (8670); Legacy IMBDS, Inc. (3770); ValueVision Interactive, Inc. (8730); Portal Acquisition Company (3403); VVI Fulfillment Center, Inc. (5552); ValueVision Retail Inc. (2155); JWH Acquisition Company (3109); PW Acquisition Company, LLC (0154); EP Properties, LLC (3951); FL Acquisition Company (3026); Norwell Television, LLC (6011); and 867 Grand Avenue, LLC (2642). The Debtors' service address is 6740 Shady Oak Road, Eden Prairie, MN 55344-3433.

[2]  The Debtors' deadline to object to the Motion was extended to November 16, 2023 at 11:59 p.m. (prevailing Eastern Time) by agreement from counsel to RNN (as defined herein).

and Equity Purchase Agreement, dated as of August 15, 2023, by and between certain of the Debtors, IV Media, LLC (the "Buyer"), and Innovation Ventures, LLC (the "APA"),[3] which was approved by and attached as Exhibit 1 to the *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities; (II) Approving the Debtors' Entry Into the Asset Purchase Agreement; (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Docket No. 461] (the "Sale Order").

2.     Under the APA, Buyer assumed payment obligations for a specific universe of Assumed Liabilities set forth at section 2.02, with all other Liabilities of the Debtors being Excluded Liabilities under section 2.04. *Compare* APA, § 2.02 (". . . Buyer agrees, effective at the time of the Closing, ***to assume only the following Liabilities of Sellers*** . . ..") (emphasis added), *with* APA, § 2.04 ("Notwithstanding any provision in this Agreement to the contrary, ***except solely for the Assumed Liabilities,*** Buyer shall not assume, be required to pay, perform or discharge, or be liable for any Liabilities of any Seller . . . and Sellers shall retain and be responsible for all Liabilities of a Seller ***other than solely the Assumed Liabilities***.") (emphasis added). Contractual language "is to be given its plain and ordinary meaning" when interpreting a clear and unambiguous contract. *Welded Constr., L.P. v. Prime NDT Servs. (In re Welded Constr., L.P.)*, 605 B.R. 35, 40 (Bankr. D. Del. 2019) ("[I]f the contract is unambiguous, the plain meaning carries."); *In re Filene's Basement, LLC*, 621 B.R. 94, 99 (Bankr. D. Del. 2020) ("When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions.") (quoting *Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846-47 (Del. 2019))). That Assumed Liabilities are a narrowly defined specific set

---

[3]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the APA.

of Liabilities of the Sellers and Excluded Liabilities are all other Liabilities of the Sellers is clear and unambiguous.

3. The specific Assumed Liabilities in section 2.02 of the APA include "subject to the Accrued Liabilities Cap, *payment of Liabilities for general and administrative expenses incurred in the Ordinary Course of Business arising after the Petition Date through the Closing Date and remaining unpaid as of the Closing Date*." APA, § 2.02(q) (emphasis added). To the extent RNN has a general or administrative expense that was (i) incurred in the Ordinary Course of Business (which the Debtors do not dispute) and (ii) that arose after the Petition Date through the Closing Date and remained unpaid as of the Closing Date (which the August Amount did), such administrative expense is an Assumed Liability of Buyer, subject only to the $8 million Accrued Liabilities Cap that governs the total amount of Liabilities that may be assumed by Buyer under sections 2.02(m)–(q) of the APA.

4. Section 2.02(q) is a fundamental provision of the APA. Prior to the Closing Date the Debtors were operating their business in their business judgment to maximize and preserve the value of their estates in conjunction with their ongoing sale process. The funding for that process was tied in large part to the funding available from RNN under the Original RNN APA,[4] including RNN's undertaking to satisfy accrued administrative claims. If a purchaser, or prospective purchaser (such as Buyer), of the Debtors' assets thereafter wanted to exclude certain contracts or agreements going forward from the Debtors' business, the Debtors still needed to be able to honor already accrued administrative obligations and, upon notice of such exclusion, be given the opportunity to terminate or reject any existing contracts or agreements to avoid incurring any

---

[4] "Original RNN APA" means that certain asset and equity purchase agreement between RNN and Sellers attached as <u>Exhibit B</u> to the Debtors' motion to approve sale of substantially all of their assets [Docket No. 93].

3

further administrative expenses.  Hence the Debtors negotiated for, and obtained, the Buyer's undertaking to satisfy those obligations as provided by section 2.02(q)—including with respect to the obligations now in dispute.

## II. THE AUGUST AMOUNT IS NOT AN EXCLUDED LIABILITY UNDER SECTION 2.04 OF THE APA

5. An obligation assumed by the Buyer per section 2.02(q) cannot be an "Excluded Liability." Section 2.04(c) of the APA provides ". . . Sellers shall retain and be responsible for all Liabilities of a Seller *other than solely the Assumed Liabilities*, including the following . . . all Liabilities arising under any Excluded Contract." APA, § 2.04(c) (emphasis added).  While section 2.04(c) of the APA's reference to "all Liabilities arising under any Excluded Contract . . ." suggests that Buyer may not be assuming *any* Liabilities related to Excluded Contracts (which include the Affiliation Agreement (as defined in the Motion)), section 2.04(c) of the APA is qualified by the introductory clause to section 2.04 of the APA, which clearly provides that section 2.04(c)'s Excluded Liabilities is itself qualified by and subject to the specific and limited list of Assumed Liabilities identified in section 2.02 of the APA ("Notwithstanding any provision in this Agreement to the contrary, *except solely for the Assumed Liabilities*, Buyer shall not assume, be required to pay, perform or discharge, or be liable for any Liabilities of any Seller . . . ."). APA § 2.04 (emphasis added).

6. Without regard to whether the Affiliation Agreement is listed as an Excluded Contract on the disclosure schedules, "payment of Liabilities for general and administrative expenses incurred in the Ordinary Course of Business arising after the Petition Date through the Closing Date and remaining unpaid as of the Closing Date" are Assumed Liabilities of the Buyer. *See* APA § 2.02(q).  Any reading of these provisions to the contrary is not supported by the clear and unambiguous terms of the APA.  And, even if these two provisions could be read to be in

conflict with each other, which they are not, when there are conflicting provisions in an agreement, "[s]pecific language in a contract controls over general language. . ." *DCV Holdings, Inc. v. ConAgra*, 889 A.2d 954, 961 (Del. 2005). In this case, the specific language is the specific list of Assumed Liabilities enumerated in section 2.02 of the APA, which controls over the general language of section 2.04 of the APA that provides that all Liabilities (other than the specific Assumed Liabilities) are Excluded Liabilities.

### III. THE AUGUST AMOUNT IS NOT AN EXCLUDED LIABILITY ARISING FROM THE AFFILIATION AGREEMENT

7. Even if the APA is read to provide that a liability excluded per section 2.04(c) somehow overrides the Buyer's obligations under section 2.02(q), the Buyer's argument still fails on the facts here. That is, the Buyer's argument that the August Amount is an "Excluded Liability" is itself based on a fundamental misreading of the facts. Namely, Buyer contends that that August Amount is an obligation due and owing under the Affiliation Agreement, and therefore, constitutes an Excluded Liability. To quote the Buyer: "As the August Amount is a Liability arising under the Excluded Affiliation Agreement, [Buyer] is not liable for payment thereof pursuant to the APA." *See* Limited Objection of IV Media, LLC to Motion, ¶ 11 [Docket No. 712].

8. The Buyer is simply wrong in this regard. The August Amount does not arise from the Affiliation Agreement. Rather, the August Amount arises from an ongoing ordinary course of dealing between the Debtors and RNN. Specifically, the Affiliation Agreement was terminated on May 10, 2023. *See* Termination Notice.[5] The Debtors' subsequent obligations to RNN, in turn, arose from the course of dealing between the Debtors and RNN. *See* May 12 Letter[6] ("iMedia

---

[5]  "Termination Notice" means the *Notice of Termination* dated May 10, 2023, attached to the Motion as <u>Annex A</u> to <u>Exhibit A</u>.

[6]  "May 12 Letter" means the letter from iMedia to RNN dated May 12, 2023, attached to the Motion as <u>Annex B</u> to <u>Exhibit A</u>.

5

agrees and acknowledges that RNN's allowing iMedia programming to be broadcast on the Stations (and iMedia's programing of the Stations) shall not constitute or be interpreted as a reinstatement or extension of the Affiliation Agreement, the Term or the any of the rights of iMedia under the Affiliation Agreement, and RNN may terminate the carriage of iMedia's programming on any or all of the Stations at any time at RNN's sole discretion without notice, liability or obligation to iMedia."). Accordingly, the August Amount did not arise under an Excluded Contract and simply cannot be an Excluded Liability by virtue of section 2.04(c) of the APA. Rather, the August Amount is no more, and no less, than a general administrative obligation that falls squarely within section 2.02(q). Put another way, the Affiliation Agreement is simply irrelevant to the analysis here.

### IV. A PLAIN READING OF THE APA AS A WHOLE DEMONSTRATES THE AUGUST AMOUNT IS AN ASSUMED LIABILITY

9. The assumption of up to $8 million of administrative expenses arising from the Petition Date to the Closing Date by the Buyer is the only logical interpretation of the APA's terms as a whole. "When interpreting contracts, we construe them as a whole and give effect to every provision if it is reasonably possible." *Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 360 (Del. 2013). During the period from the Petition Date through the Closing Date, RNN was one of many creditors providing services to the Debtors that were necessary for the preservation of the assets that made up the Debtors' estates—which benefitted not only the Debtors' estates, including, in the form of incremental revenues generated from sales to RNN's broadcast subscribers, but also the Buyer when the Buyer purchased substantially all of the Debtors' assets. Additionally of note, the assets that Buyer purchased included all of the Sellers' Cash and Cash Equivalents *other than* specifically Excluded Cash of $3 million and a Purchase Price Reserve of at least $5 million, which amounts were to be used to fund "the costs of administering the Seller's chapter 11 estates and,

thereafter, to make one or more distributions on account of prepetition claims allowed against the Sellers' estates in order of priority fixed by the Bankruptcy Code." *See* APA, § 2.01(l), § 5.01(d). When sections 2.01, 2.02(m)–(q), and 5.01(d) of the APA are read together, it is clear that the parties to the APA intended that (a) Buyer would purchase substantially all of the Sellers' assets, (b) the remaining cash left behind was intended to administer the chapter 11 estates and make distribution on account of allowed *prepetition* claims, and (c) in exchange for purchasing substantially all of the Sellers' assets, Buyer would be required to pay certain administrative expenses (up to $8 million—an amount calculated by the Debtors to cover all anticipated accrued administrative expenses as of the Closing) that accrued during the chapter 11 cases but had not yet been paid, including the August Amount.  This is important because, without such agreement from Buyer, the Debtors would not have sufficient assets remaining behind to both pay accrued administrative expenses as well as the costs associated with administering or otherwise winding down the Debtors' chapter 11 cases and making distributions to general unsecured creditors. Buyer's suggestion to the contrary—that Excluded Liabilities can include Liabilities that are otherwise included in the enumerated list of Assumed Liabilities—is not only wrong on its face, but contrary to the terms of the APA as a whole.

10.     This construct—that Buyer assumed Liabilities with respect to certain general and administrative expenses that accrued during the chapter 11 cases prior to Closing—also applies to the treatment of Liabilities arising under Designated Contracts, contrary to the Buyer's interpretation of section 2.02(l) of the APA.  Specifically, section 2.02(l) of the APA provides that "during the Designation Rights Period, all administrative expenses arising under Designated Contracts until such time as they become an Excluded Asset or a Purchased Contract . . ." are Assumed Liabilities.  APA, § 2.02(l).  That this provision of section 2.02 of the APA is limited to

the Designation Rights Period does *not* somehow limit the effectiveness of sections 2.02(m)–(q), which provide that Buyer *also* assumed Liabilities that accrued during the period between the Petition Date and Closing.  These provisions are subject to an $8 million cap in the aggregate, which gave the Buyer protection that Buyer would not be responsible for payment of accrued Liabilities beyond an amount forecasted by the Debtors and agreed to by Buyer.  But these provisions otherwise provide that Buyer would assume liabilities for administrative expenses accrued during the period between the Petition Date and Closing.  Section 2.02(q) does not distinguish between Excluded Contracts or Designated Contracts, and thus accrued administrative expenses arising between the Petition Date and Closing, whether under Excluded Contracts, Designated Contracts, or otherwise are Assumed Liabilities of the Buyer.

11. Accordingly, the APA is clear that (a) Buyer agreed to assume certain specifically enumerated Assumed Liabilities, (b) Liabilities for general and administrative expenses of the Sellers incurred in the Ordinary Course of Business arising after the Petition Date through the Closing Date and remaining unpaid as of the Closing Date are specifically Assumed Liabilities that Buyer must pay (subject only to an Accrued Liabilities Cap of $8 million), (c) the August Amount is not an Excluded Liability under section 2.04(c) of the APA because it did not arise under an Excluded Contract, and (d) even if the August Amount did arise under an Excluded Contract, such general and administrative expenses are not limited by (i) any identified Excluded Liabilities within the general universe of Excluded Liabilities that are, in reality, all Liabilities of the Sellers *other than* the Assumed Liabilities or (ii) other specifically identified Assumed Liabilities found elsewhere in section 2.02 of the APA.  Therefore, to the extent Sellers have incurred general and administrative expenses between the Petition Date and the Closing Date that remained unpaid as of Closing payable to RNN (or any other creditor for that matter), which the

Debtors do not dispute, it is clear that such expenses are payable by Buyer up until the Buyer has paid $8 million in the aggregate for such Assumed Liabilities identified in sections 2.02(m)–(q).

## CONCLUSION

12. For the reasons set forth herein, the Debtors object to the relief requested in the Motion to the extent the proposed order provides that the Debtors shall have the primary obligation to pay the August Amount to RNN and respectfully request that any order entered by the Court with respect to the Motion provide that Buyer shall promptly pay the August Amount to RNN in full.

Dated: November 16, 2023
       Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
Email: ljones@pszjlaw.com
      tcairns@pszjlaw.com

-and-

**ROPES & GRAY LLP**
Ryan Preston Dahl (admitted *pro hac vice*)
Stephen L. Iacovo (admitted *pro hac vice*)
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
E-mail: ryan.dahl@ropesgray.com
      stephen.iacovo@ropesgray.com

*Counsel to the Debtors and Debtors in Possession*