**Exhibit 1**

**Settlement Agreement**

# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Settlement Agreement") is made and entered into as of January 31, 2024, by and between Legacy IMBDS, Inc. ("Legacy") and its affiliated debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") in the chapter 11 cases (the "Bankruptcy Cases") currently pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (Case No. 23-10852 (KBO)), Synacor, Inc., a Delaware corporation ("Synacor"), and IV Media, LLC, a Michigan limited liability company ("IV Media"). The parties to this Settlement Agreement are sometimes referred to herein individually as a "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS**, certain of the Debtors entered into that certain Asset Purchase Agreement By and Among iMedia Brands, Inc., Portal Acquisition Company, and Synacor, Inc., dated as of July 30, 2021 (the "Synacor APA"), pursuant to which Portal Acquisition Company ("Portal") purchased Synacor's portals and advertising business (the "Portals and Advertising Business") for consideration totaling approximately $30.0 million (the "Closing Purchase Price") in addition to assumption of certain liabilities;

**WHEREAS**, the Closing Purchase Price consisted of (i) a $20.0 million cash payment to Synacor, and (ii) a $10.0 million promissory note dated July 30, 2021, payable by Portal to Synacor (the "Synacor Seller Note") and guaranteed by Legacy;

**WHEREAS**, the obligations under the Synacor Seller Note are secured by a lien on substantially all of Portal's assets (the "Synacor Prepetition Collateral") in favor of Synacor;

**WHEREAS**, as part of the Synacor APA and sale of the Portals and Advertising Business to Portal, on April 21, 2023, Synacor and Legacy entered into a Services Agreement (the "Services Agreement") whereby Legacy agreed to provide certain "Services" as defined therein (together, with portal, advertising, search and related services performed for customers set forth on **Exhibit A** to this Settlement Agreement, the "Services");

**WHEREAS**, on June 28, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code") in the Bankruptcy Court;

**WHEREAS**, as of the Petition Date, approximately $4.1 million in aggregate principal amount and accrued but unpaid interest was outstanding under the Synacor Seller Note;

**WHEREAS**, on July 3, 2023, the Debtors filed their motion to approve, among other things, postpetition debtor in possession financing [Docket No. 88] (the "DIP Motion");

**WHEREAS**, on July 3, 2023, the Debtors filed their motion [Docket No. 93] (the "Sale Motion") to approve, among other things, the sale of substantially all of the Debtors' assets (the "Assets"), which Assets expressly excluded any assets owned by Portal, pursuant to section 363 of the Bankruptcy Code;

**WHEREAS**, on August 10, 2023, the Debtors held an auction (the "Auction") at the offices of Ropes & Gray LLP, 1211 6th Avenue, New York, NY 10036 for the sale of the Assets;

**WHEREAS**, as a result of the Auction, IV Media was named by the Debtors as the winning bidder to purchase the assets pursuant to the terms of that certain Asset and Equity Purchase Agreement, dated as of August 14, 2023, by and among IV Media, as the buyer, and the Debtors party thereto (as amended or otherwise modified from time to time, the "IV Media APA") [Docket No. 461-1];

**WHEREAS**, on August 15, 2023, the Bankruptcy Court entered an order [Docket No. 461] (the "Sale Order") approving (i) the Sale Motion and the relief requested therein, including the free and clear sale (the "Sale") of the Assets to IV Media (except for certain encumbrances and liabilities specifically enumerated in the iMedia APA) and (ii) the Debtors' entry into the IV Media APA;

**WHEREAS**, on August 15, 2023, the Bankruptcy Court entered an order [Docket No. 454] (the "Final DIP Order") approving the DIP Motion on a final basis;

**WHEREAS**, the Final DIP Order required, among other things, the Debtors to segregate the proceeds received by the Debtors on account of customer receipts generated by Portal up to an aggregate amount of $40,000 per week to be used by Portal in the ordinary course of business (the "Synacor Adequate Protection Proceeds");

**WHEREAS**, a dispute has arisen among Synacor, the Debtors, and IV Media concerning the entitlement to payments associated with the Services;

**WHEREAS**, on October 13, 2023, IV Media filed a request for allowance and payment of an administrative expense claim [Docket No. 608] (the "IV Media Claim") against the Debtors for payment of costs associated with certain Agreements (as defined in the IV Media Claim) and any potential claims associated with certain Disputed Assets (as defined in the IV Media Claim);

**WHEREAS**, following closing of the Sale, IV Media received and may continue to receive revenue from the Agreements;

**WHEREAS**, on November 1, 2023, Synacor filed an adversary complaint against, *inter alia*, certain of the Debtors and IV Media (the "Adversary Complaint") [Docket No. 678][1] alleging that, among other things, the Debtors improperly transferred certain of the Prepetition Synacor Collateral to IV Media as part of the Sale, and that the Debtors failed to pay any of the proceeds received on account of the alleged sale of the Prepetition Synacor Collateral toward amounts owed under the Synacor Seller Note;

**WHEREAS**, Debtors have asserted that Synacor is or may be liable to one or more of the Debtors for claims arising under the Synacor APA, other agreements related to the Portal and

---

[1] The Adversary Complaint is docketed as Docket No. 1 in adversary proceeding no. 23-50753 (KBO) (the "Adversary Proceeding") commenced upon the filing of the Adversary Complaint in the Bankruptcy Court.

Advertising Business, and/or chapter 5 of the Bankruptcy Code (the "Debtors' Synacor Claims"); and

**WHEREAS**, to resolve the claims alleged by Synacor in the Adversary Complaint, the Debtors' Synacor Claims, and the IV Media Claim, the Parties are entering into this Settlement Agreement subject to the final approval of the Bankruptcy Court pursuant to a motion under Federal Rule of Bankruptcy Procedure 9019 (the "Settlement Approval Motion" and the order approving such Settlement Approval Motion, the "Settlement Order") (the date such Settlement Order becomes a Final Order, the "Settlement Effective Date") (it being understood and agreed that a "Final Order" shall mean (i) if no objection to the Settlement Approval Motion is pending at the time the Bankruptcy Court grants the Settlement Approval Motion, the date such an order is entered, or (ii) if the Bankruptcy Court overrules any pending objection to the Settlement Approval Motion, the date the time for appeal has expired without any appeal having been filed, or if an appeal is filed, the date such appeal is resolved without any further ability to timely appeal).

**NOW, THEREFORE**, in consideration of the promises and undertakings set forth herein, and with the intent to be legally bound thereby, the Parties agree as follows:

1. **Acceptance of Plan**. The Settlement Order shall provide that:

   a. Synacor is deemed to accept the Debtors' chapter 11 plan of liquidation [Docket No. 850] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") pursuant to Federal Rule of Bankruptcy Procedure 3018 on account of Class 4 Unsecured Claims (as defined in the Plan) held against each of Legacy and Portal Acquisition Company, each Claim with a voting amount of $4,710,946.53; and

   b. Synacor's objection to the Plan [Docket No. 823] (the "Synacor Objection") is withdrawn with prejudice.

2. **IV Media Payment to Synacor**. Within two (2) business days of Synacor confirming receipt of the payment by the Debtors made pursuant to paragraph 3 below, IV Media shall pay $300,000 in cash to Synacor via wire instructions to be provided by Synacor to IV Media.

3. **Debtors' Payment to Synacor**. Within two (2) business days of the Settlement Effective Date, the Debtors shall pay $700,000 in cash to Synacor via wire instructions to be provided by Synacor to the Debtors.

4. **Release of All Liens**. As soon as reasonably practicable following receipt of the payments set forth in Sections 2 and 3 of this Settlement Agreement, Synacor shall take any and all actions reasonably requested by the Debtors and IV Media to release any and all of its liens on and interests in the Synacor Prepetition Collateral, including, but not limited to, filing a UCC-3 termination statement in all relevant jurisdictions; provided that Synacor shall provide prompt notice (email being sufficient) and documentation to each of the other Parties of its filing of such UCC-3 termination statement(s).

3

5. **Rejection of Remaining Contracts**. Upon the effective date of the Debtors' Plan (such date, the "<u>Rejection Date</u>"), the Debtors shall reject pursuant to section 365 of the Bankruptcy Code all contracts purchased in connection with entry into the Synacor APA that the Debtors have not previously assumed and assigned to IV Media or rejected prior to the Rejection Date, including all customer contracts that bundled services rendered by both the Portals and Advertising Business and certain of Synacor's other business units, the Synacor APA, and any related contracts (collectively, the "<u>Rejected Contracts</u>").

6. **Dismissal of Adversary Proceeding**. Within one (1) business day of the Release Effective Date (as defined below), Synacor shall file with the Bankruptcy Court a stipulation of dismissal with prejudice of the Adversary Proceeding, pursuant to Rule 41 of the Federal Rules of Civil Procedure, providing for the voluntary dismissal of the Adversary Proceeding (which stipulation shall specify, among other things, that the parties to the Adversary Proceeding have settled and fully and finally resolved any and all claims and counterclaims brought in the Adversary Proceeding and stating that the Adversary Proceeding shall immediately be terminated), and shall promptly execute and deliver all such other documents as are necessary or desirable to conclusively terminate the Adversary Proceeding; <u>provided</u> that the stipulation to be filed by Synacor voluntarily dismissing the Adversary Proceeding shall be in a form and substance reasonably acceptable to IV Media and the Debtors.

7. **Allowed Unsecured Claim**. Upon completion of the actions contemplated in Sections 2 through 6 of this Settlement Agreement, Synacor shall have an Allowed Class 4 Unsecured Claim (as defined in the Plan) against Debtor Legacy IMBDS, Inc. in the amount of $2,000,000 (the "<u>Allowed Claim</u>"). The Settlement Order shall provide that the Allowed Claim is not subject to dispute, challenge, or objection by any person. Other than the Allowed Claim, Synacor shall not have any other claim against any of the Debtors in the Bankruptcy Cases, whether secured, unsecured, or administrative.

8. **Settlement of Released Claims**. Effective upon the payments of all amounts set forth in Sections 2 and 3 of this Settlement Agreement (such date, the "<u>Release Effective Date</u>"), each of the Debtors, Synacor, and IV Media, on behalf of themselves and all persons or entities claiming by, through or under them, discharge, settle, release, and remise any and all claims and causes of action of whatever nature that the Parties ever had, now have, or may have, including any claims and causes of action arising under the Bankruptcy Code, whether asserted or unasserted, fixed or contingent, known or unknown, against all other Parties and their current and former directors, officers, employees, shareholders, predecessors, successors, assigns, attorneys, advisors, agents, and other representatives, each solely in their capacity as such, arising under or relating to the Synacor APA, the Synacor Seller Note, the Synacor Prepetition Collateral, the Synacor Adequate Protection Proceeds, the IV Media Claim, the Synacor Objection, the Services Agreement, the Synacor Rejection Damages Claim, the Debtors' Synacor Claims, the Services, and/or the Adversary Complaint; <u>provided</u>, <u>however</u>, nothing contained herein shall be deemed to release or waive (i) the Allowed Claim, (ii) any claims for breach of this Settlement Agreement, (iii) any claims or causes of action held by the Debtors against any of their current or former directors, officers, employees, shareholders, predecessors, successors, assigns, attorneys, advisors, agents, and other representatives, each solely in their capacity

as such, or (iv) any claims or causes of action held by Synacor against any of its former directors, officers, employees, shareholders, predecessors, successors, assigns, attorneys, advisors, agents, and other representatives, each solely in their capacity as such.

9. **Continued Services**.  Through July 31, 2024, or such later date as IV Media and Synacor may agree (the "Service Term"), IV Media shall continue to provide the Services to Synacor and distribute certain revenues in accordance with the terms set forth on **Exhibit A** to this Settlement Agreement.

10. **Withdrawal of Claims**.  Upon the Release Effective Date, the IV Media Claim filed against any Debtor in the Bankruptcy Cases shall be deemed withdrawn.

11. **Assets and Liabilities With Respect to Rejected Contracts**.  Upon the occurrence of the Settlement Effective Date:

    a. IV Media shall assume and be solely responsible for any liabilities arising from the Rejected Contracts arising on or after the Petition Date through the Rejection Date (for the avoidance of doubt, excluding any liabilities arising prior to the Petition Date or any claim under section 502(g) of the Bankruptcy Code arising from, or relating to, the rejection of the Rejected Contracts); and

    b. IV Media shall assume and be solely entitled to receive any receivables arising from the Rejected Contracts, as applicable, arising on or after the Petition Date.

12. **Notice**.  Upon the satisfaction of the terms and conditions of this Settlement Agreement, the Debtors shall file a notice on the docket of the Bankruptcy Cases specifying that the terms and conditions hereof have been satisfied and provide written notice (email being sufficient) thereof to the Office of the United States Trustee.

13. **Termination of Settlement Agreement**.  This Settlement Agreement shall terminate and be of no further force and effect if the Settlement Order is not entered on or before the earlier of (i) the Bankruptcy Court's consideration of whether the Plan may be confirmed under the Bankruptcy Code and (ii) February 29, 2024.  If this Settlement Agreement terminates in accordance with this Section 13, then the Parties' rights and obligations will return to the status quo that existed before this Agreement was executed, and all Parties shall preserve their rights and remedies, including rights and remedies in the Adversary Proceeding and Synacor's objections to the Disclosure Statement and Plan.

14. **No Admission of Wrongdoing and Exclusions**.  This Settlement Agreement and all negotiations, statements, and proceedings in connection herewith shall not be, in any event, (i) used as, construed as or deemed to be evidence of, an admission of, or concession of any liability or wrongdoing by any Party, and shall not be offered or received in evidence in any action or proceeding (except an action to enforce this Settlement Agreement), or be used in any way as an admission, concession, or evidence of any liability or wrongdoing of any nature by any Party or with respect to any defense or denial of liability by any Party; or (ii) construed as, or deemed to be evidence of, an admission or concession that any Party has or has not suffered any damage, or that any Party or its current or former officers, directors or employees bear or do not bear any responsibility for any alleged damages.  This

    Settlement Agreement involves the settlement of claims and causes of action which are denied and contested and nothing contained herein shall be construed as an admission by any Party of any liability of any kind to any other Party.

15. **Arm's Length and Voluntary Settlement**.  The Parties have carefully read, and know and understand, the full contents of this Settlement Agreement, and agree that the terms of this Settlement Agreement were negotiated at arm's length in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

16. **Consideration**.  The Parties hereto acknowledge that the covenants in this Settlement Agreement are a material inducement to the Parties to enter into this Settlement Agreement and that without the covenants contained in this Settlement Agreement the Parties would not agree to enter this Settlement Agreement.

17. **Modification or Amendment**.  This Settlement Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the Parties or their successors-in-interest; <u>provided</u> that this Settlement Agreement may not be modified or amended, nor may any of its provisions be waived, without the written consent (which may be by email from counsel) of the official committee of unsecured creditors (the "<u>Committee</u>") in the Bankruptcy Cases if such modification, amendment, or waiver is materially adverse to unsecured creditors of the Debtors.

18. **Waiver of Breach**.  The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

19. **Headings**.  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

20. **Specific Performance**.  Each of the Parties acknowledges and agrees that the other Parties would be irreparably damaged in the event any of the provisions of this Agreement are not performed in accordance with their specific terms or otherwise are breached, and that there is no adequate remedy at law with respect to any such breach.  Accordingly, each of the Parties and their respective successors and permitted assigns agrees that the other Parties or their respective successors and permitted assigns shall, in addition to any other remedy to which they may be entitled, at law or in equity, be entitled to injunctive or other relief without being required to post a bond or other security to prevent breaches or alleged or threatened breaches of the provisions of this Agreement and to specifically enforce this Agreement and the terms and provisions hereof in any action instituted in any court of competent jurisdiction.

21. **Entire Agreement**.  This Settlement Agreement and the documents referenced herein contain the entire agreement and understanding between the Parties concerning the subject matter hereof and supersede any prior or contemporaneous discussion or agreements thereon (whether written or oral).  The Parties acknowledge that no Party, or any agent, representative, attorney, or client of a Party, has made any promise, representation, or

warranty whatsoever, express or implied, that is not contained herein concerning the subject matter hereof, to induce any other Party to execute the Settlement Agreement. The Parties acknowledge that they have not executed the Settlement Agreement in reliance on any promise, representation, or warranty not contained herein. Nothing in this Settlement Agreement shall create or be deemed to create any joint undertaking, venture, or partnership among or between any of the Parties or constitute an agreement to agree to such after the date hereof.

22. **Authority**. Each Party represents and warrants that each person who executes this Settlement Agreement on its behalf is duly authorized to execute this Settlement Agreement on behalf of the respective Party, and that such Party has full knowledge of and has consented to this Settlement Agreement.

23. **Disputes**. This Settlement Agreement, and any disputes arising under or in connection with this Settlement Agreement, are to be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to the choice of laws, or conflicts of laws, principles thereof. Further, by its execution and delivery of this Settlement Agreement, each of the Parties hereto hereby irrevocably and unconditionally agrees that the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of or in connection with this Settlement Agreement. EACH OF THE PARTIES HERETO WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, BETWEEN ANY OF THEM ARISING OUT OF, CONNECTED WITH, RELATING TO OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN ANY OF THEM IN CONNECTION WITH THIS SETTLEMENT AGREEMENT. INSTEAD, ANY DISPUTES RESOLVED IN COURT SHALL BE RESOLVED IN A BENCH TRIAL WITHOUT A JURY.

24. **Successors And Assigns; Third-Party Beneficiaries**. Neither this Settlement Agreement nor any of the rights or obligations hereunder may be assigned by any Party hereto, without the prior written consent of each of the other Parties, and then only to a person who has agreed to be bound by the provisions of this Agreement. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns. Except as set forth in this Section 24 and with respect to the releases set forth in Section 8 and the consent rights provided to the Committee in Section 17, no other Person not a Party hereto shall be deemed a third-party beneficiary of any provision of this Agreement or shall otherwise be entitled to enforce any provision hereof.

25. **Counterparts**. This Settlement Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Settlement Agreement. Delivery of a signature page to this Settlement Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Settlement Agreement.

26. **Representations With Respect to Claims**. Each of the Parties represents that it is the owner of each of the claims to be released pursuant to Section 8 and that no claim of Synacor, IV Media, or Debtors against any of the other Parties has been assigned or

transferred (in whole or in part) to any other person or entity. IV Media represents and warrants that neither it, nor any current or former affiliate of IV Media, have any claims against Synacor. Each Party agrees to indemnify, defend, and hold each other Party harmless from and against any and all claims based on, or arising out of, whether directly or indirectly, any inaccuracy of any of the representations in this Section 26.

27. **Proceedings on Settlement Approval Motion.** Promptly upon execution of this Settlement Agreement by all of the Parties, Debtors shall cause the Settlement Approval Motion to be filed and served on all appropriate parties entitled to notice under the Bankruptcy Code or otherwise. In the event the Bankruptcy Court is unable to hear the Settlement Approval Motion prior to the hearing set for confirmation of the Plan, Debtors shall adjourn the hearing set for confirmation of the Plan until such time as the Settlement Approval Motion can be heard following appropriate notice.

[*Remainder of this page intentionally left blank*]

**EXHIBIT A**

IV Media shall provide the services described in this Exhibit to the Customers (defined below) in accordance with the terms and conditions set forth herein. IV Media may provide the services directly or indirectly using contractors or other third-party vendors or service providers, provided that in any event, IV Media shall remain liable for the delivery of the services in accordance with this Exhibit. Unless otherwise defined in the Settlement Agreement or here in this Exhibit, capitalized terms used in this Exhibit shall have the meaning ascribed to them in the documents referred to in this Exhibit.

As used herein, "Customers" means (i) Webmail customers with search and/or advertising services ("Webmail Customers"); and (ii) Customers entitled to portal services ("Portal Customers"). The Webmail Customers and Portal Customers are identified in *Schedule A.3*.

**Schedule A.1: Webmail Customer Revenue**

  i. **Webmail Services Delivery.** IV Media shall provide search and/or advertising services (the "Advertising Services") to each of the Webmail Customers as specified in Exhibit A.3, pursuant to the terms and conditions of that certain Services Agreement between iMedia Brands, Inc. and Synacor, Inc., dated April 21, 2023, (the "Services Agreement"). Notwithstanding the foregoing, Schedule A(b) to the Services Agreement shall not apply to this Agreement and shall have no effect.

  ii. **Advertising Revenue Share.** IV Media shall pay to Synacor 75% of Net Advertising Revenue invoiced on or after the Effective Date and received by IV Media in connection with the Advertising Services. IV Media shall deliver to Synacor an advertising revenue share report within 30 days of the applicable month end. IV Media will pay to Synacor the applicable amounts as outlined in the revenue share report net 30 days from Synacor receiving the report.

  iii. **Advertising Revenue Reconciliation.** Synacor and IV Media shall use commercially reasonable efforts to cooperatively negotiate reductions to amounts due to Customers on account of search and advertising services purchased for Customers for which Customers are entitled to a share of the revenue that arose after the Petition Date but prior to the Settlement Effective Date, provided Synacor shall have no liability for any extinguished, compromised, or unmodified liabilities, which shall be liabilities of and satisfied by IV Media.

**Schedule A.2: Portal Customer Fees & Costs**

  i. **Portal Service Delivery.** IV Media shall provide "Client Branded Portal" and related search and/or Advertising Services (collectively, the "Portal Services"), to each of the Portal Customers pursuant to the terms and conditions of the following agreements (the "Documents"):

   a. That certain Master Services Agreement with Grande Communications dated June 7, 2004, as amended;
   b. That certain Master Services Agreement with Guadalupe Valley Telephone Cooperative, Inc. dated February 15, 2008, as amended;
   c. That certain Master Services Agreement with TDS Metrocom, Inc., et al., dated September 30, 2004, as amended;
   d. That certain Amended and Restated Master Services Agreement with WideOpenWest Finance, LLC dated May 1, 2017; and
   e. That certain Master Services Agreement with Windstream Communications, Inc. dated June 30, 2010, as amended.

ii. **Portal Services Revenue & Fees.** IV Media shall provide Portal Services to Portal Customers as specified in the applicable Documents. IV Media shall pay to Synacor revenue received by IV Media in connection with the Portal Services which is due and owing to the Portal Customers under the applicable Documents. Synacor shall pay to IV Media all Portal Customer payments invoiced and paid to Synacor on or after the Effective Date by Portal Customers in the prior month attributable to Services rendered by IV Media net 30 days after receipt of such Portal Customer payments received by Synacor. IV Media shall deliver to Synacor a revenue share report within 30 days of the applicable month end. IV Media will pay to Synacor the amounts of revenue received by IV Media in connection to the Portal Serves which is due and owing to the Portal Customers and as outlined in the revenue share report net 30 days from Synacor receiving the report.

**Schedule A.3: Customers**

| *Webmail Customers* | *Search* | *Advertising* |
|---|---|---|
| Armstrong Utilities | No | Yes |
| WideOpenWest Finance, LLC | No | Yes |
| TDS Telecommunications, LLC | Yes | No |
| Windstream Holdings, Inc. | Yes | Yes |
| Hughes Network Systems LLC | No | Yes |
| Guadalupe Valley Telephone Cooperative, Inc. | No | Yes |
| RCN Telecom, LLC | Yes | Yes |
| Bell MTS | Yes | No |
| Wave | Yes | Yes |
| Horry Telephone Cooperative | Yes | Yes |
| ETC Communications | Yes | Yes |
| CINCINNATI Bell | Yes | Yes |

| *Portal Customers* |
|---|
| Grande Communications |
| Guadalupe Valley Telephone Cooperative, Inc. |
| TDS Telecommunications, LLC |
| WideOpenWest Finance, LLC |
| Windstream Holdings, Inc. |